Christopher B. Fontenelli (082532014)
LOCKE LORD LLP
One Gateway Center
Newark, New Jersey 07102
Telephone:  973-520-2300

*Counsel for Plaintiff Zurich American*
*Insurance Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Zurich American Insurance Company <br><br> Plaintiff, <br><br> vs. <br><br> Asphalt Paving Systems, Inc. <br><br> Defendant. | Civil Action No.:  1:22-cv-01535-CPO-MJS <br><br> Hon. Christine P. O'Hearn |

## <u>AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Zurich American Insurance Company ("Zurich"), by and through its attorneys, Locke Lord LLP, files its Amended Complaint against Defendant Asphalt Paving Systems, Inc. ("Asphalt Paving") and states as follows:

### I. <u>NATURE OF ACTION.</u>

1.     This is a breach of contract and fraud action to recover monetary damages arising out of (a) Asphalt Paving's breach of the business automobile ("auto") insurance policies entered into between Zurich and Asphalt Paving, and (b) Asphalt Paving's material misrepresentations to Zurich in connection with that insurance coverage.

2.     Without valid excuse or justification, Asphalt Paving has failed to pay Zurich at least $1.7 million plus interest for premium due and owing to Zurich under the insurance policies.

3.      In addition, Asphalt Paving has knowingly engaged in a pattern and practice of intentionally understating the number of autos in its fleet, thereby disguising the true nature of the risk insured.  This misconduct wrongfully suppressed the premium charged, thereby causing Zurich additional substantial harm and losses in an amount yet-to-be determined exceeding $1 million.

## II.  PARTIES.

4.      Plaintiff Zurich American Insurance Company is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  It is authorized to transact business and has transacted business in New Jersey.

5.      Defendant Asphalt Paving Systems Inc. is a New Jersey corporation with its principal place of business located at 500 N. Egg Harbor Rd, Hammonton, New Jersey 08037.

## III.  JURISDICTION AND VENUE.

6.      This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332 because it is a controversy between citizens of different states and the matter in controversy, exclusive of interests and costs, exceeds $75,000.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## IV.  BACKGROUND FACTS.

8.      Asphalt Paving is a construction company specializing in pavement preservation.

9.      Zurich provided business auto insurance to Asphalt Paving for five relevant policy terms spanning from April 1, 2016 through April 1, 2021 insuring Asphalt Paving's commercial auto risks.

**The Business Automobile Policies.**

10.     Zurich issued policy no. BAP 0191409-00 to Asphalt Paving for the policy term spanning from April 1, 2016 to April 1, 2017.  A true and correct copy of this policy is attached as Exhibit A.

11.     Zurich issued policy no. BAP 0191409-01 to Asphalt Paving for the policy term spanning from April 1, 2017 to April 1, 2018.  A true and correct copy of this policy is attached as Exhibit B.

12.     Zurich issued policy no. BAP 0191409-02 to Asphalt Paving for the policy term spanning from April 1, 2018 to April 1, 2019.  A true and correct copy of this policy is attached as Exhibit C.

13.     Zurich issued policy no. BAP 0191409-04 to Asphalt Paving for the policy term spanning from April 1, 2019 to April 1, 2020.  A true and correct copy of this policy is attached as Exhibit D.

14.     Zurich issued policy no. BAP 0191409-05 to Asphalt Paving for the policy term spanning from April 1, 2020 to April 1, 2021.  A true and correct copy of this policy is attached as Exhibit E.

15.     Subject to the terms, conditions and limitations set forth in the policies, Asphalt Paving generally purchased the following coverage from Zurich, with minor variations in certain policy years:

   a) <u>Autos</u>:  liability coverage for any "autos" utilized by Asphalt Paving, whether owned, non-owned or hired;

b) <u>Owned autos</u>:  auto medical payment, uninsured motorist, underinsured motorist, physical damage, and collision coverage for any "owned autos," whether acquired by Asphalt Paving before or after policy inception;

c) <u>Owned autos subject to no-fault</u>:  personal injury protection for any "owned autos subject to no-fault" benefit laws, whether acquired by Asphalt Paving before or after policy inception; and

d) <u>Hired autos</u>:  physical damage and collision coverage for any "hired autos," whether leased, rented or borrowed by Asphalt Paving.

**The Policy Premium.**

16.     In exchange for the above coverage, Asphalt Paving agreed to pay Zurich premium and other amounts.  The parties agreed that, at the outset of each policy year, Asphalt Paving would pay Zurich estimated premium based on its estimated exposure for the insurance.  Zurich would then conduct an audit after policy expiration to calculate the final premium based on Asphalt Paving's actual exposure over the course of the policy year.

17.     The parties agreed to calculate the estimated exposure and final exposure based on formulas considering the number of autos owned by Asphalt Paving times an agreed composite rate.  The formulas are confirmed in binders agreed to by the parties at the outset of each policy year, attached hereto as Exhibits F through J.

18.     Generally, Asphalt Paving told Zurich the number of "owned autos" at policy inception, and the parties then multiplied that number times an agreed composite rate to calculate the estimated premium.

19.     After the policies expired, Zurich then conducted an audit to determine whether the actual number of owned autos fluctuated over the course of the policy year.  Following the audit,

Zurich calculated the final premium by (a) adding the number of owned autos at policy inception to the number of owned autos at policy expiration, (b) multiplying that total by 50%, and (c) then multiplying that result by the composite rate.

20.     If the final premium was greater than the estimated premium, Asphalt Paving was required to pay additional amounts to Zurich.  If the final premium was less than the estimated premium, Zurich was required to return amounts to Asphalt Paving, subject to certain minimum requirements and other conditions.

**The 2020-2021 Policy Year.**

21.     At the outset of the 2020-21 policy year, Asphalt Paving informed Zurich that, consistent with prior years, there were 70 owned autos.  Zurich applied the agreed composite rate and charged Asphalt Paving $626,039 in estimated premium.

22.     In January 2021, however, Zurich obtained spreadsheets indicating that Asphalt Paving actually owned more than 200 autos.  When Zurich confronted Asphalt Paving with this information, Asphalt Paving's broker (Robert Ivey from McKee Risk Management Inc.) informed Zurich that Asphalt Paving owned 297 autos, including the (a) 70 autos disclosed at policy inception, (b) 28 new autos acquired during the policy year, and (c) 199 additional autos owned by Asphalt Paving at policy inception, but not disclosed to Zurich.

23.     In response to this new information, Zurich issued an endorsement and invoice to Asphalt Paving seeking an additional $1,779,735 in premium, which Zurich calculated by multiplying the agreed composite rate times the number of additional owned autos.  The endorsement is attached as Exhibit V. The invoice is attached as Exhibit K, and Asphalt Paving was required to pay the amounts due no later than April 15, 2021.  Asphalt Paving failed to pay Zurich's invoice, without excuse or justification.

**The Misrepresentations.**

24.     On information and belief, Asphalt Paving engaged in a pattern and practice of intentionally misrepresenting the number of owned autos to Zurich in order to improperly reduce the premium charges.  These misrepresentations spanned all five policy terms and caused millions of dollars in damages.

25.     At the outset of each policy year, Asphalt Paving represented to Zurich that there were between 60 and 70 owned autos.  Specifically, before each policy year, Asphalt Paving submitted applications to Zurich with schedules disclosing 63 owned autos in 2016, 67 owned autos in 2016, 2017, 2018, and 2019, and 70 owned autos in 2020.  Zurich received the applications from Asphalt Paving's insurance brokers (Joseph Meola from J. Byrne Insurance and Hannah Kueny and Chase Moresco from McKee Risk Management Inc.)  The applications are attached as Exhibits L through P.

26.     At the conclusion of each policy year, Asphalt Paving supplied information to Zurich for purposes of the policy audits.  Lauren Rzucidlo, Asphalt Paving's accountant, provided the data to Zurich's auditors.  Each year, that data reflected approximately the same number of owned autos as Asphalt Paving reported on the applications.  The audit workpapers are attached as Exhibits Q through U.

27.     Upon information and belief, Asphalt Paving actually owned dozens of additional autos that it concealed from Zurich.  As previously alleged, in January 2021, Asphalt Paving's broker (Robert Ivey from McKee Risk Management Inc.) informed Zurich there were 199 autos owned by Asphalt Paving and not disclosed at policy inception.

28.     A New Jersey public records search reveals that Asphalt Paving had 647 license plates registered to its company from 2016 through 2021.  (*See* Ex. W.)  Upon information and

belief, all or most all of the autos associated with those license plates were owned by Asphalt Paving. Asphalt Paving nevertheless failed to report many of those autos to Zurich.

29.     Upon information and belief, when Zurich conducted its audit each year, Asphalt Paving actively concealed and/or misrepresented the true number of its owned autos, thereby preventing Zurich from discovering the actual owned autos.

30.     If Zurich had known the true number of Asphalt Paving's owned autos, Zurich would have charged Asphalt Paving millions more in additional premium, or not offered the insurance coverage to Asphalt Paving at all.

31.     Notably, Asphalt Paving could have requested insurance coverage for only "specifically described autos" on schedules to be provided to Zurich. Each year, Asphalt Paving rejected this option, and instead selected coverage for "all autos," "owned autos," "owned autos subject to no-fault," and "hired autos." (*See* Policies and Applications, Exs. A-E and L-P.) In so doing, Asphalt is responsible to pay Zurich for the corresponding premium due, and should not be permitted to evade those obligations.

**The Claims.**

32.     Zurich has been further damaged because Asphalt Paving has sought insurance coverage from Zurich for owned autos that were not disclosed at either policy inception or in connection with the audits. Thus, Zurich has paid out amounts on claims for which Zurich received no corresponding premium.

33.     For example, in August 2016, an Asphalt Paving employee was involved in an accident that resulted in a total loss of the auto (claim no. 1510101619). Upon information and belief, this auto was owned by Asphalt Paving, as Asphalt Paving sought to salvage the auto

through a "VOR" or "vehicle owner retain" settlement.  Asphalt Paving nevertheless failed to disclose this "owned auto" to Zurich at either policy inception or policy audit.

34.     In another example, in March 2018, another Asphalt Paving employee was involved in an auto accident (claim no. 1510124902).  Upon information and belief, "Asphalt Paving Systems, Inc." was reported as the owner of the auto damaged in the accident.  Asphalt Paving nevertheless failed to disclose this "owned auto" to Zurich at either policy inception or policy audit.

35.     Upon information and belief, there are other claims involving vehicles owned by Asphalt Paving, but never disclosed to Zurich.  While Zurich administered and paid these claims, Zurich received no corresponding premium for the autos.

36.     Among other reasons, Zurich did not discover Asphalt Paving's fraud until January 2021 (as described above) given the over one hundred claims reported, Asphalt Paving's on-going misrepresentations and false assurances to Zurich that it had reported all owned autos, the fact that the audits occurred after the policy expiration dates, and Asphalt Paving's deception at the time of the audits.

## <u>COUNT ONE</u><br>BREACH OF CONTRACT – POLICY BAP 0191409-05<br>(Failure to Pay Premium Invoice)

37.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 36 above, as if fully set forth herein.

38.     The policy and endorsement attached as Exhibits E and V are a valid and enforceable contract.

39.     Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

40.     Asphalt Paving received the insurance coverage and other benefits provided under the policy.

41.     The policy required Asphalt Paving to pay additional premium due in the amount of $1,779,735, as calculated in the invoice attached as Exhibit K.

42.     Zurich has demanded that Asphalt Paving pay the amounts due.

43.     Without excuse or justification, Asphalt Paving has breached the policy by failing to pay the amounts owed.

44.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)   Finding that Asphalt Paving is liable for at least $1,779,735 in unpaid premium currently due and owing under the policy;

b)   Finding that Asphalt Paving is liable for pre-judgment interest on the unpaid premium due and owing under the polices; and

c)   Granting Zurich such other and further relief as this Court deems just and proper.

## COUNT TWO
### BREACH OF CONTRACT – POLICY BAP 0191409-00
### (Underreporting of Exposure)

45.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 44 above, as if fully set forth herein.

46.     The policy attached as Exhibit A is a valid and enforceable contract.

47.     Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

48.     Asphalt Paving received the insurance coverage and other benefits provided under the policy.

49.     The policy required Asphalt Paving to report its estimated and final exposure to Zurich, including the number of owned autos.

50.     Without excuse or justification, Asphalt Paving has breached the provisions of the policy by intentionally underreporting the number of owned autos.

51.     Zurich has suffered substantial damages due to Asphalt Paving's breach of the policy.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

52.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's underreporting of its exposure, in an amount to be proven at trial;

b)  Finding that Asphalt Paving is liable for pre-judgment interest on all damages resulting from Asphalt Paving's underreporting of its exposure; and

c)  Granting Zurich such other and further relief as this Court deems just and proper.

## COUNT THREE
### BREACH OF CONTRACT – POLICY BAP 0191409-01
### (Underreporting of Exposure)

53.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 52 above, as if fully set forth herein.

54.     The policy attached as Exhibit B is a valid and enforceable contract.

55.     Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

56.     Asphalt Paving received the insurance coverage and other benefits provided under the policy.

57.     The policy required Asphalt Paving to report its estimated and final exposure to Zurich, including the number of owned autos.

58.     Without excuse or justification, Asphalt Paving has breached the provisions of the policy by intentionally underreporting the number of owned autos.

59.     Zurich has suffered substantial damages due to Asphalt Paving's breach of the policy.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

60.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's underreporting of its exposure, in an amount to be proven at trial;

b)  Finding that Asphalt Paving is liable for pre-judgment interest on all damages resulting from Asphalt Paving's underreporting of its exposure; and

c)  Granting Zurich such other and further relief as this Court deems just and proper.

## COUNT FOUR
## BREACH OF CONTRACT – POLICY BAP 0191409-02
### (Underreporting of Exposure)

61.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 60 above, as if fully set forth herein.

62.     The policy attached as Exhibit C is a valid and enforceable contract.

63.     Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

64.     Asphalt Paving received the insurance coverage and other benefits provided under the policy.

65.     The policy required Asphalt Paving to report its estimated and final exposure to Zurich, including the number of owned autos.

66.     Without excuse or justification, Asphalt Paving has breached the provisions of the policy by intentionally underreporting the number of owned autos.

67.     Zurich has suffered substantial damages due to Asphalt Paving's breach of the policy.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

68.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's underreporting of its exposure, in an amount to be proven at trial;

b)  Finding that Asphalt Paving is liable for pre-judgment interest on all damages resulting from Asphalt Paving's underreporting of its exposure; and

c) Granting Zurich such other and further relief as this Court deems just and proper.

### COUNT FIVE
### BREACH OF CONTRACT – POLICY BAP 0191409-04
### (Underreporting of Exposure)

69.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 68 above, as if fully set forth herein.

70.     The policy attached as Exhibit D is a valid and enforceable contract.

71.     Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

72.     Asphalt Paving received the insurance coverage and other benefits provided under the policy.

73.     The policy required Asphalt Paving to report its estimated and final exposure to Zurich, including the number of owned autos.

74.     Without excuse or justification, Asphalt Paving has breached the provisions of the policy by intentionally underreporting the number of owned autos.

75.     Zurich has suffered substantial damages due to Asphalt Paving's breach of the policy.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

76.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a) Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's underreporting of its exposure, in an amount to be proven at trial;

b) Finding that Asphalt Paving is liable for pre-judgment interest on all damages resulting from Asphalt Paving's underreporting of its exposure; and

c) Granting Zurich such other and further relief as this Court deems just and proper.

## COUNT SIX
## BREACH OF CONTRACT – POLICY BAP 0191409-05
### (Underreporting of Exposure)

77.    Zurich repeats and re-alleges the allegations of paragraphs 1 through 76 above, as if fully set forth herein.

78.    The policy and endorsement attached as Exhibit E and V are a valid and enforceable contract.

79.    Zurich has fully performed its obligations under this policy by providing insurance coverage and other benefits to Asphalt Paving.

80.    Asphalt Paving received the insurance coverage and other benefits provided under the policy.

81.    The policy required Asphalt Paving to report its estimated and final exposure to Zurich, including the number of owned autos.

82.    Without excuse or justification, Asphalt Paving has breached the provisions of the policy by intentionally underreporting the number of owned autos.

83.    Zurich has suffered substantial damages due to Asphalt Paving's breach of the policy.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

84.     **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's underreporting of its exposure, in an amount to be proven at trial;

b)  Finding that Asphalt Paving is liable for pre-judgment interest on all damages resulting from Asphalt Paving's underreporting of its exposure; and

c)  Granting Zurich such other and further relief as this Court deems just and proper.

<u>COUNT SEVEN</u>
**COMMON LAW FRAUD**
**(Fraudulent Inducement by Misrepresenting Number of Owned Autos)**

85.     Zurich repeats and re-alleges the allegations of paragraphs 1 through 84 above, as if fully set forth herein.

86.     Asphalt Paving misrepresented to Zurich the number of owned autos, including in the applications that Asphalt Paving submitted to Zurich before each policy year incepted.

87.     Asphalt Paving knew that its representations to Zurich were false.

88.     Asphalt Paving intended that Zurich rely on its false representations so that Zurich would offer the insurance coverage to Asphalt Paving and charge less premium.

89.     Zurich relied on Asphalt Paving's false representations when it offered the insurance coverage to Asphalt Paving, and Asphalt Paving thus fraudulently induced Zurich to enter into the insurance policies.

90.     As a result of Asphalt Paving's false representations, Zurich has suffered substantial damages.  If Zurich had known Asphalt Paving's true number of owned autos, Zurich

would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

91.      Asphalt Paving's misconduct was malicious and with willful and wanton disregard of Zurich, and Zurich suffered foreseeable harm as a result of Asphalt Paving's misconduct.

92.      **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

    a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's misrepresentations, in an amount to be proven at trial;

    b)  Awarding punitive damages; and

    c)  Granting Zurich such other and further relief as this Court deems just and proper.

**<u>COUNT EIGHT</u>**
**NEW JERSEY INSURANCE FRAUD PREVENTION ACT**
**N.J. STAT. ANN. § 17:33A-7**
**(Misrepresenting Number of Owned Autos)**

93.      Zurich repeats and re-alleges the allegations of paragraphs 1 through 92 above, as if fully set forth herein.

94.      Asphalt Paving prepared and made written and oral statements to Zurich concerning the number of its owned autos for the purpose of obtaining the insurance policies.

95.      Asphalt Paving knew that its statements to Zurich were false.

96.      Asphalt Paving's misrepresentations were material because, if Zurich had known Asphalt Paving's true number of owned autos, Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

97.      Zurich was thereby damaged as a result of Asphalt Paving's conduct.

98.     Asphalt Paving's misconduct violates N.J. Stat. Ann. § 17:33A-4(a)(4)(b), and Asphalt Paving had a pattern and practice of such violations over the course of five consecutive policy years.

99.     Pursuant to N.J. Stat. Ann.  § 17:33A-7(c), at the time of filing this Amended Complaint, Zurich is also mailing a copy of this complaint to the New Jersey Insurance Commissioner, Marlene Caride, at 20 West State Street, PO Box 325, Trenton, New Jersey 08625.

100.    **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all compensatory damages resulting from Asphalt Paving's statutory violations in an amount to be proven at trial, which shall include reasonable investigation expenses, costs of suit and attorneys' fees;

b)  Awarding treble damages; and

c)  Granting Zurich such other and further relief as this Court deems just and proper.

**COUNT NINE**
**UNJUST ENRICHMENT**
**(Underreporting of Exposure)**

101.    Zurich repeats and re-alleges the allegations of paragraphs 1 through 100 above, as if fully set forth herein.

102.    Asphalt Paving has been enriched by receiving the benefits of the policies.

103.    The enrichment to Asphalt Paving came at Zurich's expense as Zurich has paid substantial sums on Asphalt Paving's claims arising under the policies.

104.    It is against equity and good conscience to permit Asphalt Paving to retain the benefits of the insurance without paying needed premium.

105.    The failure to pay adequate remuneration to Zurich unjustly enriched Asphalt Paving.

106.    **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a)  Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's misrepresentations, including disgorgement, in an amount to be proven at trial;

b)  Granting Zurich such other and further relief as this Court deems just and proper.

**COUNT TEN**
**BREACH OF THE IMPLIED DUTY OF**
**GOOD FAITH AND FAIR DEALING**
**(Concealment and Misrepresentations)**

107.    Zurich repeats and re-alleges the allegations of paragraphs 1 through 106 above, as if fully set forth herein.

108.    The implied duty of good faith and fair dealing applies to each of the insurance policies.

109.    Asphalt Paving breached its duty by acting in bad faith or with malicious motive. Asphalt Paving's misconduct includes, but is not limited to, making misrepresentations, refusing to cooperate, concealing information, and/or otherwise preventing Zurich from conducting a full and accurate audit at the end of each policy year.

110.    Asphalt Paving's misconduct denied Zurich the benefit of the bargain intended by the parties under the insurance policies.

111.    Zurich has suffered substantial damages due to Asphalt Paving's breach of the implied duty of good faith and fair dealing.  If Asphalt Paving had not prevented Zurich from conducting a full and accurate audit, Zurich would have learned the true number of owned autos and Zurich would have charged Asphalt Paving additional premium or not offered the insurance coverage to Asphalt Paving at all.

112.    **WHEREFORE**, Zurich prays for judgment in its favor and against Asphalt Paving as follows:

a) Finding that Asphalt Paving is liable for all damages resulting from Asphalt Paving's breach of the implied duty of good faith and fair dealing, in an amount to be proven at trial;

b) Granting Zurich such other and further relief as this Court deems just and proper.

## JURY DEMAND

Zurich hereby demands trial by jury on all issues so triable.

Dated: May 23, 2022                                    By: /s/ *Christopher B. Fontenelli*

Christopher B. Fontenelli (082532014)
LOCKE LORD LLP
One Gateway Center
Newark, NJ 07102
T: 973.520.2300
cfontenelli@lockelord.com

Steven T. Whitmer (*pro hac vice*)
Julie L. Young (*pro hac vice*)
Hannah M. Oswald (*pro hac vice*)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-443-0254

swhitmer@lockelord.com
jyoung@lockelord.com
hannah.oswald@lockelord.com

*Attorneys for Plaintiff Zurich American*
*Insurance Company*