# EXHIBIT C

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

INSTRUCTION TO AGENT OR BROKER:

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com or

call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

**ZURICH**

COMMERCIAL INSURANCE

COMMON POLICY DECLARATIONS

| Policy Number | BAP 0191409-02 | Renewal of Number | BAP 0191409-01 |
|---|---|---|---|

Named Insured and Mailing Address

ASPHALT PAVING SYSTEMS, INC.
(SEE NAMED INSURED ENDT)
500 N EGG HARBOR RD
HAMMONTON NJ 08037-3201

Producer and Mailing Address

MCKEE RISK MANAGEMENT INC
610 FREEDOM BUSINESS CTR DR
STE 300
KING OF PRUSSIA PA 19406-1329

Producer Code    53093-000

Policy Period: Coverage begins   04-01-2018  at 12:01 A.M.; Coverage ends  04-01-2019  at 12:01 A.M.

The name insured is    ☐ Individual    ☐ Partnership    ☒ Corporation

☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group.  The company that provides coverage is designated on each Coverage Part Common Declarations.  The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our.  The address of the companies of the Zurich-American Insurance Group are provided on the next page.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):

| | | |
|---|---|---|
| BUSINESS AUTOMOBILE | PREMIUM  $ | 438,543.00 |
| issued by ZURICH AMERICAN INSURANCE COMPANY | | |
| NJ-PLIGA SURCHARGE | $ | 2,519.00 |

Certified Copy

_____    _____
(Signature)                          (Date)

IMPORTANT NOTICE – PENNSYLVANIA
YOUR POLICY PROVIDES COLLISION  COVERAGE ON RENTAL  VEHICLES.  PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING "COLLISION" COVERAGE FOR ANY LIMITATIONS IN COVERAGE THAT MAY APPLY.

| THIS PREMIUM MAY BE SUBJECT TO AUDIT. This premium does not include Taxes and Surcharges. | TOTAL | $ | 438,543.00 SEE  INSTALLMENT  SCHEDULE |
|---|---|---|---|
| Taxes and Surcharges | TOTAL | $ | 2,519.00 SEE  INSTALLMENT  SCHEDULE |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the SCHEDULE of FORMS and ENDORSEMENTS.

Countersigned this        day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Policy Number
BAP 0191409-02

SCHEDULE OF FORMS AND ENDORSEMENTS

Zurich American Insurance Company

Named Insured  ASPHALT PAVING SYSTEMS, INC.                Effective Date: 04-01-18
                                                           12:01 A.M., Standard Time

Agent Name   MCKEE RISK MANAGEMENT INC                     Agent No.  53093-000

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GU-621-A CW | 10-02 | SCHEDULE OF NAMED INSURED(S) |
| U-GU-406-B | 07-15 | INSTALLMENT PREMIUM SCHEDULE |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 08 | 09-07 | NJ CHANGES-CANC & NONRENL |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| U-GU-1191-A CW | 03-15 | SANCTIONS EXCLUSION ENDORSEMENT |

AUTOMOBILE FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-CA-411-E CW | 02-14 | PREMIUM AND REPORTS AGREEMENT-COMPOSITE |
| U-CA-531-B | 02-08 | NOTICE REGARDING TERRORISM PREMIUM |
| U-CA-548-A CW | 10-06 | SCHEDULE OF AUTO PHYSICAL DAMAGE DEDUCTI |
| U-CA-D-600-C | 04-14 | BUSINESS AUTO DECLARATIONS |
| CA 00 01 | 10-13 | BUSINESS AUTO COVERAGE FORM |
| CA 01 12 | 12-15 | NY CHNGS BUSINESS AUTO AND MOTOR CARRIER |
| CA 02 67 | 06-17 | FL CHANGES - CANCELLATION AND NONRENEWAL |
| CA 01 84 | 10-13 | NJ CHANGES - PHYSICAL DAMAGE INSPECTION |
| CA 01 88 | 10-13 | NEW JERSEY CHANGES |
| CA 02 25 | 08-14 | NEW YORK CHANGES - CANCELLATION |
| CA 21 14 | 10-16 | NJ UNINSURED AND UNDERINSURED COVERAGE |
| CA 21 72 | 06-17 | FL UNINSURED MOTORISTS COV - NON STACKED |
| CA 22 10 | 06-17 | FL PERSONAL INJURY PROTECTION |
| CA 22 30 | 03-16 | NJ PERSONAL INJURY PROTECTION |
| CA 22 31 | 10-13 | NJ ADDED PERSONAL INJURY PROTECTION COV. |
| CA 22 50 | 06-17 | FL EXTENDED PERSONAL INJURY PROTECTION |
| CA 22 01 | 01-87 | NAMED IND-BROADENED PIP COV |
| CA 22 11 | 01-08 | FL ADDED PERSONAL INJURY PROTECTION |
| CA 22 45 | 10-13 | UTAH ADDED PERSONAL INJURY PROTECTION |
| CA 99 48 | 10-13 | POLLUTION LIAB BROAD COV FOR COV AUTO |
| U-CA-424-F CW | 04-14 | COVERAGE EXTENSION ENDORSEMENT |
| U-CA-825-B CW | 02-14 | WHO IS AN INSURED AMENDMENT - BROAD FORM |
| CA 99 03 | 10-13 | AUTO MEDICAL PAYMENTS COVERAGE |
| CA 20 48 | 10-13 | DESIGNATED INSURED |
| CA 99 10 | 10-13 | DRIVE OTHER CAR COV-BROAD COV NAMED IND |
| CA 99 16 | 10-13 | HIRED AUTO SPECIFIED AS COV AUTO YOU OWN |
| CA 99 23 | 10-13 | RENTAL REIMBURSEMENT COVERAGE |
| MCS-90 | 01-17 | MOTOR CARRIER POLICIES OF INS.FOR PUBLIC |
| CA 99 33 | 10-13 | EMPLOYEES AS INSUREDS |



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                 Corporate Secretary

| QUESTIONS ABOUT YOUR INSURANCE? Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready): |
| --- |
| Zurich in North America |
| Customer Inquiry Center |
| 1299 Zurich Way |
| Schaumburg, Illinois  60196-1056 |
| **1-800-382-2150** (Business Hours:  8am - 4pm [CT]) |
| **Email**: info.source@zurichna.com |

Policy Number
BAP 0191409-02

SCHEDULE OF NAMED INSURED(S)

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured   ASPHALT PAVING SYSTEMS, INC.

Effective Date:   04-01-18
12:01 A.M., Standard Time

Agent Name   MCKEE RISK MANAGEMENT INC

Agent No.   53093-000

## NAMED INSURED

ASPHALT PAVING SYSTEMS, INC.
SHORE SLURRY SEAL, INC.
SHORE MICROSURFACING SYSTEMS, INC.
SHORE TRANSPORT, INC.
PMP CONSTRUCTION, INC.
SHORE BUILDING CONTRACTORS, INC.
THOMAS H. GANNON & SONS, INC.
SHORE ROAD MAINTENANCE, INC.
ASPEN CONSTRUCTION MANAGEMENT
11 CHEW DEVELOPMENT, LLC
CODE ORANGE, LLC
R. CAP LLC
SHORE RESURFACING LLC

U-GU-621-A CW (10/02)



## INSTALLMENT PREMIUM SCHEDULE

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER | ENDORSEMENT NUMBER |
|---|---|---|
| ASPHALT PAVING SYSTEMS, INC. | BAP 0191409-02 | |

Typed:   AGENCY BILL

| PAYMENT DUE | STANDARD PREMIUM | TAXES PREPAID | TOTAL PREMIUM |
|---|---|---|---|
| 04/01/18 | $ 153,495.00 | $ 2,519.00 | $ 156,014.00 |
| 05/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 06/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 07/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 08/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 09/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 10/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 11/01/18 | $ 35,631.00 | | $ 35,631.00 |
| 12/01/18 | $ 35,631.00 | | $ 35,631.00 |
| TOTAL | $ 438,543.00 | $ 2,519.00 | $ 441,062.00 |

Failure to pay the installment Premium by the Due Date shown shall constitute non-payment of premium for which we may cancel this policy.

U-GU-406-B (07/15)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007  □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    (a)  Any "nuclear reactor";

    (b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

  © ISO Properties, Inc., 2007  IL 00 21 09 08  ☐

IL 02 08 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

B. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

a. We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) Nonpayment of premium; or

(b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

(i) "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

(ii) "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

IL 02 08 09 07

© ISO Properties, Inc., 2006

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

C. The following is added to the Cancellation Common Policy Condition:

7. Cancellation Of Policies In Effect For 60 Days Or More

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

(4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and / or insurability of the risk;

(6) Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

(7) Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

(8) Loss of or reduction in available insurance capacity;

(9) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

(10) Loss of or substantial changes in applicable reinsurance;

(11) Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

(12) Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

(13) Agency termination, provided:

(a) We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

(b) We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

(14) Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

b. If we cancel this policy based on Paragraph 7.a.(1) or (2) above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

c. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

d. Notice will be sent to the last mailing addresses known to us, by:

(1) Certified mail; or

(2) First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2006

IL 02 08 09 07     □

e. We need not send notice of cancellation if you have:

   (1) Replaced coverage elsewhere; or

   (2) Specifically requested termination.

D. The following is added and supersedes any other provision to the contrary:

   NONRENEWAL

   1. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of non-renewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

   2. This notice will be sent to the first Named Insured at the last mailing address known to us by:

      a. Certified mail; or

      b. First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

   3. We need not mail or deliver this notice if you have:

      a. Replaced coverage elsewhere; or

      b. Specifically requested termination.

 © ISO Properties, Inc., 2006 □

IL 00 03 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc., 2007 ☐

# SANCTIONS EXCLUSION ENDORSEMENT



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**



# Important Notice to Florida Policyholders

In the event you need to contact someone about this policy, for any reason, please contact your agent. If you have additional questions, you may contact the Zurich U.S. office at the following address and telephone number:

Customer Inquiry Center
Zurich North America
1299 Zurich Way
Schaumburg, IL 60196
800-382-2150

If you have been unable to contact or obtain satisfaction from your agent or company, you may contact the Florida Office of Insurance Regulation at:

Office of Insurance Regulation
200 East Gaines Street
Tallahassee, Florida 32399
850-413-3140

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

# Premium And Reports Agreement – Composite Rated Policies



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Auto Dealers Coverage Form**
**Business Auto Coverage Form**
**Motor Carrier Coverage Form**

| Schedule | | |
|---|---|---|
| **Units of Exposure –** Indicate your selection of one of the following with an ☒ | | |

| ⤬ Per "auto" | -- Per $100 "cost of hire" | -- Per 10,000 "miles" |
|---|---|---|
| -- Per "auto – power units only" | -- Per $100 of "gross receipts" | -- Per 100 "miles" |
| -- Per $1,000 "payroll" | | |

| Estimated Unit(s) of Exposure | Composite Rate(s) | Estimated Premium(s) |
|---|---|---|
| LIABILITY POWER UNITS - 67 | $5,355.52 | $358,733 |
| PHYSICAL DAMAGE - 67 | $1,126.40 | $75,469 |
| TRAILERS-10 | INCLUDED | INCLUDED |
| **Estimated SubTotal Premium:** | | $434,202 |
| **Estimated Terrorism Premium:** | | $4,341 |
| **Estimated Taxes and Assessments:** | | $2,519 |
| **Estimated Total Premium:** | | $441,062 |
| **Minimum Premium:** | | $352,800 |

The **Premium Audit** Condition is replaced by the following:

**Premium Audit**

**a.**  We will compute all premiums for this coverage form according to our rules and the Composite Rate(s) shown in the Schedule of this endorsement or attached hereto.  The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began.  We will compute the final premium due when we determine your actual exposures at the time of final audit.

**b.**  The Deposit Premium shown in the Schedule of this endorsement is due and payable on the first day of the policy period.  In addition, the first Named Insured will pay, within 20 days following the date of mailing or delivery of a statement of interim audited premium, any additional earned premium that is developed during any interim audit conducted by us during the policy period.

**c.**  Within 180 days after this coverage form expires we will conduct a final audit, which may not be waived.  We will compute the earned premium for the policy period by multiplying the Composite Rate for the indicated Unit of Exposure shown in the Schedule of this endorsement against your actual exposures as determined by such final audit.  If the resulting earned premium is greater than the sum of the Deposit Premium shown in the Schedule and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned premium to the first Named Insured.  However, the earned premium will not be less than the Minimum Premium shown in the Schedule.  If no Minimum Premium is shown in the Schedule, the Minimum Premium will be 80% of the Deposit Premium.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-CA-411-E CW (02-14)
Page 1 of 2

**d.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**e.** The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

**f.** Solely with respect to this endorsement, the Units of Exposure shown in the Schedule of this endorsement are defined as follows:

**(1)** "Auto" means the actual number of covered "autos" determined by adding the number of covered "autos" at the beginning of the policy period to the number of covered "autos" at the end of the policy period or termination date and dividing this sum by two.

**(2)** "Auto – power units only" means the actual number of covered "autos – power units only" determined by adding the number of covered "autos – power units only" at the beginning of the policy period to the number of covered "autos – power units only" at the end of the policy period or termination date and dividing this sum by two.  This includes "autos" operated under their own power only.

**(3)** "Cost of hire" means the total cost of hiring the "autos".  If "autos" are hired without operators, this includes the actual wages of the operators of such "autos".

**(4)** "Gross receipts" means the total amount earned by the "insured" for shipping or transporting property.   This includes:

**(a)** The total amount received from the rental of equipment with or without drivers, to any person or organization not engaged in the business of transporting property for hire by "auto", and

**(b)** 15% of the total amount received from the rental of equipment, with or without drivers, to any person or organization engaged in the business of transporting property for hire by "auto".

"Gross receipts" does not include:

**(i)** Amounts paid to air, sea or land carriers operating under their own permits;

**(ii)** Taxes collected as a separate item and paid directly to the government;

**(iii)** Cash on delivery collections for cost of merchandise including collection fees;

**(iv)** Warehouse storage charges; or

**(v)** Advertising revenue.

This definition applies whether shipment originates with the "insured" or some other carrier.

**(5)** "Miles" means the total mileage driven during the policy period by all revenue producing "autos".

**(6)** "Payroll" means total remuneration for all "employees" of the "insured".

**(7)** "Other" means the description shown under the "Other" Unit of Exposure category shown in the Schedule of this endorsement.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**ZURICH**

THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# NOTICE REGARDING TERRORISM PREMIUM (FOR COMMERCIAL AUTOMOBILE INSURANCE)

SCHEDULE*

| Premium attributable to risk of loss resulting from terrorism for the Commercial Automobile line of insurance: | |
| --- | --- |
| Automobile | $4,341.00 |

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Terrorism Risk Insurance Act ("TRIA")

The Commercial Automobile line is not part of TRIA. On December 22, 2005, the President of the United States signed the first TRIA extension act into law and, at that time, the Commercial Auto line was removed from the program. The federal government does not share in Commercial Automobile terrorism losses..

B. Disclosure of Terrorism Premium

We have elected to provide notice to you of the amount of the total policy premium attributable to the risk of loss from terrorism for the Commercial Automobile line of insurance.

Copyright - 2008 Zurich American Insurance Compnay
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# Schedule of Auto Physical Damage Deductibles



The Schedule set forth below identifies the Deductible to apply to the Coverage(s) and Vehicle(s) described.

## SCHEDULE

| Coverage | Vehicle Description | Deductible |
|---|---|---|
| COMPREHENSIVE | | $ 2,500 |
| COLLISION | | $ 2,500 |

Copyright Zurich American Insurance Company 2006

POLICY NUMBER:        BAP 0191409-02                                    COMMERCIAL AUTO

ZURICH AMERICAN INSURANCE COMPANY

1299 Zurich Way
Schaumburg, Illinois 60196-1056
1-800-382-2150

# BUSINESS AUTO DECLARATIONS

ITEM ONE

PRODUCER:
MCKEE RISK MANAGEMENT INC

NAMED INSURED:      ASPHALT PAVING SYSTEMS, INC.
                    (SEE NAMED INSURED ENDORSEMENT)
MAILING ADDRESS:    500 N EGG HARBOR RD
                    HAMMONTON, NJ 08037-3201

POLICY PERIOD:      From   04-01-2018   to   04-01-2019   at 12:01 A.M. Standard Time at your
                                                          mailing address shown above

PREVIOUS POLICY NUMBER:      BAP 0191409-01

FORM OF BUSINESS:

[X] CORPORATION          [ ] LIMITED LIABILITY COMPANY          [ ] INDIVIDUAL
[ ] PARTNERSHIP          [ ] OTHER      _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception: $ 441,062.00 | | | | |
|---|---|---|---|---|
| AUDIT PERIOD (IF APPLICABLE) [X] | ANNUALLY | SEMI-ANNUALLY | QUARTERLY | MONTHLY |

ENDORSEMENTS ATTACHED TO THIS POLICY:
    IL 00 17 – Common Policy Conditions (IL 01 46 in Washington)
    IL 00 21 – Broad Form Nuclear Exclusion (not Applicable in New York) (IL 01 98 in Washington)

SEE SCHEDULE OF FORMS AND ENDORSEMENTS

COUNTERSIGNED _____ BY _____
                           (Date)                                (Authorized Representative)

U-CA-D-600-C  04 14                                                               Page  1

ITEM TWO

Schedule Of Coverages And Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| COVERED AUTOS LIABILITY | 1 | $1,000,000 | $    357,983 |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS SEE ENDT DEDUCTIBLE. | INCL |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | 5 | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | INCL |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS                DEDUCTIBLE FOR EACH ACCIDENT. | |
| AUTO MEDICAL PAYMENTS | 2 | $    10,000    EACH INSURED | INCL |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | 2 | SEE ENDT | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | SEE ENDT | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDT DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | $    12,935 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDT DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | $    60,784 |
| PHYSICAL DAMAGE TOWING AND LABOR | | FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| | | TAX/SURCHARGE/FEE | $    2,519.00 |
| | | PREMIUM FOR ENDORSEMENTS | $    6,841 |
| | | *ESTIMATED TOTAL PREMIUM | $ 441,062.00 |

*This policy may be subject to final audit.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | FL | IF ANY | INCL |
| Excess Coverage | | | |
| TOTAL HIRED AUTO PREMIUM | | | |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,

2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| TOTAL HIRED AUTO PREMIUM | | | |

For "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

ITEM FOUR
SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| COVERED AUTOS LIABILITY COVERAGE — Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | NJ | IF ANY | INCL |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" used in your motor carrier operations, cost of hire means:

1.  The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,
2.  The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3.  The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE — Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

ITEM FOUR
SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | NY | IF ANY | INCL |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,
2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3. The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| COVERED AUTOS LIABILITY COVERAGE — Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | PA | IF ANY | INCL |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | INCL |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,
2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3. The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE — Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Physical Damage Coverages --Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | FL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 100 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $35,000 | INCL |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | FL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO. | $35,000 | INCL |
| TOTAL HIRED AUTO PREMIUM | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Physical Damage Coverages --Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | NJ | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000    DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $35,000 | INCL |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS               DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | NJ | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000    DEDUCTIBLE FOR EACH COVERED AUTO. | $35,000 | INCL |
| TOTAL HIRED AUTO PREMIUM | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Physical Damage Coverages --Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | NY | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000   DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $35,000 | INCL |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS           DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | NY | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000   DEDUCTIBLE FOR EACH COVERED AUTO. | $35,000 | INCL |
| TOTAL HIRED AUTO PREMIUM | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

ITEM FOUR
SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Physical Damage Coverages --Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | PA | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000     DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $35,000 | INCL |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS              DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | PA | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000     DEDUCTIBLE FOR EACH COVERED AUTO. | $35,000 | INCL |
| | | TOTAL HIRED AUTO PREMIUM | | INCL |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment — Other Than Physical Damage Coverages | | | | | |
|---|---|---|---|---|---|
| COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | | PREMIUM | |
| | | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability — Primary Coverage | | | | | |
| Covered Autos Liability — Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| TOTAL HIRED AUTO PREMIUM | | | | | |
| Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers. | | | | | |

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Cost Of Hire Rating Basis For Mobile or Farm Equipment --Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | | PREMIUM | |
| COVERAGE | STATE | LIMIT OF INSURANCE | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| COMPREHENSIVE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | | | |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | | | |
| COLLISION | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO. | | | | |
| TOTAL HIRED AUTO PREMIUM | | | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any auto that is leased, hired, rented or borrowed with a driver.

ITEM FOUR

SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)

| Rental Period Rating Basis For Mobile Or Farm Equipment | | | | | |
|---|---|---|---|---|---|
| COVERAGE | TOWN AND STATE WHERE THE JOB SITE IS LOCATED | ESTIMATED NUMBER OF DAYS EQUIPMENT WILL BE RENTED | | PREMIUM | |
| | | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability – Primary Coverage | | | | | |
| Covered Autos Liability – Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits  (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| TOTAL HIRED AUTO PREMIUMS | | | | | |

ITEM FIVE

SCHEDULE FOR NON-OWNERSHIP COVERED AUTOS LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 143 | INCL |
| | Number Of Partners (Active and Inactive) | | |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | |
| | Number Of Partners (Active and Inactive) | | |
| Social Service Agencies | Number Of Employees | | |
| | Number Of Volunteers Who Regularly Use Autos To Transport Clients | | |
| | Number Of Partners (Active and Inactive) | | |
| TOTAL NON-OWNERSHIP COVERED AUTOS LIABILITY  PREMIUM | | | INCL |

ITEM SIX
SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS

| Type Of Risk (Check one): | ☐ Public Autos | ☐ Leasing Or Rental Concerns |
|---|---|---|
| Rating Basis (Check one): | ☐ Gross Receipts (Per $100) | ☐ Mileage (Per Mile) |
| Estimated Yearly (Check One): | ☐ Gross Receipts (Per $100) | ☐ Mileage |

| Premiums | |
|---|---|
| Covered Autos Liability | |
| Personal Injury Protection | |
| Added Personal Injury Protection | |
| Property Protection Insurance (Michigan Only) | |
| Auto Medical Payments | |
| Medical Expense And Income Loss Benefits (Virginia Only) | |
| Comprehensive | |
| Specified Causes Of Loss | |
| Collision | |
| Towing And Labor | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.

Gross receipts does not include:

1. Amounts paid to air, sea or land carriers operating under their own permits.
2. Advertising revenue.
3. Taxes collected as a separate item and paid directly to the government.
4. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

 © Insurance Services Office, Inc., 2011

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. **Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © Insurance Services Office, Inc., 2011

4. **Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

   **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   **(1)** When all of the work called for in your contract has been completed;

   **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 © Insurance Services Office, Inc., 2011 CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    **a. Comprehensive Coverage**

    From any cause except:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft;

    (3) Windstorm, hail or earthquake;

    (4) Flood;

    (5) Mischief or vandalism; or

    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    **c. Collision Coverage**

    Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    **a.** Glass breakage;

    **b.** "Loss" caused by hitting a bird or animal; and

    **c.** "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    **a. Transportation Expenses**

    We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

    **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

    (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

   (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

© Insurance Services Office, Inc., 2011

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

  **(1)** Snow removal;

  **(2)** Road maintenance, but not construction or resurfacing; or

  **(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

 © Insurance Services Office, Inc., 2011

COMMERCIAL AUTO
CA 01 12 12 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

For a covered "auto" licensed or principally garaged in New York, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The third paragraph of **A. Coverage** is replaced by the following:

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense", even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered "Autos" Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. Who Is An Insured does not include anyone loading or unloading a covered "auto" except you, your "employees", a lessee or borrower or any of their "employees".

3. **Supplementary Payments** is amended as follows:

   **a.** Paragraph **(5)** is replaced by the following:

   **(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

   **b.** The following paragraphs are added:

   **(7)** All expenses incurred by an "insured" for first aid to others at the time of an "accident".

   **(8)** The cost of appeal bonds.

4. Paragraph **b. Out-of-state Coverage Extensions** in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

   **b.** While a covered "auto" is used or operated in any other state or Canadian province, we will provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such jurisdiction.

5. **Exclusions** is changed as follows:

   **a.** The **Employee Indemnification And Employer's Liability** Exclusion is replaced by the following:

   **Employee Indemnification And Employer's Liability**

   This insurance does not apply to:

   "Bodily injury" to an "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing the duties related to the conduct of the "insured's" business.

 © Insurance Services Office, Inc., 2015

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**b.** The **Fellow Employee** Exclusion is replaced by the following:

**Fellow Employee**

This insurance does not apply to:

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

However, this exclusion only applies if the fellow "employee" is entitled to benefits under any of the following: workers' compensation, unemployment compensation or disability benefits law, or any similar law.

**c.** The **Handling Of Property** Exclusion does not apply.

**d.** The **Movement Of Property By Mechanical Device** Exclusion does not apply.

**e.** The **Operations** Exclusion does not apply.

**f.** The **Completed Operations** Exclusion does not apply.

**g.** The **Pollution** Exclusion does not apply.

**h.** The **War** Exclusion is replaced by the following:

**War**

"Bodily injury" or "property damage" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**i.** The **Racing** Exclusion does not apply.

**j.** The following exclusion is added:

**Spousal Liability**

"Bodily injury" to or "property damage" of the spouse of an "insured". However, we will pay all sums an "insured" legally must pay if named as a third-party defendant in a legal action commenced by his or her spouse against another party.

**6.** If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is equal to or greater than $160,000, the **Limit Of Insurance** provision is changed by the following:

**Limit Of Insurance** applies except that we will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act for:

**a.** "Bodily injury" not resulting in death of any one person caused by any one "accident";

**b.** "Bodily injury" not resulting in death of two or more persons caused by any one "accident";

**c.** "Bodily injury" resulting in death of any one person caused by any one "accident";

**d.** "Bodily injury" resulting in death of two or more persons caused by any one "accident"; or

**e.** "Property damage" in any one "accident".

This provision will not change our total Limit of Insurance.

**7.** If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is less than $160,000, the **Limit Of Insurance** provision is replaced by the following:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident", is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations, except for those damages for "bodily injury" resulting in death. We will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act as follows:

**a.** "Bodily injury" not resulting in death of any one person caused by any one "accident";

**b.** "Bodily injury" not resulting in death of two or more persons caused by any one "accident"; or

**c.** "Property damage" in any one "accident".

        © Insurance Services Office, Inc., 2015        CA 01 12 12 15

This provision will not change our total Limit of Insurance.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

In addition, our Limit of Insurance for "bodily injury" resulting in death is as follows:

**a.** Up to $50,000 for "bodily injury" resulting in death of any one person caused by any one "accident"; and

**b.** Up to $100,000 for "bodily injury" resulting in death of two or more persons caused by any one "accident", subject to a $50,000 maximum for any one person.

If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not exhausted by payment of damages for:

**a.** "Bodily injury" not resulting in death;

**b.** "Property damage"; or

**c.** "Covered pollution cost or expense";

any remaining amounts will be used to pay damages for "bodily injury" resulting in death, to the extent the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not increased.

**8.** If forming part of the Policy, the Nuclear Energy Liability Exclusion (Broad Form) Endorsement does not apply to the Commercial Auto Coverage Part.

**B. Changes In Trailer Interchange Coverage**

Paragraph **A.2.** of **Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form is replaced by the following:

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**C. Changes In Physical Damage Coverage**

**1.** The **Owned Autos You Acquire After The Policy Begins** provision of Section **I – Covered Autos** is replaced by the following:

**Owned Autos You Acquire After The Policy Begins**

**a.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**b.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**(1)** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

**(2)** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**c.** Notwithstanding the provisions of Paragraphs **a.** and **b.,** during the term of the Coverage Part, Physical Damage Coverage for an additional or replacement private passenger "auto" shall not become effective until you notify us and request coverage for the "auto".

However, if you replace a private passenger "auto" currently insured with us for a continuous period of at least 12 months, we will provide the same coverage which applied to the replaced "auto", without a coverage request, for five calendar days beginning on the date you acquired the replacement "auto". After five calendar days, coverage will not apply until you request coverage for the "auto".

 © Insurance Services Office, Inc., 2015

**2.** The **War Or Military Action** Exclusion is replaced by the following:

**War Or Military Action**

War, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**3. Deductible** is replaced by the following:

**Deductible**

For each covered "auto", our obligation to pay for, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations.

**4.** The following provisions are added to **Physical Damage Coverage** and apply in place of any conflicting policy provisions:

**a. Mandatory Inspection For Physical Damage Coverage**

(1) We have the right to inspect any private passenger "auto", including a non-owned "auto", insured or intended to be insured under this Coverage Part before physical damage coverage shall become effective, except to the extent that this right is prescribed and limited by New York State Department of Financial Services' Insurance Regulation No. 79 (11 NYCRR 67) or Section 3411 of the New York Insurance Law.

(2) When an inspection is required by us, you must cooperate and make the "auto" available for the inspection.

**b. "Auto" Repairs Under Physical Damage Coverage**

Payment of a physical damage "loss" shall not be conditioned upon the repair of the "auto". We may not require that repairs be made by a particular repair shop or concern.

**c. Recovery Of Stolen Or Abandoned "Autos"**

If a private passenger "auto" insured under this Coverage Part for physical damage coverage is stolen or abandoned, we or our authorized representative shall, when notified of the location of the "auto", have the right to take custody of the "auto" for safekeeping.

**D. Changes In Conditions**

**1.** Paragraphs **a.** and **b.(2)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms are replaced by the following:

We have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us:

**a.** In the event of "accident", claim, "suit" or "loss", you or someone on your behalf must give us or our authorized representative notice as soon as reasonably possible of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

Written notice by or on behalf of the injured person or any other claimant to our authorized representative shall be deemed notice to us.

**b.** Additionally, you and any other involved "insured" must:

(2) Send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit" as soon as reasonably possible.

**2.** The **Legal Action Against Us** Condition in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

**Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us until:

(1) There has been full compliance with all of the terms of the Coverage Form; and

(2) Under Covered Autos Liability Coverage, we, by written agreement with the "insured" and the claimant, agree that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No person or organization has any right under this Policy to bring us into any action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2015

CA 01 12 12 15

**b.** With respect to "bodily injury" claims, if we deny coverage or do not admit liability because an "insured" or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an "insured":

**(1)** Brings an action to declare the rights of the parties under the Policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**3.** Paragraph **d.** of the **Other Insurance** Condition in the Business Auto Coverage Form and Paragraph **h. Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

When this Coverage Form and any valid and collectible insurance under any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**4.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as soon as practicable, as required under this Coverage Part, shall not invalidate any claim made by the "insured", injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the "insured", injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**5.** The **Loss Payment – Physical Damage Coverages** Condition is replaced by the following:

**Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for or replace damaged or stolen property; or

**b.** Return the stolen or damaged property, at our expense. We will pay for any damage that results to the "auto" from the "loss".

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**6.** The **Two Or More Coverage Forms Or Policies Issued By Us** Condition in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

This condition does not apply to liability coverage.

**7.** The **Premium Audit** Condition is amended by the addition of the following:

An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the Policy or the anniversary date, if this is a continuous policy or a policy written for a term longer than one year. But the audit may be waived if:

**a.** The total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500; or

**b.** The Policy requires notification to the insurer with specific identification of any additional exposure units (e.g., autos) for which coverage is requested.

**c.** Except as provided in Paragraphs **a.** and **b.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© Insurance Services Office, Inc., 2015

## E. Changes In Definitions

The **Definitions** section in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

1. The "covered pollution cost or expense" definition is replaced by the following:

   "Covered pollution cost or expense" means any cost or expense arising out of:

   **a.** Any request, demand, order or statutory or regulatory requirement; or

   **b.** Any claim or "suit" by or on behalf of a governmental authority demanding;

   that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2. The "insured contract" definition is replaced by the following:

   "Insured contract" means:

   **a.** A lease of premises;

   **b.** A sidetrack agreement;

   **c.** An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

   **d.** Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **e.** An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

   **f.** That part of any contract or agreement entered into, as part of your business, by you or any of your employees, pertaining to the rental or lease of any "auto"; or

   **g.** That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

**a.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver;

**b.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority; or

**c.** Under which the "insured" assumes liability for injury or damage caused by the dumping, discharge or escape of:

   **(1)** Irritants, pollutants or contaminants that are, or that are contained in, any property that is:

   **(a)** Being moved from the place where such property or pollutants are accepted by the "insured" for movement into or onto the covered "auto";

   **(b)** Being transported or towed by the covered "auto";

   **(c)** Being moved from the covered "auto" to the place where such property or pollutants are finally delivered, disposed of or abandoned by the "insured";

   **(d)** Otherwise in the course of transit; or

   **(e)** Being stored, disposed of, treated or processed in or upon the covered "auto" other than fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for, or result from, the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts.

   **(2)** Irritants, pollutants or contaminants not described in Paragraph **(1)** above unless:

   **(a)** The pollutants or any property in which the pollutants are contained is upset, overturned or damaged as a result of the maintenance or use of the covered "auto"; and

   © Insurance Services Office, Inc., 2015

     **(b)** The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

**3.** The "mobile equipment" definition is replaced by the following:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     **(1)** Power cranes, shovels, loaders, diggers or drills; or

     **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers.

  **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

     **(2)** Cherry pickers and similar devices used to raise or lower workers.

  **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     **(1)** Equipment designed primarily for:

       **(a)** Snow removal;

       **(b)** Road maintenance, but not construction or resurfacing; or

       **(c)** Street cleaning;

     **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

"Mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

However, the operation of:

  **a.** Equipment described in Paragraphs **f.(2)** and **f.(3)** above; or

  **b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

is considered operation of "mobile equipment" and not operation of an "auto".

**F. Changes In Forms And Endorsements**

  **1.** All references to Underinsured Motorists Coverage shall mean Supplementary Uninsured/Underinsured Motorists Coverage.

  **2.** If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, then:

  **a.** Paragraph **B.2.** is replaced by the following:

     **2.** We will have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

 © Insurance Services Office, Inc., 2015

   **b.** Exclusion **3.** is replaced by the following:

     **3.** We will not pay for "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**3.** If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

   **6.** "Bodily injury" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**4.** If the Single Interest Automobile Physical Damage Insurance Policy is attached, the **War** Exclusion is replaced by the following:

This insurance does not apply to "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**5.** If the Stated Amount Insurance endorsement is attached, then Paragraph **C.2.** of that endorsement does not apply.

**6.** If the Trailer Interchange Coverage endorsement is attached, then Paragraph **A.2.** is replaced by the following:

   **2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**7.** If the Motor Carrier Endorsement is attached, then Paragraph **B.1.c.** is replaced by the following:

   **c.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

COMMERCIAL AUTO
CA 02 67 06 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.2.b.** of the Common Policy Conditions, **Cancellation,** is replaced by the following:

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**B.** Paragraphs **A.4.** and **A.5.** of the Common Policy Conditions, **Cancellation,** are replaced by the following:

**4.** Notice of cancellation will state the effective date of, and reason(s) for, the cancellation. The policy period will end on that date.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

**7.** If this Policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

**a.** It is a new or renewal policy, it may not be cancelled by the first Named Insured during the first 60 days immediately following the effective date of the Policy or renewal, except for one of the following reasons:

**(1)** The covered "auto" is completely destroyed such that it is no longer operable;

© Insurance Services Office, Inc., 2016

**(2)** Ownership of the covered "auto" is transferred; or

**(3)** The Named Insured has purchased another policy covering the motor vehicle insured under this Policy.

**b.** It is a new policy, we may not cancel it during the first 60 days immediately following the effective date of the Policy for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

**D.** The following condition is added:

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**2.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

**3.** Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

© Insurance Services Office, Inc., 2016
CA 02 67 06 17

COMMERCIAL AUTO
CA 01 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – PHYSICAL DAMAGE INSPECTION

For a covered "private passenger auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following provisions are added to **Physical Damage Coverage** and apply in place of any conflicting policy provision:

**A. Changes In Physical Damage Coverage**

**Mandatory Inspection For Physical Damage Coverage**

1. We have the right to inspect any "private passenger auto", including a non-owned "private passenger auto", insured or intended to be insured under this Coverage Form, before Physical Damage Coverage shall be effective.

2. During the term of the policy, coverage for an additional or replacement "private passenger auto" shall not become effective until the "insured" notifies us and requests coverage for the "private passenger auto". However, if the "insured" replaces a "private passenger auto" insured with us for at least 12 months before the replacement date with a "private passenger auto" acquired during the policy period, we will provide the same coverage which applied to the replaced "private passenger auto" for three days beginning on the date the "insured" acquires the replacement "private passenger auto". We will also provide an additional day of coverage for each Saturday, Sunday or New Jersey state holiday falling within the three days. After three days, coverage will not apply until the "insured" notifies us and requests coverage for the "private passenger auto".

3. When an inspection is required by us, the "insured" shall cooperate and make the "private passenger auto" available for the inspection.

**B. Changes In Definitions**

As used in this endorsement:

"Private passenger auto" means a private passenger "auto" of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or camper-type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the "insured" other than farming or ranching. An "auto" owned by a farm family co-partnership or corporation, which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger auto owned by two or more relatives resident in the same household.

© Insurance Services Office, Inc., 2012

COMMERCIAL AUTO
CA 01 88 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES

For a covered "auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(4)** of the **Who Is An Insured** provision is replaced by the following:

   **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   However, this paragraph does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

2. Exclusion **11. Pollution** is amended by the addition of the following:

   This exclusion does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

**B. Changes In Conditions**

The following is added to the **Loss Payment – Physical Damages Coverages** Condition:

If we pay the amount necessary to repair the stolen or damaged property, you have the option to use either:

**a.** An "auto" repair facility with whom we have an arrangement; or

**b.** An "auto" repair facility of your choice;

in any repairs to the "auto".

If you choose to use an "auto" repair facility other than an "auto" repair facility with whom we have an arrangement, we will pay you in accordance with the terms and conditions, including price, provided by the "auto" repair facility with whom we have an arrangement.

 © Insurance Services Office, Inc., 2012

COMMERCIAL AUTO
CA 02 25 08 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, New York, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**I.** If you are an individual and a covered "auto" you own is predominantly used for nonbusiness purposes, the **Cancellation** Common Policy Condition does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

1. You may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. When this Policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel the entire Policy for any reason provided we mail you notice within this period. If we cancel for nonpayment of premium, we will mail you at least 15 days' notice and such notice of cancellation on this ground shall inform the first Named Insured of the amount due. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation. If we cancel for any other reason, we will mail you at least 20 days' notice.

3. When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel it or any insurance deemed severable only for one or more of the following reasons:

   **a.** Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due. If we cancel for this reason, we will mail you at least 15 days' notice. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation.

   **b.** Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period, other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law, or one or more administrative suspensions arising out of the same incident which has or have been terminated prior to the effective date of cancellation. If we cancel for this reason, we will mail you at least 20 days' notice.

© Insurance Services Office, Inc., 2014

c. We replace this Policy with another one providing similar coverages and the same limits for a covered "auto" of the private passenger type. The replacement policy will take effect when this Policy is cancelled, and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

d. This Policy has been written for a period of more than one year or without a fixed expiration date. We may cancel for this reason, subject to New York Laws, only at an anniversary of its original effective date. If we cancel for this reason, we will mail you at least 45 but not more than 60 days' notice.

e. This Policy was obtained through fraud or material misrepresentation. If we cancel for this reason, we will mail you at least 20 days' notice.

f. Any "insured" made a fraudulent claim. If we cancel for this reason, we will mail you at least 20 days' notice.

If one of the reasons listed in this Paragraph **3.** exists, we may cancel the entire Policy.

4. Instead of cancellation, we may condition continuation of this Policy on a reduction of Covered Autos Liability Coverage or elimination of any other coverage. If we do this, we will mail you notice at least 20 days before the date of the change.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send you any premium refund due. The refund will be pro rata.

However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B. Nonrenewal**

1. If this Policy is written for a period of less than one year and we decide, subject to New York Laws, not to renew or continue it, or to condition renewal or continuation on a reduction of Covered Autos Liability Coverage or elimination of any other coverage, we will mail or deliver to you written notice at least 45 but not more than 60 days before the end of the policy period.

2. We will have the right not to renew or continue a particular coverage, subject to New York Laws, only at the end of each 12-month period following the effective date of the first of the successive policy periods in which the coverage was provided.

3. We do not have to mail notice of nonrenewal if you, your agent or broker or another insurance company informs us in writing that you have replaced this Policy or that you no longer want it.

**C. Mailing Of Notices**

We will mail or deliver our notice of cancellation, reduction of limits, elimination of coverage or nonrenewal to the address shown on the Policy. However, we may deliver any notice instead of mailing it. If notice is mailed, a United States Postal Service certificate of mailing will be sufficient proof of notice.

II. For all policies other than those specified in Section **I.,** the **Cancellation** Common Policy Condition is completely replaced by the following:

**Ending This Policy**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. When this Policy is in effect 60 days or less and is not a renewal or continuation policy, we may cancel the entire Policy by mailing to the first Named Insured written notice at least 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **3.** below. We will provide the first Named Insured with 20 days' written notice if we cancel for any other reason.

**3.** When this Policy is in effect more than 60 days or is a renewal or continuation policy, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**a.** Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**b.** Conviction of a crime arising out of acts increasing the hazard insured against;

**c.** Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim thereunder;

**d.** After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**e.** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

**f.** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

**g.** A determination by the Superintendent that the continuation of the Policy would violate, or would place us in violation of, any provision of the Insurance Code;

**h.** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the "insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. However, if we cancel for this reason, the first Named Insured may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. We will also send a copy of this notice, simultaneously, to the Department of Financial Services; or

**i.** Suspension or revocation during the required policy period of the driver's license of any person who continues to operate a covered "auto", other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law or one or more administrative suspensions arising from the same incident which has or have been terminated prior to the effective date of cancellation.

**4.** Regardless of the number of days this Policy has been in effect, if:

**a.** This Policy covers "autos" subject to the provisions of Section 370 (a) and (b) of the New York Vehicle and Traffic Law; and

**b.** The Commissioner of the Department of Motor Vehicles deems this Policy to be insufficient for any reason;

we may cancel this Policy by giving you notice of such insufficiency 45 days before the effective date of cancellation to permit you to replace this Policy.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata.

However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2014

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Notice will include the reason for cancellation. We will mail or deliver our notice to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing will be sufficient proof of notice.

**B. Notices Of Nonrenewal And Conditional Renewal**

1. If we decide not to renew or continue this Policy, we will send notice as provided in Paragraph **3.** below.

2. If we conditionally renew this Policy upon:

   **a.** A change of limits;

   **b.** A change in type of coverage;

   **c.** A reduction of coverage;

   **d.** An increased deductible;

   **e.** An addition of exclusion; or

   **f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or as a result of experience rating, retrospective rating or audit;

   we will send notice as provided in Paragraph **3.** below.

3. If we decide not to renew or continue this Policy, or to conditionally renew this Policy as provided in Paragraphs **1.** and **2.** above, we will mail the first Named Insured notice at least 60 but not more than 120 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date.

4. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that you have replaced this Policy or no longer want it.

5. Any notice of nonrenewal or conditional renewal will be mailed to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

6. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase, and description of any other changes.

7. If we violate any of the provisions of Paragraph **3.**, **5.** or **6.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **a.** And if notice is provided prior to the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel.

   **b.** And if the notice is provided on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

8. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

   **a.** Upon expiration of the 60-day period, unless Subparagraph **b.** below applies; or

   **b.** Notwithstanding the provisions in Paragraphs **7.a.** and **7.b.**, as of the renewal date of the Policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the Policy.

© Insurance Services Office, Inc., 2014
CA 02 25 08 14

**C.** With respect to the Auto Dealers Coverage Form:

   **1.** Paragraph **F.6. Limits Of Insurance – General Liability Coverages** of **Section II – General Liability Coverages** and Paragraph **E.4. Limit Of Insurance And Deductible** of **Section III – Acts, Errors Or Omissions Liability Coverages** are amended as follows:

      **a.** The Aggregate Limits Of Insurance for General Liability Coverages and the "Acts, Errors Or Omissions" Liability Aggregate Limit shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Section **II**, Paragraph **B.7.** of this endorsement.

      **b.** The last sentence of Paragraphs **F.6.** and **E.4.** does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

   **2.** If the Limited Product Withdrawal Expense Endorsement is attached, then Paragraph **B.2.** is amended as follows:

      **a.** The Product Withdrawal Aggregate Limit shown in the Schedule will be increased in proportion to any policy extension provided in accordance with Section **II,** Paragraph **B.7.** of this endorsement.

      **b.** The last sentence of Paragraph **B.2.** does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

POLICY NUMBER:  BAP 0191409-02

**COMMERCIAL AUTO**
**CA 21 14 10 16**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

---

**Named Insured:**   ASPHALT PAVING SYSTEMS, INC.

**Endorsement Effective Date:**

---

## SCHEDULE

---

**Limit Of Insurance:**   $1,000,000                                    **Each "Accident"**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   **a.** The limit of any applicable liability bonds or policies has been exhausted by judgments or payments; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such tentative settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Schedule or Declarations as:

1. An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

---

**CA 21 14 10 16**                    © Insurance Services Office, Inc., 2016                    **Page 1 of 6**

    **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

    **c.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to any of the following:

**1.** With respect to an "uninsured motor vehicle", any claim settled without our consent.

**2.** Damages for pain, suffering and inconvenience resulting from "bodily injury" caused by an "accident" involving an "uninsured motor vehicle" or an "underinsured motor vehicle", unless the injured person has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act. The injured person's legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act will be determined by the liability tort limitation, if any, applicable to that person.

**3.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**4.** The direct or indirect benefit of any insurer of property.

**5.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**6.** "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

**7.** The first $500 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

**8.** "Property damage" caused by a hit-and-run vehicle.

**9.** Punitive or exemplary damages.

**10.** "Bodily injury" or "property damage" sustained by any "insured" who is an owner of a motor vehicle:

    **a.** Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation; or

    **b.** Required to be insured in accordance with New Jersey law or regulation, but not insured for this coverage or any similar coverage.

However, this exclusion does not apply to an individual Named Insured, and such Named Insured's spouse, unless the individual Named Insured or such Named Insured's spouse is "occupying", at the time of an "accident", a motor vehicle described in Subparagraph **a.** or **b.** above.

**11.** "Bodily injury" or "property damage" arising directly or indirectly out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the Limit Of Insurance shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle".

    **a.** However, subject to our maximum Limit of Insurance for this coverage, if:

      **(1)** An "insured" is not the individual Named Insured under this Policy;

      **(2)** That "insured" is an individual Named Insured under one or more other policies providing similar coverage; and

      **(3)** All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

**b.** However, subject to our maximum Limit of Insurance for this coverage, if:

**(1)** An "insured" is not the individual Named Insured under this Policy or any other policy;

**(2)** That "insured" is insured as a "family member" under one or more other policies providing similar coverage; and

**(3)** All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as a "family member".

However, Paragraphs **D.1.a.** and **D.1.b.** do not apply to "employees" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured.

**2.** With respect to damages resulting from an "accident" involving an "uninsured motor vehicle", we will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**3.** With respect to damages resulting from an "accident" involving an "underinsured motor vehicle", the Limit of Insurance shall be reduced by all sums paid by or for anyone who may be legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

**4.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form attached to this Coverage Part.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits.

**E. Changes In Conditions**

The Conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

However, if an "insured" is:

**(1)** An individual Named Insured under one or more policies providing similar coverage;

**(2)** Not "occupying" a vehicle owned by that individual Named Insured; and

**(3)** Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

However, if an "insured" is:

**(a)** Insured as a "family member" under one or more policies providing similar coverage;

**(b)** Not an individual Named Insured under this or any other policy; and

**(c)** Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as a "family member".

 © Insurance Services Office, Inc., 2016

b. Any insurance we provide with respect to a vehicle:

(1) The Named Insured does not own; or

(2) Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured And Underinsured Motorists Coverage under this Coverage Form,

shall be excess over any other collectible uninsured motorists or underinsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver or "stolen vehicle" is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

c. A person seeking coverage under this endorsement must also promptly notify us, in writing, of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle", and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

a. Have been given prompt notice, in writing, of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this endorsement; and

(2) We also have a right to recover the advanced payment.

4. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

          © Insurance Services Office, Inc., 2016          CA 21 14 10 16

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

## F. Additional Definitions

As used in this endorsement:

**1.** "Property damage" means damage to a covered "auto", or to any property of an "insured" while contained in a covered "auto".

**2.** "Family member" means a person related to an individual Named Insured by blood, marriage, or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident";

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent;

**c.** That, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose operator or owner cannot be identified and that hits, or causes an "accident" resulting in "bodily injury" without hitting:

    **(1)** An individual Named Insured or any "family member";

    **(2)** A vehicle that the Named Insured or any "family member", if the Named Insured is an individual, is "occupying"; or

    **(3)** A covered "auto";

**d.** For which the only available coverage is a special automobile policy, as defined by New Jersey law; or

**e.** That is a "stolen vehicle".

However, an "uninsured motor vehicle" does not include any vehicle:

    **(1)** Owned by or furnished or available for the regular use of the Named Insured or any "family member", except a "stolen vehicle", if the Named Insured is an individual;

    **(2)** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

    **(3)** Owned by any governmental unit or agency;

    **(4)** Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation;

    **(5)** Operated on rails or crawler treads;

    **(6)** Designed for use mainly off public roads while not on public roads; or

    **(7)** While located for use as a residence or premises.

**5.** "Underinsured motor vehicle" means the following:

**a.** With respect to an "insured" who:

    **(1)** Is not the individual Named Insured under this Policy;

    **(2)** Is an individual Named Insured under one or more other policies providing similar coverage; and

    **(3)** Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

    "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

**b.** With respect to an "insured" who:

    **(1)** Is not the individual Named Insured under this Policy or any other policy;

    **(2)** Is insured as a "family member" under one or more other policies providing similar coverage; and

    **(3)** Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

    "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as a "family member".

 © Insurance Services Office, Inc., 2016

**c.** With respect to any other "insured" who is not described in Paragraph **a.** or **b.** above, "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the Limit of Insurance for this coverage.

However, an "underinsured motor vehicle" does not include any vehicle:

**(1)** Owned or operated by a self-insurer under any applicable motor vehicle law;

**(2)** Owned by any governmental unit or agency;

**(3)** Operated on rails or crawler treads;

**(4)** Designed for use mainly off public roads while not on public roads;

**(5)** While located for use as a residence or premises; or

**(6)** Owned by or furnished or available for the regular use of the Named Insured or, if the Named Insured is an individual, any "family member".

**6.** "Stolen vehicle" means a vehicle that is a covered "auto" and, at the time of the "accident", the vehicle is operated by an unknown third person without the consent of the "insured".

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 21 72 06 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:**   ASPHALT PAVING SYSTEMS, INC. | |
| **Endorsement Effective Date:**    04/01/2018 | |

## SCHEDULE

| | |
|---|---|
| **Limit Of Insurance:**   $1,000,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such tentative settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled or judgment reached without our consent, unless our right to recover payment has not been prejudiced by such settlement or judgment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** "Bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by a vehicle owned by that individual Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other coverage form or policy; or

**d.** Any "insured" with respect to damages for pain, suffering, mental anguish or inconvenience unless the "bodily injury" consists in whole or in part of:

**(1)** Significant and permanent loss of an important bodily function;

**(2)** Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

**(3)** Significant and permanent scarring or disfigurement; or

**(4)** Death.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability Coverage form, No-fault Coverage endorsement, Medical Payments Coverage endorsement, or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

**3.** We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**4.** We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

 © Insurance Services Office, Inc., 2016 CA 21 72 06 17

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage Nonstacked as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

**a.** If there is other applicable insurance available under one or more coverage forms, policies or provisions of coverage, any recovery for damages sustained by an individual Named Insured or any "family member":

**(1)** While "occupying" a vehicle owned by that Named Insured or any "family member" may equal, but not exceed, the limit of insurance for Uninsured Motorists Coverage applicable to that vehicle.

**(2)** While "occupying" a vehicle not owned by that Named Insured or any "family member" may equal, but not exceed, the sum of:

**(a)** The limit of insurance for Uninsured Motorists Coverage applicable to the vehicle such Named Insured or any "family member" was "occupying" at the time of the "accident"; and

**(b)** The highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to such Named Insured or any "family member".

**(3)** While not "occupying" any vehicle may equal, but not exceed, the highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to an individual Named Insured or any "family member".

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any collectible uninsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this coverage form is provided:

**(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** A person seeking Uninsured Motorists Coverage must also promptly notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle"; and

© Insurance Services Office, Inc., 2016

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4.** The following condition is added:

**a. Arbitration**

**(1)** If we and an "insured" do not agree:

**(a)** Whether that person is legally entitled to recover damages under this endorsement; or

**(b)** As to the amount of damages that are recoverable by that person;

then the matter may be mediated, in accordance with the Mediation Provision contained in General Conditions, if the damages resulting from "bodily injury" are for $10,000 or less, or arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**(2)** Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**(3)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**b. Florida Arbitration Act**

If we and an "insured" agree to arbitration, the **Florida Arbitration Act** will not apply.

**c. Mediation**

**(1)** In any claim filed by an "insured" with us for:

**(a)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(b)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(c)** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**(2)** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**(3)** The request must state:

**(a)** Why mediation is being requested.

**(b)** The issues in dispute, which are to be mediated.

**(4)** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**(5)** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

© Insurance Services Office, Inc., 2016   CA 21 72 06 17

(6) The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy applies at the time of an "accident";

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident" but the amount paid under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident";

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. For which neither the driver nor owner can be identified. The land motor vehicle or "trailer" must:

      (1) Hit an individual Named Insured or any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying"; or

      (2) Cause an "accident" resulting in "bodily injury" to an individual Named Insured or any "family member" without hitting that Named Insured, any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying".

      If there is no physical contact with the land motor vehicle or "trailer", the facts of the "accident" must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned by a governmental unit or agency;

b. Designed for use mainly off public roads while not on public roads; or

c. Owned by or furnished or available for the regular use of the Named Insured, or if the Named Insured is an individual, any "family member" unless it is a covered "auto" to which the coverage form's Liability Coverage applies and liability coverage is excluded for any person or organization other than the Named Insured, or if the Named Insured is an individual, any "family member".

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 22 10 06 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:**   ASPHALT PAVING SYSTEMS, INC. | |
| **Endorsement Effective Date:**    04/01/2018 | |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows that:

### SCHEDULE

Any Personal Injury Protection deductible shown in the Declarations of

is applicable to   -.   the following "named insured" only:

        -.   each "named insured" and each dependent "family member".

-.   Work loss for "named insured" does not apply.

-.   Work loss for "named insured" and dependent "family member" does not apply.

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | subject to the total aggregate limit |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**CA 22 10 06 17**                    © Insurance Services Office, Inc., 2016                **Page 1 of 8**

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

### 1. Medical Expenses

**a.** All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

**(1)** Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

**(2)** Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

**(3)** Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

**b.** Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1), (2)** or **(3),** follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.,** if provided, supervised, ordered or prescribed only by a licensed:

**(1)** Physician, osteopathic physician, chiropractic physician or dentist; or

**(2)** Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

**(3)** A licensed hospital or ambulatory surgical center;

**(4)** An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

**(5)** An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

**(6)** A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b.;** or

**(7)** A health care clinic licensed under the Florida Health Care Clinic Act:

**(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

**(b)** Which:

**(i)** Has a licensed medical director;

**(ii)** Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

**(iii)** Provides at least four of the following medical specialties:

**i.** General medicine;

**ii.** Radiography;

**iii.** Orthopedic medicine;

**iv.** Physical medicine;

**v.** Physical therapy;

**vi.** Physical rehabilitation;

**vii.** Prescribing or dispensing outpatient prescription medication; or

**viii.** Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.,** medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

    © Insurance Services Office, Inc., 2016

**2. Replacement Services Expenses**

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

**3. Work Loss**

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

**4. Death Benefits**

**B. Who Is An Insured**

1. The "named insured".

2. If the "named insured" is an individual, any "family member".

3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

2. Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

3. Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

    **a.** Causing "bodily injury" to himself or herself intentionally; or

    **b.** While committing a felony;

4. To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

5. To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

6. To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

7. To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

8. To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

1. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this Policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

    **a.** $10,000 for medical expenses, work loss and replacement services; and

    **b.** $5,000 for death benefits.

2. Subject to Paragraph **D.1.a.**, we will pay:

    **a.** Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

    **b.** Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".

3. Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this Policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1.**, **A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses may be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

## E. Changes In Conditions

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   Compliance with the following duties is a condition precedent to receiving benefits:

   In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

   If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

   A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   **a.** No legal action may be brought against us until there has been full compliance with all terms of this Policy. In addition, no legal action may be brought against us:

   **(1)** Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

   **(2)** Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

   **(3)** With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

   **(a)** Pay the overdue claim; or

   **(b)** Agree to pay for future treatment not yet rendered;

   in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

   **b.** If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

**a.** We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

**b.** If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

**c.** The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

**Policy Period, Coverage Territory**

The insurance under this section applies only to "accidents" which occur during the policy period:

**a.** In the state of Florida;

**b.** As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

**c.** As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

© Insurance Services Office, Inc., 2016

## F. Additional Conditions

The following conditions are added:

### 1. Mediation

**a.** In any claim filed by an "insured" with us for:

   **(1)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

   **(2)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

   **(3)** "Loss" to a covered "auto" or its equipment, in any amount,

   either party may make a written demand for mediation of the claim prior to the institution of litigation.

**b.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**c.** The request must state:

   **(1)** Why mediation is being requested.

   **(2)** The issues in dispute, which are to be mediated.

**d.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**e.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**f.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

### 2. Payment Of Benefits

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

### 3. Modification Of Policy Coverages

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the Policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the Policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

 © Insurance Services Office, Inc., 2016 CA 22 10 06 17

**4. Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**5. Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this Policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**7. Insured's Right To Personal Injury Protection Information**

**a.** In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

**b.** If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

**1.** "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

**a.** Serious jeopardy to "insured's" health;

**b.** Serious impairment to bodily functions; or

**c.** Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

However, "motor vehicle" does not include:

   a. A mobile home;

   b. Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the Policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

   a. A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   b. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   c. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and

   c. Not primarily for the convenience of the patient, physician or other health care provider.

© Insurance Services Office, Inc., 2016

CA 22 10 06 17

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 22 30 03 16**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# NEW JERSEY PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | ASPHALT PAVING SYSTEMS, INC. |
| **Endorsement Effective Date:** | 04-01-18 |

### SCHEDULE

**Extended Medical Expense Benefits**

| Benefits | Limit Of Insurance | |
|---|---|---|
| **Medical Expenses** | $10,000 | **Per Person Per "Accident"** |

**PEDESTRIAN PERSONAL INJURY PROTECTION** Coverage ONLY is provided for the following vehicles designed for use principally on public roads which are not "private passenger automobiles" and to which the liability coverage of this Coverage Form applies.

| Covered Auto | Premium |
|---|---|
| | |
| | |
| | |

| | |
|---|---|
| -. | **Medical Expense Benefits Deductible** |

Unless otherwise indicated to the left, medical expense benefits are subject to a deductible of $250 per "accident".

When indicated to the left, medical expense benefits applicable to:

**A.** The "named insured" and, if the "named insured" is an individual, any "family members" will be subject to a deductible of _____ per "accident" instead of the $250 deductible; and

**B.** An "eligible injured person" other than the "named insured" and, if the "named insured" is an individual, any "family members" shall be subject to a separate deductible of $250 per "accident".

| | |
|---|---|
| X | **Medical Expense Benefits Copayment** |

Medical expense benefits are subject to a copayment of 20% per "accident" for amounts payable between the applicable deductible and $5,000.

| | |
|---|---|
| -. | **Deletion Of Benefits Other Than Medical Expenses Option** |

All Personal Injury Protection Benefits other than medical expense benefits are deleted with respect to the "named insured" and, if the "named insured" is an individual, any "family members", when indicated to the left. Refer to the Deletion Of Benefits Other Than Medical Expenses Provision.

| | |
|---|---|
| -. | **Medical Expense Benefits-As-Secondary Option** |

If the "named insured" is an individual, medical expense benefits with respect to the "named insured" and "family members" are secondary to the health benefits plans under which the "named insured" and "family members" are insured, when indicated to the left.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverages

### 1. Personal Injury Protection

We will pay Personal Injury Protection Benefits for "bodily injury" sustained by an "eligible injured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading or unloading, of a "private passenger auto" as an auto.

These Personal Injury Protection Benefits consist of:

#### a. Medical Expense Benefits

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

#### b. Income Continuation Benefits

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability, not to exceed net "income" normally earned during the period in which benefits are payable.

#### c. Essential Services Benefits

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

© Insurance Services Office, Inc., 2015
CA 22 30 03 16

#### d. Death Benefits

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

**(1)** If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

**(2)** If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

#### e. Funeral Expense Benefits

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

### 2. Extended Medical Expense Benefits

We will pay Extended Medical Expense Benefits for "bodily injury" sustained by an "insured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading and unloading, of a "highway vehicle" not owned by or furnished or available for the regular use of the "named insured" or any "family member".

Subject to the limits shown in the Schedule or Declarations, Extended Medical Expense Benefits consist of the following:

Reasonable expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

### 3. Pedestrian Personal Injury Protection

This coverage applies to "pedestrians" and only to "accidents" which occur during the policy period in New Jersey. With respect to an "insured motor vehicle" as described for this coverage, Pedestrian Personal Injury Protection Coverage is the only Personal Injury Protection Coverage for that vehicle.

We will pay Pedestrian Personal Injury Protection Benefits to an "eligible injured person". These Pedestrian Personal Injury Protection Benefits consist of:

#### a. Medical Expense Benefits

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**b. Income Continuation Benefits**

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability; not to exceed net "income" normally earned during the period in which benefits are payable.

**c. Essential Services Benefits**

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

**d. Death Benefits**

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

**(1)** If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

**(2)** If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

**e. Funeral Expense Benefits**

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**B. Exclusions**

**1. Personal Injury Protection**

We will not pay Personal Injury Protection Benefits for "bodily injury":

**a.** To a person whose conduct contributed to the "bodily injury" in any of the following ways:

**(1)** While committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or

**(2)** While acting with specific intent to cause injury or damage to himself or herself or others;

**b.** To any person who, at the time of the "accident", was the owner or registrant of a "private passenger auto" registered or principally garaged in New Jersey that was being operated without Personal Injury Protection Coverage;

**c.** To any person who is not occupying a covered "auto", other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey;

**d.** Arising out of the ownership, maintenance or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

**e.** Arising directly or indirectly out of:

**(1)** War, including undeclared or civil war;

   © Insurance Services Office, Inc., 2015

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**f.** Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

**g.** To any person, other than the "named insured" or any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" or "family member" under the terms of any other policy with respect to such coverage;

**h.** To any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" under the terms of another policy; or

**i.** To any person operating or occupying a "private passenger auto" without the permission of the owner or the "named insured" under the Policy insuring that "auto";

**j.** For the following "diagnostic tests":

**(1)** Brain mapping, when not done in conjunction with appropriate neurodiagnostic testing;

**(2)** Iridology;

**(3)** Mandibular tracking and simulation;

**(4)** Reflexology;

**(5)** Spinal diagnostic ultrasound;

**(6)** Surface electromyography (surface EMG);

**(7)** Surrogate arm mentoring; or

**(8)** Any other "diagnostic test" that is determined to be ineligible for coverage under Personal Injury Protection Coverage by New Jersey law or regulation;

**k.** For the following "diagnostic tests" when used to treat temporomandibular joint disorder (TMJ/D):

**(1)** Doppler ultrasound;

**(2)** Electroencephalogram (EEG);

**(3)** Needle electromyography (needle EMG);

**(4)** Sonography;

**(5)** Thermograms/thermographs; or

**(6)** Videofluoroscopy.

**2. Extended Medical Expense Benefits**

The exclusions that apply to Personal Injury Protection also apply to Extended Medical Expense Benefits, except Exclusion **c.**, which does not apply to Extended Medical Expense Benefits. In addition, the following exclusions are added to Extended Medical Expense Benefits:

**a.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any person, other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey.

**b.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who is entitled to benefits for the "bodily injury" under:

**(1)** Personal Injury Protection Coverage; or

**(2)** Any:

**(a)** Workers' compensation law; or

**(b)** Medicare provided under federal law.

**c.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who would be entitled to benefits for the "bodily injury" under Personal Injury Protection Coverage, except for the application of a:

**(1)** Deductible;

**(2)** Copayment; or

**(3)** Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

**3. Pedestrian Personal Injury Protection**

The exclusions that apply to Personal Injury Protection also apply to Pedestrian Personal Injury Protection, except Exclusions **b.** and **c.**, which do not apply to Pedestrian Personal Injury Protection Coverage.

**C. Limit Of Insurance**

**1.** Any amount payable by us as Personal Injury Protection benefits for "bodily injury" shall be reduced by:

**a.** All amounts paid, payable or required to be provided under any workers' compensation or employees' temporary disability law.

**b.** Medicare provided under federal law.

c. Benefits actually collected that are provided under federal law to active and retired military personnel.

2. Any amount payable by us as medical expense benefits will be limited by medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services, or the usual, customary and reasonable fee, whichever is less.

3. Any amounts payable for medical expense benefits as the result of any one "accident" shall be:

   a. Reduced by the applicable deductible indicated in the Schedule or in the Declarations; and

   b. Subject to the copayment of 20% for the amount between the applicable deductible and $5,000.

4. The applicable limit of income continuation benefits applies separately to each full regular and customary work week of an "eligible injured person". If this disability from work or employment consists of or includes only a part of such a week, we shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his or her full work week.

5. If the Schedule or Declarations indicates that the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the following provisions apply to medical expense benefits:

   a. **Priority Of Benefits**

      (1) The health benefits plans under which the "named insured" and any "family member" are insured shall provide primary coverage for "allowable expenses" incurred by the "named insured" and any "family member" before any medical expense benefits are paid by us.

      (2) This insurance shall provide secondary coverage for medical expense benefits for "allowable expenses", which remained uncovered.

      (3) The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of "allowable expenses".

b. **Determination Of Medical Expense Benefits Payable**

   (1) To calculate the amount of "actual benefits" to be paid by us, we will first determine the amount of "eligible expenses" which would have been paid by us, after application of the deductible and copayment indicated in the Schedule or Declarations, had the "named insured" not elected the Medical Expense Benefits-As-Secondary Coverage Option.

   (2) If the remaining "allowable expenses" are:

      (a) Less than the benefits calculated in Paragraph **(1)** above, we will pay "actual benefits" equal to the remaining "allowable expenses", without reducing the remaining "allowable expenses" by the deductible or copayment.

      (b) Greater than the benefits calculated in Paragraph **(1)** above, we will pay "actual benefits" equal to the benefits calculated in Paragraph **1.** above, without reducing the remaining "allowable expenses" by the deductible or copayment.

   (3) We will not reduce the "actual benefits" determined in Paragraph **2.**:

      (a) By any deductibles or copayments of the health benefits plans which have provided primary coverage for medical expense benefits; or

      (b) For any "allowable expense" remaining uncovered which otherwise would not be an "eligible expense" under Personal Injury Protection Coverage, except as set forth in Paragraph **(4)** below.

   (4) In determining remaining uncovered "allowable expenses", we shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

   (5) The total amount of medical expense benefits for the "named insured" or any "family member" per "accident" shall not exceed the maximum amount payable for medical expense benefits under this Policy.

© Insurance Services Office, Inc., 2015
CA 22 30 03 16

**c. Health Benefits Plan Ineligibility**

(1) If, after the "named insured" has elected the Medical Expense Benefits-As-Secondary Coverage Option, it is determined that the "named insured" or any "family member" did not have a health benefits plan in effect at the time an "accident" occurred which resulted in "bodily injury" to the "named insured" or any "family member", medical expense benefits shall be provided to the "named insured" or any "family member", subject to the following:

(a) Only Paragraph **1.** of the Limit Of Insurance provision will apply with respect to medical expense benefits.

(b) Any amount payable for medical expense benefits for the "named insured" and any "family member" as a result of any one "accident" shall:

(1) Be reduced by a deductible equal to the sum of $750 plus the applicable deductible indicated in the Schedule or in the Declarations; and

(2) Be subject to a copayment of 20% for amounts less than $5,000 after the deductible has been applied.

(3) Be determined:

(i) By the medical fee schedules promulgated by the New Jersey Department of Insurance; or

(ii) By us, on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.

(4) Not exceed the maximum amount payable for medical expense benefits under this Policy.

(2) All items of medical expense incurred by the "named insured" or any "family member" for the treatment of "bodily injury" shall be "eligible expenses" to the extent the treatment or procedure from which the expenses arose:

(a) Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

(b) Are reasonable expenses in accordance with Section 4 of the New Jersey Reparation Reform Act.

(3) We shall be entitled to recover the difference between:

(a) The reduced premium paid under this Policy for the Medical Expense Benefits-As-Secondary Option; and

(b) The premium which would have been paid under this Policy had the "named insured" not elected such option.

We will not provide any premium reduction for the Medical Expense Benefits-As-Secondary Option for the remainder of the policy period.

**6.** The Limit Of Insurance shown in the Schedule or Declarations for weekly income continuation benefits shall be prorated for any period of "bodily injury" disability less than one week.

**D. Changes In Conditions**

**1.** The **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

**a.** If an "eligible injured person", "insured person" or the legal representative or survivors of either institutes legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

**b.** The "eligible injured person", "insured person" or someone on their behalf must promptly give us written proof of claim including:

   **(1)** Full particulars of the nature and extent of the "bodily injury"; and

   **(2)** Such other information that will help us determine the amount due and payable.

**c.** The "eligible injured person" or "insured person" must submit to physical examination by physicians when and as often as we reasonably require and a copy of the medical report will be forwarded to such "eligible injured person" or "insured person" if requested.

**d.** In the event of "accident", claim, "suit" or "loss", if the notice, proof of claim or other reasonably obtainable information regarding the accident is received by us more than 30 days after the accident, we may impose an additional medical expense benefits copayment in accordance with New Jersey law or regulation. This copayment shall be in addition to:

   **(1)** Any medical expense benefits deductible or copayment; or

   **(2)** Any penalty imposed in accordance with our Decision Point Review Plan.

**2.** The **Policy Period, Coverage Territory** Condition for **Personal Injury Protection** and **Extended Medical Expense Benefits** is replaced by the following:

This Coverage Part applies only to "accidents" which occur during the policy period:

**a.** Anywhere in the world.

**b.** For pedestrian Personal Injury Protection Coverage, the coverage territory is New Jersey.

**3.** For Extended Medical Expense Benefits, the **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

**4.** The following **Reimbursement And Trust** Condition is added:

Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, if we make any payment to any "eligible injured person" or "insured person" under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for us and pay us back the amount we have paid. We will have a lien against such payment, and may give notice of the lien to the person or organization causing "bodily injury", his or her agent or insurer or a court having jurisdiction in the matter.

**5.** The following **Payment Of Personal Injury Protection Benefits** Conditions are added:

**a.** Medical expense benefits and essential services benefits may be paid at our option to the "eligible injured person", "insured person" or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. Any such assignment is not enforceable unless the provider of service benefits agrees to be subject to the requirements of our Decision Point Review Plan. In the event of the death of an "eligible injured person" or "insured person" any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

**b.** Benefits payable under Paragraph **A.1.d.(1)** of the description of death benefits are payable to the "eligible injured person's" surviving spouse, or if there is no surviving spouse, to his or her surviving children, or if there is not a surviving spouse or any surviving children, to the "eligible injured person's" estate.

**c.** Benefits payable under Paragraph **A.1.d.(2)** of the description of death benefits are payable to the person who has incurred the expense of providing essential services.

**d.** Funeral expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

   © Insurance Services Office, Inc., 2015   CA 22 30 03 16

6. The following **Deletion Of Benefits Other Than Medical Expenses Option** Condition is added:

When the Schedule or the Declarations indicates that the Deletion Of Benefits Other Than Medical Expenses Option applies, we will pay Personal Injury Protection Benefits consisting only of medical expense benefits for the "named insured" and "family members".

7. The following **Employee Benefits Reimbursement** Condition is added:

If the "eligible injured person" or "insured person" fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, we may immediately apply to the provider of these benefits for reimbursement of any Personal Injury Protection Benefits that we have paid.

8. The following **Proof Of Health Benefits Plan Coverage** Condition is added:

If the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the "named insured" shall provide proof that the "named insured" and "family members" are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

9. The following **Special Requirements For Medical Expenses** Conditions are added:

a. **Care Paths For "Identified Injuries" (Medical Protocols)**

(1) The New Jersey Department of Banking and Insurance has established by regulation the standard courses of medically necessary diagnosis and treatment for "identified injuries". These courses of diagnosis and treatments are known as care paths.

The care paths do not apply to treatment administered during "emergency care".

(2) Upon notification to us of a "bodily injury" covered under this Policy, we will advise the "insured" of the care path requirements established by the New Jersey Department of Banking and Insurance.

(3) Where the care paths indicate a decision point, further treatment or the administration of a diagnostic test is subject to our Decision Point Review Plan.

A decision point means the juncture in treatment where a determination must be made about the continuation or choice of further treatment of an "identified injury".

b. **Coverage For "Diagnostic Tests"**

(1) In addition to the care path requirements for an "identified injury", the administration of any of the following "diagnostic tests" is also subject to the requirements of our Decision Point Review Plan:

(a) Brain audio evoked potential (BAEP);

(b) Brain evoked potential (BEP);

(c) Computer assisted tomographic studies (CT, CAT Scan);

(d) Dynatron/cyber station/cybex;

(e) H-reflex Study;

(f) Magnetic resonance imaging (MRI);

(g) Nerve conduction velocity (NCV);

(h) Somasensory evoked potential (SSEP);

(i) Sonogram/ultrasound;

(j) Visual evoked potential (VEP);

(k) Any of the following "diagnostic tests" when not otherwise excluded under Exclusion **j.**:

(i) Brain mapping;

(ii) Doppler ultrasound;

(iii) Electroencephalogram (EEG);

(iv) Needle electromyography (needle EMG);

(v) Sonography;

(vi) Thermography/thermograms;

(vii) Videofluoroscopy; or

(l) Any other "diagnostic test" that is subject to the requirements of our Decision Point Review Plan by New Jersey law or regulation.

(2) The "diagnostic tests" listed under Paragraph **(1)** must be administered in accordance with New Jersey Department of Banking and Insurance regulations, which set forth the requirements for the use of "diagnostic tests" in evaluating injuries sustained in "auto" "accidents".

However, those requirements do not apply to "diagnostic tests" administered during "emergency care".

    © Insurance Services Office, Inc., 2015

(3) We will pay for other "diagnostic tests" that are:

   (a) Not subject to our Decision Point Review Plan; and

   (b) Not specifically excluded under Exclusion **j.;** only if administered in accordance with the criteria for medical expenses as provided in this endorsement.

**c. Decision Point Review Plan**

(1) Coverage for certain medical expenses under this endorsement is subject to our Decision Point Review Plan, which provides appropriate notice and procedural requirements that must be adhered to in accordance with New Jersey law or regulation. We will provide a copy of this plan upon request, or in the event of any claim for medical expenses under this coverage.

(2) Our Decision Point Review Plan includes the following minimum requirements as prescribed by New Jersey law or regulation:

   (a) The requirements of the Decision Point Review Plan only apply after the tenth day following the "accident".

   (b) We must be provided prior notice as indicated in our plan, with appropriate "clinically supported" findings, that additional treatment for an "identified injury", the administration of a "diagnostic test" listed under Paragraph **(1)** or the use of durable medical equipment is required.

     The notice and "clinically supported" findings may include a comprehensive treatment plan for additional treatment.

(3) Once we receive such notice with the appropriate "clinically supported" findings, we will, in accordance with our plan:

   (a) Promptly review the notice and supporting materials; and

   (b) If required as part of our review, request any additional medical records or schedule a physical examination.

(4) We will then determine and notify the "eligible injured person" or the "insured person" whether we will provide coverage for the additional treatment, "diagnostic test" or use of durable medical equipment as indicated in our plan and within the applicable three business day requirements specified in New Jersey Department of Banking and Insurance regulations.

   Any determination we make will be based on the determination of a physician. If the physician prepares a written report concerning the examination we have required, such report will be made available to the "eligible injured person" upon request.

(5) Any physical examination of an "eligible injured person" or "insured person" scheduled by us will be conducted in accordance with our plan.

(6) We may deny reimbursement of further treatment, testing or use of durable medical equipment for repeated unexcused failure of an "eligible injured person" or "insured person" to appear for a physical scheduled examination required by us in accordance with our plan.

(7) A penalty will be imposed in accordance with our plan if:

   (a) We do not receive proper notice and "clinically supported" findings; or

   (b) Any "eligible injured person" or "insured person" fails to use a network in accordance with N.J.A.C. 11:3-4.8.

   (c) We do not receive proper notice for treatment, "diagnostic tests" or durable medical equipment in accordance with the requirements of our Decision Point Review Plan.

   However, no penalty will be imposed where the proper notice or findings were received by us and we thereafter failed to act in accordance with our plan to request further information, modify or deny reimbursement of further treatment, "diagnostic tests" or the use of durable medical equipment with respect to that notice or those findings.

© Insurance Services Office, Inc., 2015

**d. Dispute Resolution**

If we and any person seeking Personal Injury Protection Coverage do not agree as to the recovery of Personal Injury Protection Coverage under this endorsement, then the matter may be submitted to dispute resolution, on the initiative of any party to the dispute, in accordance with N.J.A.C. 11:3-5.6.

However, prior to submitting such matter to dispute resolution, providers who are assigned service benefits by an "eligible injured person" or "insured person", or have a power of attorney from such person, shall be subject to our internal appeals process in accordance with New Jersey law or regulation. Any request for dispute resolution may include a request for review by a medical review organization.

**10.** The following condition is added for **Personal Injury Protection** and **Pedestrian Personal Injury Protection**:

**Coordination And Nonduplication**

**a.** Regardless of the number of "autos" insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act or the number of insurers or policies providing such coverage, there shall be no duplication of payment of basic Personal Injury Protection Benefits and the aggregate maximum amount payable under this and all applicable policies with respect to "bodily injury" to any one person as the result of any one "accident" shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

**b.** If an "eligible injured person" under this coverage is also an "eligible injured person" under other complying policies, the insurer paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the insurer's liability bears to the total of all applicable limits. Complying Policy means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic Personal Injury Protection Coverage as approved by the Commissioner of Insurance.

**11.** The following condition is added for **Personal Injury Protection** and **Extended Medical Expense Benefits:**

**Medical Payments Deletion**

In consideration of the coverage provided for Personal Injury Protection and Extended Medical Expense Benefits in Paragraphs **A.1.** and **A.2.** of this endorsement, and the adjustment of applicable rates because of "bodily injury" to an "eligible injured person", any auto medical payments coverage provided under the Coverage Part is deleted with respect to an "auto" which is a covered "auto".

**E. Definitions**

The **Definitions** section is amended as follows:

**1.** The definition of "bodily injury" is replaced by the following:

"Bodily injury" means bodily harm, sickness or disease, including an "identified injury" or death that results.

**2.** The following definitions are added for **Personal Injury Protection, Extended Medical Expense Benefits** and **Pedestrian Personal Injury Protection:**

**a.** "Actual benefits" means those benefits determined to be payable for "allowable expenses".

**b.** "Allowable expense" means a medically necessary, reasonable and customary item of expense covered as benefits by the "named insured's" or "family member's" health benefits plan or Personal Injury Protection Benefits as an "eligible expense", at least in part. When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an "allowable expense" and a paid benefit.

**c.** "Clinically supported" means that a "health care provider", prior to selecting, performing or ordering the administration of a treatment or "diagnostic test", has:

**(1)** Physically examined the "eligible injured person" or "insured person" to ensure that the proper medical indications exist to justify ordering the treatment or test;

**(2)** Made an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;

**(3)** Considered any and all previously performed tests that relate to the injury and the results and which are relevant to the proposed treatment or test; and

**(4)** Recorded and documented these observations, positive and negative findings and conclusions on the "insureds" medical records.

**d.** "Diagnostic test(s)" means a medical service or procedure utilizing any means other than bioanalysis, intended to assist in establishing a:

**(1)** Medical;

**(2)** Dental;

**(3)** Physical therapy;

**(4)** Chiropractic; or

**(5)** Psychological diagnosis;

for the purpose of recommending or developing a course of treatment for the tested patient to be implemented by the treating practitioner or by the consultant.

**e.** "Eligible expense" means:

**(1)** In the case of health benefits plans, that portion of the medical expenses incurred for the treatment of "bodily injury" which is covered under the terms and conditions of the plan, without application of the deductible(s) and copayment(s), if any.

**(2)** In the case of Personal Injury Protection Benefits, that portion of the medical expenses incurred for the treatment of "bodily injury" which, without considering any deductible and copayment, shall not exceed:

**(a)** The percent or dollar amounts specified on the medical fee schedules, or the actual billed expense, whichever is less; or

**(b)** The reasonable amount, as determined by us, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

**f.** "Emergency care" means all treatment of a "bodily injury" which manifests itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in death, serious impairment to bodily functions or serious dysfunction to a bodily organ or part. Such emergency care shall include all medically necessary care immediately following an "accident", including but not limited to, immediate prehospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. Emergency care extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician. Emergency care shall be presumed when medical care is initiated at a hospital within 120 hours of the "accident".

**g.** "Family member" means a person related to the "named insured" by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the "named insured".

**h.** "Health care provider" means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:

**(1)** Hospital or health care facilities that are maintained by a state or any of its political subdivisions or licensed by the Department of Health and Senior Services;

**(2)** Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, free-standing emergency clinics or offices, and private treatment centers;

**(3)** A nonprofit voluntary visiting nurse organization providing health care services other than in a hospital;

**(4)** Hospitals or other health care facilities or treatment centers located in other states or nations;

**(5)** Physicians licensed to practice medicine and surgery;

(6) Licensed chiropractors, dentists, optometrists, pharmacists, chiropodists (podiatrists), psychologists, physical therapists, health maintenance organizations, orthotists and prosthetists, professional nurses, occupational therapists, speech language pathologists, audiologists, physician assistants, physical therapy assistants and occupational therapy assistants;

(7) Registered bioanalytical laboratories;

(8) Certified nurse-midwives and nurse practitioners/clinical nurse-specialists; or

(9) Providers of other health care services or supplies including durable medical goods.

i. "Identified injury" means the following "bodily injuries" for which the New Jersey Department of Banking and Insurance has established standard courses of medically necessary diagnosis and treatment:

(1) Cervical Spine: Soft Tissue Injury;

(2) Cervical Spine: Herniated Disc/Radiculopathy;

(3) Thoracic Spine: Soft Tissue Injury;

(4) Thoracic Spine: Herniated Disc/Radiculopathy;

(5) Lumbar-Sacral Spine: Soft Tissue Injury;

(6) Lumbar-Sacral Spine: Herniated Disc/Radiculopathy; and

(7) Any other "bodily injury" for which the New Jersey Department of Banking and Insurance has established standard courses of appropriate diagnosis and treatment.

j. "Income" means salary, wages, tips, commissions, fees and other earnings derived from work or employment.

k. "Income producer" means a person who, at the time of the "accident", was in an occupational status, earning or producing income.

l. "Named insured" means the person or organization named in Item **1** of the Declarations and, if an individual, includes his or her spouse if the spouse is a resident of the household of the "named insured", except that if the spouse ceases to be a resident of the same household, the spouse shall be a "named insured" for the full term of the Policy in effect at the time of cessation of residency. If the covered "auto" is owned by a farm family copartnership or corporation, the term "named insured" also includes the head of the household of each family designated in the Policy as having a working interest in the farm.

m. "Pedestrian" means any person who is not occupying, using, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks.

n. "Private passenger auto" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) A private passenger or station wagon type auto;

(2) A van, a pickup or panel truck or delivery sedan; or

(3) A utility auto designed for personal use as a camper or motor home or for family recreational purposes.

A "private passenger auto" does not include:

(a) A motorcycle;

(b) An auto used as a public or livery conveyance for passengers;

(c) A pickup or panel truck, delivery sedan or utility auto customarily used in the occupation, profession or business of an "insured" other than farming or ranching; or

(d) A utility auto customarily used for the transportation of passengers other than members of the user's family or their guests.

   © Insurance Services Office, Inc., 2015

3. The following definition is added to the **Definitions** section for **Personal Injury Protection:**

"Eligible injured person" means:

a. The "named insured" and, if the "named insured" is an individual, any "family member", if the "named insured" or the "family member" sustains "bodily injury":

(1) As a result of any "accident" while occupying, using, entering into or alighting from a "private passenger auto"; or

(2) While a "pedestrian", caused by a "private passenger auto" or by an object propelled by or from a "private passenger auto".

b. Any other person who sustains "bodily injury":

(1) While, with your permission, that person is occupying, using, entering into or alighting from the covered "auto"; or

(2) While a "pedestrian", caused by the covered "auto" or as a result of being struck by an object propelled by or from the covered "auto".

4. The following is added to the **Definitions** section for **Extended Medical Expense Benefits:**

a. "Highway vehicle" means a land motor vehicle or trailer other than:

(1) A "private passenger auto";

(2) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads;

(3) A vehicle operated on rails or crawlertreads; or

(4) A vehicle while located for use as a residence or premises.

b. "Insured person" means:

(1) The "named insured" and, if the "named insured" is an individual, any "family member" of the "named insured", if the "named insured" or "family member" sustains "bodily injury":

(a) While occupying, using, entering into or alighting from a "highway vehicle"; or

(b) While a "pedestrian", caused by a "highway vehicle".

(2) Any other person who sustains "bodily injury" while occupying a "highway vehicle" (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such "highway vehicle" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using such "highway vehicle" with the permission of the "named insured"; or

(3) Any other person who sustains "bodily injury" occupying a covered "auto" if the covered "auto" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using the covered "auto" with the permission of the "named insured".

5. The following is added to the **Definitions** section for **Pedestrian Personal Injury Protection:**

a. "Eligible injured person" means:

A person who sustains "bodily injury" while a "pedestrian", caused by an "insured motor vehicle" or as a result of being struck by an object propelled by or from the "insured motor vehicle".

b. "Insured motor vehicle" means a self-propelled motor vehicle designed for use principally on public roads, which is not a "private passenger auto" and to which the liability coverage of this Coverage Form applies.

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 22 31 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY ADDED PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

NEW JERSEY PERSONAL INJURY PROTECTION

With respect to coverage provided by this endorsement, the provisions of the New Jersey Personal Injury Protection endorsement apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured: |
| Endorsement Effective Date: |

## SCHEDULE

It is agreed that the New Jersey Personal Injury Protection endorsement is amended as follows, but only for any amounts payable because of "bodily injury" to an "eligible injured person" who is specifically designated as a Person Insured for this coverage:

| Item 1. | The "named insured" and, if the "named insured" is an individual, his or her spouse, are Persons Insured for New Jersey Added Personal Injury Protection coverage as well as each person listed below: | | | |
|---|---|---|---|---|
| | Any resident children of either the "named insured" or resident spouse; or | | | |
| | The following named "family members": | | | |
| | 1. | | 4. | |
| | 2. | | 5. | |
| | 3. | | 6. | |

| Item 2. | Our Limit of Insurance under the New Jersey Personal Injury Protection endorsement for income continuation benefits, essential services benefits, funeral expense benefits and death benefits shall be as stated herein subject to all of the terms of the Coverage Part having reference thereto: |
|---|---|

| Income Continuation Benefits | Maximum Weekly | | Maximum Total (Check the appropriate box) | |
|---|---|---|---|---|
| | A. | 100 | B. | [X] 10400         Or<br>[ ] Unlimited |

| Essential Services Benefits | Maximum Per Day | | Maximum Total | |
|---|---|---|---|---|
| | C. | 12 | D. | 8760 |

| Funeral Expense Benefits $2,000 |
|---|

© Insurance Services Office, Inc., 2012

| Added Death Benefit $10,000 | | | | |
|---|---|---|---|---|
| With respect to the added death benefit, the limit of liability for this benefit applies in addition to any death benefit payable under the New Jersey Personal Injury Protection endorsement. | | | | |
| Option Number | A | B | C | D |
| 1 | $100 | $10,400 | $12 | $ 8,760 |
| 2 | $125 | $13,000 | $20 | $14,600 |
| 3 | $175 | $18,200 | $20 | $14,600 |
| 4 | $250 | $26,000 | $20 | $14,600 |
| 5 | $400 | $41,600 | $20 | $14,600 |
| 6 | $500 | $52,000 | $20 | $14,600 |
| 7 | $600 | $62,400 | $20 | $14,600 |
| 8 | $700 | $72,800 | $20 | $14,600 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

1. The weekly and total limits applicable to income continuation benefits as stated in Paragraph A.1.b. of the New Jersey Personal Injury Protection endorsement are amended by substituting therefor, respectively, the amounts shown opposite A. and B. in the Schedule. The "Maximum Weekly" amount will be paid for as long as the disability lasts, if the unlimited option is shown as applicable.

2. The per day and total limits applicable to essential services benefits as stated in Paragraph A.1.c. of the New Jersey Personal Injury Protection endorsement are amended by substituting therefor, respectively, the amounts shown opposite C. and D. in the Schedule.

3. Our Limit Of Insurance as stated in the Schedule for income continuation benefits, essential services benefits or funeral expense benefits shall not operate to increase the amount of death benefits payable under the New Jersey Personal Injury Protection endorsement.

4. We will pay an Added Death Benefit of $10,000 to the "named insured's" surviving spouse, if the "named insured" is an individual, or, if there is no surviving spouse, to the surviving children, or if there is not a surviving spouse or any surviving children, to the estate of the Person Insured for Added Personal Injury Protection coverage if his or her death results from "bodily injury" for which personal injury protection benefits are payable and occurs within two years of the "accident".

This added death benefit applies in addition to any death benefits payable under the New Jersey Personal Injury Protection endorsement.

5. We will pay funeral expense benefits not exceeding $2,000 to the "eligible injured person's" estate.

6. Subject to the Limit Of Insurance shown in the Schedule, we shall not be liable for more than 75% of weekly income in excess of $100, provided, however, that after $5,200 has been paid as income continuation benefits at the rate specified in the New Jersey Personal Injury Protection endorsement, we shall not be liable for more than 75% of weekly "income" thereafter.

7. This endorsement is subject to all the terms and provisions of the New Jersey Personal Injury Protection endorsement not expressly modified herein.

  © Insurance Services Office, Inc., 2012  CA 22 31 10 13

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 22 50 06 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA
# EXTENDED PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Personal Injury Protection endorsement apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:**   ASPHALT PAVING SYSTEMS, INC. |
| **Endorsement Effective Date:**   04/01/2018 |

### SCHEDULE

| |
|---|
| -.   Work loss for "named insured" and dependent "family member" does not apply. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. Subject to a $10,000 total aggregate limit for all Extended Personal Injury Protection benefits, except Death benefits, we will pay, in accordance with the Florida Motor Vehicle No-fault Law:

   **a.** To or for the benefit of an injured person who is a "named insured" or "family member":

   **(1)** All medical expenses;

   **(2)** 80% of work loss;

   **(3)** Replacement services expenses; and

   **(4)** Death benefits of $5,000;

   **b.** To or for the benefit of any other injured person:

   **(1)** 80% of "medically necessary" expenses; subject to the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance;

   **(2)** 60% of work loss;

   **(3)** Replacement services expenses; and

   **(4)** Death benefits of $5,000;

   incurred as a result of "bodily injury", caused by an "accident" arising out of the ownership, maintenance or use of the "motor vehicle" and sustained by:

   **(a)** The "insured" or "family member" while "occupying" a "motor vehicle" or, while a "pedestrian", through being struck by a "motor vehicle"; or

   **(b)** Any other person while "occupying" the covered "motor vehicle" or, while a "pedestrian", through being struck by the covered "motor vehicle".

**2.** Subject to the limits shown in Paragraphs **A.1.a.** and **A.1.b.,** Extended Personal Injury Protection benefits consist of:

**a. Medical Expenses**

**(1)** All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after an "accident" that are:

**(a)** Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

**(b)** Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

**(c)** Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

**(2)** Upon referral by a licensed health care provider described in Paragraph **A.2.a.(1)(a), (b)** or **(c),** follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.2.a.(1),** if provided, supervised, ordered or prescribed only by a licensed:

**(a)** Physician, osteopathic physician, chiropractic physician or dentist; or

**(b)** Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician, chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

**(c)** A licensed hospital or ambulatory surgical center;

**(d)** An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

**(e)** An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

**(f)** A licensed physical therapist, based upon referral by a provider described in Paragraph **A.2.a.(2);** or

**(g)** A health care clinic licensed under the Florida Health Care Clinic Act:

**(i)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

**(ii)** Which:

**i.** Has a licensed medical director;

**ii.** Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

**iii.** Provides at least four of the following medical specialties:

**aa.** General medicine;

**bb.** Radiography;

**cc.** Orthopedic medicine;

**dd.** Physical medicine;

**ee.** Physical therapy;

**ff.** Physical rehabilitation;

**gg.** Prescribing or dispensing outpatient prescription medication; or

**hh.** Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.2.a.,** medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

© Insurance Services Office, Inc., 2016

**b. Replacement Services Expenses**

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

**c. Work Loss**

With respect to the period of disability of the injured person, any loss of income and earning capacity from the inability to work proximately caused by the injury sustained by the injured person; and

**d. Death Benefits**

**B. Who Is An Insured**

1. The "named insured".

2. If the "named insured" is an individual, any "family member".

3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

This coverage does not apply to:

1. The "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

2. Any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

3. Any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

   **a.** Causing "bodily injury" to himself or herself intentionally; or

   **b.** While committing a felony;

4. The "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

5. Any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

6. Any person, other than the "named insured", if that person is the owner of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

7. Any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

8. Any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

1. Regardless of the number of "insureds", policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-fault Law from all sources combined, including this Policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

   **a.** $10,000 for medical expenses, work loss and replacement services; and

   **b.** $5,000 for death benefits.

2. Subject to Paragraph **D.1.a.,** we will pay:

   **a.** Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

   **b.** Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.2.a.(1)** or **A.2.a.(2)** has determined that the "insured" did not have an "emergency medical condition".

3. Regardless of whether payments are made under the Florida Motor Vehicle No-fault Law or under Extended Personal Injury Protection, the limits indicated in the preceding paragraphs shall be the maximum payable under this endorsement.

4. Any amount paid under this coverage shall be reduced by the amount of benefits an injured person has been paid or is entitled to recover for the same elements of "loss" under any workers' compensation law.

5. If personal injury protection benefits have been received from any insurer for the same elements of "loss" and expense for benefits available under this Policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

6. Any amount paid under this coverage for medical expenses may be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Extended Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

    Compliance with the following duties is a condition precedent to receiving benefits:

    In the event of an "accident", claim, "suit" or "loss", the "named insured" must give us or our authorized representative prompt notice of the "accident".

    If the injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against the person causing the "bodily injury", copies of any demand, notice, summons or legal papers concerning the "suit" must be sent to us as soon as possible by that injured person or his or her legal representative.

    A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

    A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

    **Legal Action Against Us**

    a. No legal action may be brought against us until there has been full compliance with all terms of this Policy. In addition, no legal action may be brought against us:

    (1) Until the claim for benefits is overdue in accordance with Paragraph **F.3.** of this endorsement; and

    (2) Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

    (3) With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

    (a) Pay the overdue claim; or

    (b) Agree to pay for future treatment not yet rendered;

    in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

    b. If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

    **Transfer Of Rights Of Recovery Against Others To Us**

    Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

    a. We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

**b.** If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

**c.** The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if the injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, the commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an owner or registrant of a "motor vehicle" used as a taxicab.

**4. Concealment, Misrepresentation Or Fraud** is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if the fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

**5. Policy Period, Coverage Territory** is replaced by the following:

**Policy Period, Coverage Territory**

The coverage under this endorsement applies only to "accidents" which occur during the policy period:

**a.** In the state of Florida;

**b.** To the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions, Puerto Rico or Canada; and

**c.** To the "named insured", while "occupying" a "motor vehicle" owned by a "family member" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions, Puerto Rico or Canada.

**F. Additional Conditions**

The following conditions are added:

**1. Mediation**

**a.** In any claim filed by an "insured" with us for:

**(1)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(2)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(3)** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**b.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**c.** The request must state:

**(1)** Why mediation is being requested.

**(2)** The issues in dispute, which are to be mediated.

**d.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

   © Insurance Services Office, Inc., 2016

e. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

f. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

## 2. Medical Reports And Examinations; Payment Of Claim Withheld

The person making the claim must, as soon as possible, submit to mental and physical examinations, at our expense, by physicians of our choice, as often as we reasonably require. We will send the person making the claim a copy of the medical report if requested.

If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or appear at, two examinations raises a rebuttable presumption that such person's refusal or failure was unreasonable.

If the person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we will withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

## 3. Payment Of Benefits

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to extended personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days from the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

## 4. Provisional Premium

In the event of any change in the rules, rate, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation.

If this Policy is a renewal policy, such recomputation shall include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

## 5. Special Provisions For Rented Or Leased Vehicles

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**6. Modification Of Policy Coverages**

Any Automobile Medical Payments Insurance and any Uninsured Motorists Coverage afforded by the Policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any medical payments coverage afforded by the Policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits contained in Section **A.**

**7. Insured's Right To Personal Injury Protection Information**

   **a.** In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

   **b.** If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

**1.** "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

   **a.** Serious jeopardy to "insured's" health;

   **b.** Serious impairment to bodily functions; or

   **c.** Serious dysfunction of any bodily organ part.

**2.** "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

However, "motor vehicle" does not include:

   **a.** A mobile home;

   **b.** Any motor vehicle that is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

**3.** "Family member" means a person related to the "named insured" by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the "named insured".

**4.** "Named insured" means the person or organization named in the Declarations of the Policy and, if an individual, shall include the spouse if a resident of the same household.

**5.** "Occupying" means in or upon or entering into or alighting from.

**6.** "Owner" means a person or organization who holds the legal title to a "motor vehicle", and also includes:

   **a.** A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   **b.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   **c.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

**7.** "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

**8.** "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   **a.** In accordance with generally accepted standards of medical practice;

   **b.** Clinically appropriate in terms of type, frequency, extent, site and duration; and

   **c.** Not primarily for the convenience of the patient, physician or other health care provider.

POLICY NUMBER: BAP 0191409-02                                        COMMERCIAL AUTO

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NAMED INDIVIDUALS – BROADENED PERSONAL INJURY PROTECTION COVERAGE

This endorsement modifies insurance provided under the following:

PERSONAL INJURY PROTECTION ENDORSEMENT

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | |
|---|---|
| Named Insured | Countersigned By |

(Authorized Representative)

## SCHEDULE

| Name of Individual | State | Premium |
|---|---|---|
| ROBERT CAPOFERRI (KATHLEEN & FRANK CAPOFERRI) | NJ | INCL |
| KEN MESSINA (PLUS SPOUSE) | NJ | INCL |
| STEVEN PLUMMER (SUZANNE PLUMMER) | NJ | INCL |
| BARBARA LABB (CHILDREN – NICK AND NOEL LABB) | NJ | INCL |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

An individual named in the Schedule of this endorsement shall be considered a "named insured" for the personal injury protection coverage provided for the state shown in the Schedule.

CA 22 01 01 87              Copyright, Insurance Services Office, Inc.,  1986              Page 1 of 1   □

POLICY NUMBER: BAP 0191409-02                          COMMERCIAL AUTO
                                                       CA 22 11 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA ADDED PERSONAL INJURY PROTECTION

This endorsement modifies insurance provided under the following:

FLORIDA EXTENDED PERSONAL INJURY PROTECTION

With respect to coverage provided by this endorsement, the provisions of the Personal Injury Protection Endorsement apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

---

Named Insured:

Endorsement Effective Date:

---

### SCHEDULE

| | Total Limit |
|---|---|
| All added personal injury protection benefits: | $      10,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

A. **Added Personal Injury Protection Coverage**

We will pay added personal injury protection benefits to or for the "named insured" or any "family member" who sustains "bodily injury" in an "accident" while "occupying" a "motor vehicle" or while a "pedestrian" through being struck by a "motor vehicle". These benefits consist of the following:

1. All medical expense;

2. 80% of work loss; and

3. Replacement services expense.

B. **Exclusions**

The Exclusions in the Florida Extended Personal Injury Protection Endorsement apply to this coverage, and this coverage does not apply to "bodily injury" sustained by any person while "occupying" a "motor vehicle" or while a "pedestrian" through being struck by a "motor vehicle" owned by such person with respect to which Added Personal Injury Protection Coverage is not provided by this endorsement.

C. **Limit Of Insurance**

The Limit Of Insurance Provision in the Florida Extended Personal Injury Protection Endorsement does not apply to this coverage. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the Limit of Insurance for added personal injury protection benefits for "bodily injury" sustained by any one "insured" who is the "named insured" or a "family member" in any one "motor vehicle" "accident" shall not exceed the amount shown in the Schedule. Any amount payable by us under the terms of this coverage shall be reduced by any amounts paid, payable or required to be provided on account of "bodily injury" under the workers' compensation laws of any state or the federal government.

---

© ISO Properties, Inc., 2007                      □

D. **Excess Provision**

The coverage afforded under this endorsement shall be excess to any applicable basic personal injury protection benefits provided pursuant to the Florida Motor Vehicle No-Fault Law.

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the policy shall be excess over any benefits available under this endorsement.

E. **Transfer Of Rights Of Recovery Against Others To Us**

If any person to or for whom we make payments under this coverage has rights to recover from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after the "accident" to impair them.

© ISO Properties, Inc., 2007
CA 22 11 01 08

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 22 45 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH ADDED PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Utah, this endorsement modifies insurance provided under the following:

UTAH PERSONAL INJURY PROTECTION

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Benefit | Limit Per Person |
|---|---|
| **A.    Medical Expenses** | **Maximum Amount** |
| **B.    Work Loss** (Loss of Gross Income and Earning Capacity) | **Maximum Weekly Limit** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

It is agreed that the Utah Personal Injury Protection endorsement is amended as follows, but only with respect to any amounts payable thereunder because of "bodily injury" to an "insured" who is you or a "family member":

1.  The **Limits Of Insurance** Provision of the Utah Personal Injury Protection endorsement is amended by substituting the amounts set forth in the Schedule above for Medical Expenses and Work Loss.

2.  This endorsement is subject to all the terms of the Utah Personal Injury Protection endorsement not expressly modified herein.

© Insurance Services Office, Inc., 2012

COMMERCIAL AUTO
CA 99 48 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

 © Insurance Services Office, Inc., 2011

COMMERCIAL AUTO
CA P 009 11 16

# 2016 COMMERCIAL AUTO
# MISCELLANEOUS FORM REVISIONS
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following forms and endorsements which apply to your renewal policy being issued by us. The forms and endorsements may reduce or broaden coverage.

## Broadening Of Coverage

### CA 04 49 – Primary And Noncontributory – Other Insurance Condition

This endorsement is being introduced as an additional coverage option. When this endorsement is attached to your policy, the Other Insurance Condition in the Business Auto and Auto Dealers Coverage Forms and the Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are revised to provide coverage to an "insured" on a primary and noncontributory basis, provided that certain conditions are met.

## Reductions Of Coverage

### CA 23 44 – Public Or Livery Passenger Conveyance Exclusion

When this endorsement is attached to your policy, insurance provided under any applicable Covered Auto Liability, Physical Damage, Auto Medical Payments, Uninsured and/or Underinsured Motorists and Personal Injury Protection (or similar no-fault) Coverage is excluded while any covered auto is being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered auto is being used by an insured who is logged into a "transportation network platform" as a driver, whether or not a passenger is occupying the covered auto.

### CA 23 45 – Public Or Livery Passenger Conveyance And On-demand Delivery Services Exclusion

When this endorsement is attached to your policy, insurance provided under any applicable Covered Auto Liability, Physical Damage, Auto Medical Payments, Uninsured and/or Underinsured Motorists and Personal Injury Protection (or similar no-fault) Coverage is excluded while any covered auto is being used:

- As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered auto is being used by an insured who is logged into a "transportation network platform" as a driver, whether or not a passenger is occupying the covered auto; or

- By an insured who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide delivery services, which includes courier services, whether or not the goods, items or products to be delivered are in the covered auto.

### CA 26 01 – Single Interest Automobile Physical Damage Insurance Policy (Individual Policy Form)

This form is revised to reinforce the current public or livery conveyance exclusion to provide that the exclusion also applies during any period of time that an automobile is being used by a retail purchaser who is logged into a "transportation network platform" as a driver, whether or not a passenger is occupying the automobile.

© Insurance Services Office, Inc., 2016

**CA 26 02 – Single Interest Automobile Physical Damage Insurance Policy (Finance Master Policy Form)**

This form is revised to reinforce the current public or livery conveyance exclusion to provide that the exclusion also applies during any period of time that an automobile is being used by a retail purchaser who is logged into a "transportation network platform" as a driver, whether or not a passenger is occupying the automobile.

**CA 26 04 – Amendment Of Single Interest Policy Provisions – Public Or Livery Passenger Conveyance And On-demand Delivery Services Exclusion**

This endorsement is introduced to replace the public or livery conveyance exclusion contained in newly revised forms **CA 26 01** and **CA 26 02** to provide that the exclusion also applies during any period of time that an automobile is being used by a retail purchaser who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide delivery services, which includes courier services, whether or not the goods, items or products to be delivered are in the automobile.

      © Insurance Services Office, Inc., 2016      **CA P 009 11 16**

# Coverage Extension Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| BAP 0191409-02 | 04/01/2018 | 04/01/2019 | | 53093000 | **INCL** | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Business Auto Coverage Form**
**Motor Carrier Coverage Form**

## A. Amended Who Is An Insured

1. The following is added to the **Who Is An Insured** Provision in **Section II – Covered Autos Liability Coverage**:

   The following are also "insureds":

   **a.** Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow for acts performed within the scope of employment by you.  Any "employee" of yours is also an "insured" while operating an "auto" hired or rented under a contract or agreement in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

   **b.** Anyone volunteering services to you is an "insured" while using a covered "auto" you don't own, hire or borrow to transport your clients or other persons in activities necessary to your business.

   **c.** Anyone else who furnishes an "auto" referenced in Paragraphs **A.1.a.** and **A.1.b.** in this endorsement.

   **d.** Where and to the extent permitted by law, any person(s) or organization(s) where required by written contract or written agreement with you executed prior to any "accident", including those person(s) or organization(s) directing your work pursuant to such written contract or written agreement with you,  provided the "accident" arises out of operations governed by such contract or agreement and only up to the limits required in the written contract or written agreement, or the Limits of Insurance shown in the Declarations, whichever is less.

2. The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary and Excess Insurance Provisions Condition** in the Motor Carrier Coverage Form**:**

   Coverage for any person(s) or organization(s), where required by written contract or written agreement with you executed prior to any "accident", will apply on a primary and non-contributory basis and any insurance maintained by the additional "insured" will apply on an excess basis.  However, in no event will this coverage extend beyond the terms and conditions of the Coverage Form.

## B. Amendment – Supplementary Payments

Paragraphs **a.(2)** and **a.(4)** of the **Coverage Extensions** Provision in **Section II – Covered Autos Liability Coverage** are replaced by the following:

**(2)** Up to $5,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover.  We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $500 a day because of time off from work.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**C. Fellow Employee Coverage**

The **Fellow Employee** Exclusion contained in **Section II – Covered Autos Liability Coverage** does not apply.

**D. Driver Safety Program Liability and Physical Damage Coverage**

   **1.** The following is added to the **Racing** Exclusion in **Section II – Covered Autos Liability Coverage**:

   This exclusion does not apply to covered "autos" participating in a driver safety program event, such as, but not limited to, auto or truck rodeos and other auto or truck agility demonstrations.

   **2.** The following is added to Paragraph **2.** in the **Exclusions** of **Section III – Physical Damage Coverage** of the Business Auto Coverage Form and Paragraph **2.b.** in the **Exclusions** of **Section IV – Physical Damage Coverage** of the Motor Carrier Coverage Form:

   This exclusion does not apply to covered "autos" participating in a driver safety program event, such as, but not limited to, auto or truck rodeos and other auto or truck agility demonstrations.

**E. Lease or Loan Gap Coverage**

The following is added to the **Coverage** Provision of the **Physical Damage Coverage** Section:

**Lease Or Loan Gap Coverage**

In the event of a total "loss" to a covered "auto", we will pay any unpaid amount due on the lease or loan for a covered "auto", less:

   **a.** Any amount paid under the **Physical Damage Coverage** Section of the Coverage Form; and

   **b.** Any:

      **(1)** Overdue lease or loan payments at the time of the "loss";

      **(2)** Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

      **(3)** Security deposits not returned by the lessor;

      **(4)** Costs for extended warranties, credit life insurance, health, accident or disability insurance purchased with the loan or lease; and

      **(5)** Carry-over balances from previous leases or loans.

**F. Towing and Labor**

Paragraph **A.2.** of the **Physical Damage Coverage** Section is replaced by the following:

We will pay up to $75 for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**G. Extended Glass Coverage**

The following is added to Paragraph **A.3.a.** of the **Physical Damage Coverage** Section:

If glass must be replaced, the deductible shown in the Declarations will apply. However, if glass can be repaired and is actually repaired rather than replaced, the deductible will be waived. You have the option of having the glass repaired rather than replaced.

**H. Hired Auto Physical Damage – Increased Loss of Use Expenses**

The **Coverage Extension** for **Loss Of Use Expenses** in the **Physical Damage Coverage** Section is replaced by the following:

**Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or written rental agreement. We will pay for loss of use expenses if caused by:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $100 per day, to a maximum of $3000.

**I.   Personal Effects Coverage**

The following is added to the **Coverage** Provision of the **Physical Damage Coverage** Section:

**Personal Effects Coverage**

**a.**   We will pay up to $750 for "loss" to personal effects which are:

  **(1)** Personal property owned by an "insured"; and

  **(2)** In or on a covered "auto".

**b.**   Subject to Paragraph **a.** above, the amount to be paid for "loss" to personal effects will be based on the lesser of:

  **(1)** The reasonable cost to replace; or

  **(2)** The actual cash value.

**c.**   The coverage provided in Paragraphs **a.** and **b.** above, only applies in the event of a total theft of a covered "auto".  No deductible applies to this coverage.  However, we will not pay for "loss" to personal effects of any of the following:

  **(1)** Accounts, bills, currency, deeds, evidence of debt, money, notes, securities, or commercial paper or other documents of value.

  **(2)** Bullion, gold, silver, platinum, or other precious alloys or metals; furs or fur garments; jewelry, watches, precious or semi-precious stones.

  **(3)** Paintings, statuary and other works of art.

  **(4)** Contraband or property in the course of illegal transportation or trade.

  **(5)** Tapes, records, discs or other similar devices used with audio, visual or data electronic equipment.

Any coverage provided by this Provision is excess over any other insurance coverage available for the same "loss".

**J.   Tapes, Records and Discs Coverage**

**1.**   The Exclusion in Paragraph **B.4.a.** of **Section III – Physical Damage Coverage** in the Business Auto Coverage Form and the Exclusion in Paragraph **B.2.c.** of **Section IV – Physical Damage Coverage** in the Motor Carrier Coverage Form does not apply.

**2.**   The following is added to Paragraph **1.a. Comprehensive Coverage** under the **Coverage** Provision of the **Physical Damage Coverage** Section:

We will pay for "loss" to tapes, records, discs or other similar devices used with audio, visual or data electronic equipment.  We will pay only if the tapes, records, discs or other similar audio, visual or data electronic devices:

**(a)** Are the property of an "insured"; and

**(b)** Are in a covered "auto" at the time of "loss".

The most we will pay for such "loss" to tapes, records, discs or other similar devices is $500.  The **Physical Damage Coverage Deductible** Provision does not apply to such "loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**K.   Airbag Coverage**

The Exclusion in Paragraph **B.3.a.** of **Section III – Physical Damage Coverage** in the Business Auto Coverage Form and the Exclusion in Paragraph **B.4.a.** of **Section IV – Physical Damage Coverage** in the Motor Carrier Coverage Form does not apply to the accidental discharge of an airbag.

**L.   Two or More Deductibles**

The following is added to the **Deductible** Provision of the **Physical Damage Coverage** Section:

If an accident is covered both by this policy or Coverage Form and by another policy or Coverage Form issued to you by us, the following applies for each covered "auto" on a per vehicle basis:

**1.**   If the deductible on this policy or Coverage Form is the smaller (or smallest) deductible, it will be waived; or

**2.**   If the deductible on this policy or Coverage Form is not the smaller (or smallest) deductible, it will be reduced by the amount of the smaller (or smallest) deductible.

**M.   Physical Damage – Comprehensive Coverage – Deductible**

The following is added to the **Deductible** Provision of the **Physical Damage Coverage** Section:

Regardless of the number of covered "autos" damaged or stolen, the maximum deductible that will be applied to Comprehensive Coverage for all "loss" from any one cause is $5,000 or the deductible shown in the Declarations, whichever is greater.

**N.   Temporary Substitute Autos – Physical Damage**

**1.**   The following is added to **Section I – Covered Autos**:

**Temporary Substitute Autos – Physical Damage**

If Physical Damage Coverage is provided by this Coverage Form on your owned covered "autos", the following types of vehicles are also covered "autos" for Physical Damage Coverage:

Any "auto" you do not own when used with the permission of its owner as a temporary substitute for a covered "auto" you do own but is out of service because of its:

**1.**   Breakdown;

**2.**   Repair;

**3.**   Servicing;

**4.**   "Loss"; or

**5.**   Destruction.

**2.**   The following is added to the Paragraph **A. Coverage** Provision of the **Physical Damage Coverage** Section:

**Temporary Substitute Autos – Physical Damage**

We will pay the owner for "loss" to the temporary substitute "auto" unless the "loss" results from fraudulent acts or omissions on your part.  If we make any payment to the owner, we will obtain the owner's rights against any other party.

The deductible for the temporary substitute "auto" will be the same as the deductible for the covered "auto" it replaces.

**O.   Amended Duties In The Event Of Accident, Claim, Suit Or Loss**

Paragraph **a.** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

**a.**   In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident", claim, "suit" or "loss".  However, these duties only apply when the "accident", claim, "suit" or "loss" is known to you (if you are an individual), a partner (if you are a partnership), a member (if you are a limited liability company) or an executive officer or insurance manager (if you are a corporation).  The failure of any

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

agent, servant or employee of the "insured" to notify us of any "accident", claim, "suit" or "loss" shall not invalidate the insurance afforded by this policy.

Include, as soon as practicable:

**(1)** How, when and where the "accident" or "loss" occurred and if a claim is made or "suit" is brought, written notice of the claim or "suit" including, but not limited to, the date and details of such claim or "suit";

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

If you report an "accident", claim, "suit" or "loss" to another insurer when you should have reported to us, your failure to report to us will not be seen as a violation of these amended duties provided you give us notice as soon as practicable after the fact of the delay becomes known to you.

**P.  Waiver of Transfer Of Rights Of Recovery Against Others To Us**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

This Condition does not apply to the extent required of you by a written contract, executed prior to any "accident" or "loss", provided that the "accident" or "loss" arises out of operations contemplated by such contract.  This waiver only applies to the person or organization designated in the contract.

**Q.  Employee Hired Autos – Physical Damage**

Paragraph **b.** of the **Other Insurance** Condition in the Business Auto Coverage Form and Paragraph **f.** of the **Other Insurance – Primary and Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**(1)** Any covered "auto" you lease, hire, rent or borrow; and

**(2)** Any covered "auto" hired or rented under a written contract or written agreement entered into by an "employee" or elected or appointed official with your permission while being operated within the course and scope of that "employee's" employment by you or that elected or appointed official's duties as respect their obligations to you.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**R.  Unintentional Failure to Disclose Hazards**

The following is added to the **Concealment, Misrepresentation Or Fraud** Condition:

However, we will not deny coverage under this Coverage Form if you unintentionally:

**(1)** Fail to disclose any hazards existing at the inception date of this Coverage Form; or

**(2)** Make an error, omission, improper description of "autos" or other misstatement of information.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.

**S.  Hired Auto – World Wide Coverage**

Paragraph **7a.(5)** of the **Policy Period, Coverage Territory** Condition is replaced by the following:

**(5)** Anywhere in the world if a covered "auto" is leased, hired, rented or borrowed for a period of 60 days or less,

**T.  Bodily Injury Redefined**

The definition of "bodily injury" in the **Definitions** Section is replaced by the following:

"Bodily injury" means bodily injury, sickness or disease, sustained by a person including death or mental anguish, resulting from any of these at any time.  Mental anguish means any type of mental or emotional illness or disease.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**U.  Expected Or Intended Injury**

The **Expected Or Intended Injury** Exclusion in Paragraph **B. Exclusions** under **Section II – Covered Auto Liability Coverage** is replaced by the following:

**Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**V.  Physical Damage – Additional Temporary Transportation Expense Coverage**

Paragraph **A.4.a.** of **Section III – Physical Damage Coverage** is replaced by the following:

**4.  Coverage Extensions**

**a.  Transportation Expenses**

We will pay up to $50 per day to a maximum of $1,000 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type.  We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage.  We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**W.  Replacement of a Private Passenger Auto with a Hybrid or Alternative Fuel Source Auto**

The following is added to Paragraph **A. Coverage** of the **Physical Damage Coverage** Section:

In the event of a total "loss" to a covered "auto" of the private passenger type that is replaced with a hybrid "auto" or "auto" powered by an alternative fuel source of the private passenger type, we will pay an additional 10% of the cost of the replacement "auto", excluding tax, title, license, other fees and any aftermarket vehicle upgrades, up to a maximum of $2500.  The covered "auto" must be replaced by a hybrid "auto" or an "auto" powered by an alternative fuel source within 60 calendar days of the payment of the "loss" and evidenced by a bill of sale or new vehicle lease agreement.

To qualify as a hybrid "auto", the "auto" must be powered by a conventional gasoline engine and another source of propulsion power.  The other source of propulsion power must be electric, hydrogen, propane, solar or natural gas, either compressed or liquefied.  To qualify as an "auto" powered by an alternative fuel source, the "auto" must be powered by a source of propulsion power other than a conventional gasoline engine.  An "auto" solely propelled by biofuel, gasoline or diesel fuel or any blend thereof is not an "auto" powered by an alternative fuel source.

**X.  Return of Stolen Automobile**

The following is added to the **Coverage Extension** Provision of the **Physical Damage Coverage** Section:

If a covered "auto" is stolen and recovered, we will pay the cost of transport to return the "auto" to you.  We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Who Is An Insured Amendment – Broad Form



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Business Auto Coverage Form**
**Motor Carrier Coverage Form**

1.  The following is added to the **Who Is An Insured** Provision of **Section II - Covered Autos Liability Coverage**:

    A.  **Broadened Named Insured**

        1.  Any organization of yours that has been acquired or formed prior to this policy period (other than a partnership, limited liability company or joint venture) but is not shown in the Declarations as of the effective date of this Coverage Form, will nevertheless qualify as a Named Insured if:

            a.  You maintain an ownership interest of more than 50% of such organization; and

            b.  Such organization has been incorporated or organized under the laws of the United States of America (including any state thereof), its territories or possessions.

            Each such organization remains qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the current policy period.

        2.  However, regardless of the provisions of Paragraph **1.** above, no such organization will qualify as a Named Insured under this Coverage Form if the organization:

            a.  Was newly acquired or formed by you in the preceding policy period in which we provided coverage, but was not reported to us before the end of that preceding policy period;

            b.  Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Form; or

            c.  Would be an insured under another policy, regardless of coverage termination or the exhaustion of its limits of insurance.

    B.  **Newly Acquired or Formed Organizations as Named Insureds**

        1.  **Newly Acquired Or Formed Organizations Other Than Partnerships, Joint Ventures or Limited Liability Companies**

            Any organization you newly acquire or form during this policy period (other than a partnership, limited liability company or joint venture) will qualify as a Named Insured if:

            a.  You have an ownership interest of more than 50% in such organization; and

            b.  Such organization has been incorporated or organized under the laws of the United States of America (including any state thereof), its territories or possessions.

            Each newly acquired or formed organization shall remain qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the current policy period.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** However, regardless of the provisions of Paragraph **1.** above:

    **a.** No such organization will qualify as a Named Insured under this Coverage Form if the organization:

        **(1)** Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Form; or

        **(2)** Would be an insured under another policy, regardless of coverage termination or the exhaustion of its limits of insurance; and

    **b.** Coverage will be afforded to any such organization qualifying as a Named Insured only until the end of this policy period if the organization is not reported to us during this policy period.

**3. Newly Formed Partnerships, Limited Liability Companies, or Joint Ventures**

Any partnership, limited liability company or joint venture you newly form during this policy period, where:

    **a.** You maintain an ownership interest;

    **b.** As respects any joint venture, you have agreed in the Joint Venture Agreement to name the joint venture as a Named insured to your policy; and

    **c.** Such partnership, limited liability company or joint venture has been organized under the laws of the United States of America (including any state thereof), its territories or possessions,

will qualify as a Named Insured, provided no other similar insurance was purchased for the partnership, limited liability company or joint venture.  However, coverage under this provision is afforded only until the 90th day after you form the partnership, limited liability company or joint venture, or the end of the policy period, whichever is earlier, if the organization is not reported to us during this policy period.

**4.** With regard to Paragraphs **1.** and **3.** above, the following additional provision applies:

No coverage shall apply to "bodily injury" or "property damage" that results from an "accident" that occurred before you acquired or formed the organization.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL AUTO
CA 99 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© Insurance Services Office, Inc., 2011

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The **Conditions** are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

2. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

 © Insurance Services Office, Inc., 2011 CA 99 03 10 13

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 20 48 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED INSURED FOR COVERED AUTOS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" for Covered Autos Liability Coverage under the Who Is An Insured provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**  ASPHALT PAVING SYSTEMS, INC. |
| **Endorsement Effective Date:** |

**SCHEDULE**

| |
|---|
| **Name Of Person(s) Or Organization(s):** |
| THE PEOPLE OF THE STATE OF NEW YORK, THE NEW YORK STATE OFFICE GENERAL SERVICES, ANY ENTITY AUTHORIZED BY LAW OR REGULATION TO USE ANY CONTRACT RESULTING FROM THIS SOLICITATION AS AN AUTHORIZED USER AND THEIR OFFICERS, AGENTS, AND EMPLOYEES. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Each person or organization shown in the Schedule is an "insured" for Covered Autos Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured provision contained in Paragraph **A.1.** of Section **II** – Covered Autos Liability Coverage in the Business Auto and Motor Carrier Coverage Forms and Paragraph **D.2.** of Section **I** – Covered Autos Coverages of the Auto Dealers Coverage Form.

**CA 20 48 10 13**              © Insurance Services Office, Inc., 2011              **Page 1 of 1**

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 99 10 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DRIVE OTHER CAR COVERAGE – BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:**   ASPHALT PAVING SYSTEMS, INC.

**Endorsement Effective Date:**

### SCHEDULE

| Name Of Individual: ROBERT, KATHLEEN AND FRANK CAPOFERRI; KEN MESSINA (AND SPOUSE); STEVEN AND SUZANNE PLUMMER, BARBARA LABB, NICK AND NOEL LABB | | | | |
|---|---|---|---|---|
| **Covered Autos Liability Coverage** | **Limit:** | $1,000,000 | **Premium:** | INCLUDED |
| **Auto Medical Payments** | **Limit:** | $5,000 | **Premium:** | INCLUDED |
| **Comprehensive** | **Deductible:** | $1,000 | **Premium:** | INCLUDED |
| **Collision** | **Deductible:** | $1,000 | **Premium:** | INCLUDED |
| **Uninsured Motorists** | **Limit:** | $1,000,000 | **Premium:** | INCLUDED |
| **Underinsured Motorists** | **Limit:** | $1,000,000 | **Premium:** | INCLUDED |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**Note:** When Uninsured Motorists Coverage is provided at limits higher than the basic limits required by a financial responsibility law, Underinsured Motorists Coverage is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes In Covered Autos Liability Coverage**

   **1.** Any "auto" you don't own, hire or borrow is a covered "auto" while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

   **a.** Any "auto" owned by that individual or by any member of his or her household.

   **b.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

   **2.** The following is added to **Who Is An Insured:**

   Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

   The following is added to **Who Is An Insured:**

   Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

   Any "auto" owned by that individual or by any "family member".

**D. Changes In Physical Damage Coverage**

   Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

   **1.** Any "auto" owned by that individual or by any member of his or her household.

   **2.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

   As used in this endorsement:

   "Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 99 16 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTOS SPECIFIED AS
# COVERED AUTOS YOU OWN

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured: |
| Endorsement Effective Date: |

SCHEDULE

| |
|---|
| Description Of Auto: Autos leased by the insured for 180 days or more |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  Any "auto" described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire, borrow or lease.

B.  Changes In Covered Autos Liability Coverage

The following is added to the Who Is An Insured provision:

While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto".

POLICY NUMBER:  BAP 0191409-02                    COMMERCIAL AUTO
                                                  CA 99 23 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured:  ASPHALT PAVING SYSTEMS, INC. |
| Endorsement Effective  Date: |

## SCHEDULE

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | PPT ONLY | $ 40 | 30 | | |
| Collision | PPT ONLY | $ 40 | 30 | | |
| Specified Causes Of Loss | | | | | |
| | | | | Total Premium | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

A. This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

B. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

C. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

   1. The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

2.  The number of days shown in the Schedule.

D.  Our payment is limited to the lesser of the following amounts:

1.  Necessary and actual expenses incurred.

2.  The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

E.  This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

F.  If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

  © Insurance Services Office, Inc., 2011  CA 99 23 10 13

**FORM MCS-90**   Revised 01/05/2017    **OMB No.: 2126-0008   Expiration: 01/31/2020**

USDOT Number: _____ Date Received: _____

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

### Endorsement for Motor Carrier Policies of Insurance for Public Liability
### under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

**Issued to**  ASPHALT PAVING SYSTEMS INC                          **of**   500 N. EGG HARBOR ROAD
          *(Motor Carrier name)*                                           *(Motor Carrier state or province)*

**Dated at**  HAMMONTON            **on this** 1ST  **day of** APRIL     , 2018

**Amending Policy Number:** BAP 0191409-02          **Effective Date:** 04-01-2018

**Name of Insurance Company:**  ZURICH AMERICAN INSURANCE COMPANY

                    Countersigned by: _____
                              *(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown  *(check only one)*:

   ‑.  *This insurance is primary and the company shall not be liable for amounts in excess of* $1,000,000 *for each accident.*

   ‑.  *This insurance is excess and the company shall not be liable for amounts in excess of- for each accident in excess of the underlying limit of - for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA , to verify that the policy is in force as of a particular date. The telephone number to call is: 609-561-4161           .

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

> **Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.**

*(continued on next page)*

FORM MCS-90   Revised 01/05/2017                              OMB No.: 2126-0008   Expiration: 01/31/2020

---

## DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

**FORM MCS-90**  Revised 01/05/2017                                                    **OMB No.: 2126-0008   Expiration: 01/31/2020**

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined  in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined  in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8  and listed  in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined  in 49 CFR 173.403 | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information  purposes only.

**COMMERCIAL AUTO**
**CA 99 33 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Covered Autos Liability Coverage,** Paragraph **A.1. Who Is An Insured** provision:

> Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

**CA 99 33 10 13**                 © Insurance Services Office, Inc., 2011                 **Page 1 of 1**

# 2013 Commercial Auto Multistate Forms Revision Advisory Notice To Policyholders



This is a summary of the major changes to your policy. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Highlighted below are areas within the Policy that broaden, reduce or reinforce coverage. This notice does not reference every change, including editorial changes, made in your policy.

## COVERAGE FORMS

### REINFORCEMENTS OF COVERAGE

**Revision To "Liability Coverage" Form References**

**CA 00 01 – Business Auto Coverage Form**

**CA 00 20 – Motor Carrier Coverage Form**

References to "Liability Coverage" that pertain to auto liability in the Business Auto Coverage Form and Motor Carrier Coverage Form are replaced with "Covered Autos Liability Coverage" to distinguish such coverage from the other types of liability coverages that may be included in your policy.

**Revisions To Physical Damage Coverage**

**CA 00 01 – Business Auto Coverage Form**

**CA 00 05 – Motor Carrier Coverage Form**

The Limits Of Insurance provision under Physical Damage Coverage is reinforced to reflect that "loss" rather than "accident" triggers coverage under this section.

## MULTISTATE ENDORSEMENTS

### BROADENINGS OF COVERAGE

**NEW OPTIONAL ENDORSEMENTS**

**CA 23 30 – Motor Carrier Endorsement**

In general, this endorsement may be used to convert the Business Auto Coverage Form into a Motor Carrier Coverage Form for autos used in your operations as a motor carrier.

**EXISTING OPTIONAL ENDORSEMENTS**

**CA 20 54 – Employee Hired Autos**

This endorsement is revised to reinforce that any employee of yours is an insured while operating a rental or hired vehicle taken out in another employee's name for the purposes of performing duties related to the conduct of your business and with your permission.

**CA 99 16 – Hired Autos Specified As Covered Auto You Own**

This endorsement has been revised to remove the wording which limits coverage with respect to the lessor solely to liability arising out of the acts or omissions of the lessee or anyone else acting on the lessee's behalf.

**CA 99 37 – Garagekeepers Coverage**

Spouses of partners, managers of limited liability companies and executive officers are included as insureds with respect to the conduct of your garage operations.

**UCA 424 – Coverage Extension Endorsement**

This endorsement has been revised to:

A. Reinforce that an employee of yours is an insured under Covered Autos Liability Coverage while operating an "auto" hired or rented under a contract or agreement in that employee's name, with your permission, while performing duties related to the conduct of your business;

B. Extend Insured status under Covered Autos Liability Coverage to any person(s) or organization(s) where required by written contract or written agreement including those person(s) or organization(s) directing your work. Such coverage will apply on a primary and non-contributory basis with any insurance maintained by the additional "insured" on an excess basis;

C. Reinforce that the Expected Or Intended Injury Exclusion under the Covered Autos Liability Coverage does not apply if the bodily injury or property damage results from reasonable force to protect persons or property;

D. Include payment of up to $50 per day, to a maximum of $1000, for temporary transportation expense incurred by you in the event of a total theft of a covered "auto" of the private passenger type when Comprehensive or Specified Cause of Loss Coverage is selected;

E. Revises the Physical Damage Coverage to provide for payment of an additional 10% of the cost of a replacement auto, up to $2500, if, in the event of a total loss to a covered auto of the private passenger type, the covered auto is replaced with a hybrid auto or an auto powered by an alternative fuel source. Qualifications for consideration as a hybrid auto or auto powered by an alternative fuel source are described within the endorsement; and

F. Include payment for the cost of transport to return a stolen auto that has been recovered to you, provided you carry either Comprehensive or Specified Causes of Loss Coverage on the auto.

# REINFORCEMENTS OF COVERAGE

**EXISTING OPTIONAL ENDORSEMENTS**

**CA 01 21 – Limited Mexico Coverage**

**CA 02 38 – Reinstatement Of Insurance**

**CA 02 40 – Suspension Of Insurance**

**CA 03 01 – Deductible Liability Coverage**

**CA 03 02 – Deductible Liability Coverage**

**CA 04 42 – Exclusion Of Federal Employees Using Autos In Government Business**

**CA 04 44 – Waiver Of Transfer Of Rights Of Recovery Against Others To Us (Waiver Of Subrogation)**

**CA 04 45 – Golf Carts And Low-speed Vehicles**

**CA 20 01 – Lessor – Additional Insured And Loss Payee**

**CA 20 02 – Audio, Visual And Data Electronic Equipment Coverage – Fire, Police And Emergency Vehicles**

**CA 20 05 – Drive-away Contractors**

**CA 20 06 – Driving Schools – Non-owned Autos**

**CA 20 07 – Emergency Services – Volunteer Firefighters' And Workers' Injuries Limited Exclusion**

**CA 20 08 – Farm Tractors And Farm Tractors Equipment**

**CA 20 09 – Leasing Or Rental Concerns – Contingent Coverage**

**CA 20 10 – Leasing Or Rental Concerns – Conversion, Embezzlement Or Secretion Coverage**

**CA 20 11 – Leasing Or Rental Concerns – Exclusion Of Certain Leased Autos**

**CA 20 12 – Leasing Or Rental Concerns – Rent-it-there/Leave-it-here Autos**

**CA 20 13 – Leasing Or Rental Concerns – Schedule Of Limits For Owned Autos**

**CA 20 14 – Leasing Or Rental Concerns – Second Level Coverage**

**CA 20 15 – Mobile Equipment**

**CA 20 16 – Mobile Homes Contents Coverage**

**CA 20 17 – Mobile Homes Contents Not Covered**

**CA 20 18 – Professional Services Not Covered**

**CA 20 19 – Repossessed Autos**

**CA 20 21 – Snowmobiles**

**CA 20 27 – Registration Plates Not Issued For A Specific Auto**

**CA 20 30 – Emergency Services – Volunteer Firefighters' And Workers' Injuries Excluded**

**CA 20 33 – Autos Leased, Hired, Rented Or Borrowed With Drivers – Physical Damage Coverage**

**CA 20 48 – Designated Insured (Newly titled Designated Insured For Covered Autos Liability Coverage)**

**CA 20 54 – Employee Hired Autos**

**CA 20 55 – Fellow Employee Coverage**

**CA 20 56 – Fellow Employee Coverage For Designated Employees/Positions**

**CA 20 70 – Coverage For Certain Operations In Connection With Railroads**

**CA 20 71 – Auto Loan/Lease Gap Coverage**

**CA 23 01 – Explosives**

**CA 23 03 – Multi-purpose Equipment**

**CA 23 04 – Rolling Stores**

**CA 23 05 – Wrong Delivery Of Liquid Products**

**CA 23 08 – Truckers – Excess Coverage For The Named Insured And Named Lessors For Leased Autos (Newly titled Motor Carriers – Excess Coverage For The Named Insured And Named Lessors For Leased Autos)**

**CA 23 09 – Truckers – Insurance For Non-trucking Use (Newly titled Motor Carriers – Insurance For Non-trucking Use)**

**CA 23 12 – Truckers – Named Lessee As Insured (Newly titled Motor Carriers – Named Lessee As Insured)**

**CA 23 13 – Trailer Interchange Fire And Fire And Theft Coverages**

**CA 23 17 – Truckers – Uniform Intermodal Interchange Endorsement Form UIIE-1**

**CA 23 24 – Agricultural Produce Trailers – Seasonal**

**CA 23 25 – Coverage For Injury To Leased Workers**

**CA 23 94 – Silica Or Silica-related Dust Exclusion For Covered Autos Exposure**

**CA 23 97 – Amphibious Vehicles**

**CA 24 01 – Transportation Of Seasonal Or Migrant Agricultural Workers**

**CA 24 02 – Public Transportation Autos**

**CA 99 03 – Auto Medical Payments Coverage**

**CA 99 10 – Drive Other Car Coverage – Broadened Coverage For Named Individuals**

**CA 99 13 – Fiduciary Liability Of Banks**

**CA 99 14 – Fire, Fire And Theft, Fire, Theft And Windstorm And Limited Specified Causes Of Loss Coverages**

**CA 99 16 – Hired Autos Specified As Covered Autos You Own**

**CA 99 17 – Individual Named Insured**

**CA 99 23 – Rental Reimbursement Coverage**

**CA 99 28 – Stated Amount Insurance**

**CA 99 30 – Tapes, Records And Discs Coverage**

**CA 99 33 – Employees As Insureds**

**CA 99 34 – Social Service Agencies – Volunteers As Insureds**

**CA 99 37 – Garagekeepers Coverage**

**CA 99 40 – Exclusion Or Excess Coverage Hazards Otherwise Insured**

**CA 99 44 – Loss Payable Clause**

**CA 99 47 – Employee As Lessor**

**CA 99 48 – Pollution Liability – Broadened Coverage For Covered Autos – Business Auto, Motor Carrier And Truckers Coverage Forms (Newly titled Pollution Liability – Broadened Coverage For Covered Autos – Business Auto And Motor Carrier Coverage Forms)**

**CA 99 54 – Covered Auto Designation Symbol**

**CA 99 59 – Garagekeepers Coverage – Customers' Sound-receiving Equipment**

**CA 99 60 – Audio, Visual And Data Electronic Equipment Coverage Added Limits**

**CA 99 61 – Loss Payable Clause – Audio, Visual And Data Electronic Equipment Coverage Added Limits**

**CA 99 90 – Optional Limits – Loss Of Use Expenses**

These forms have been revised, where appropriate, to:

**A.** Add reference to "Auto Dealer Coverage Form" and delete references to the "Business Auto Physical Damage Coverage Form", "Garage Coverage Form" and/or "Truckers Coverage Form" in the list of the coverage forms to which the endorsement modifies; and/or

**B.** Replace references to "Liability Coverage" with respect to auto liability with "Covered Autos Liability Coverage" to distinguish such coverage from the other types of liability coverages included in your policy.

**CA 23 97 – Amphibious Vehicles**

This endorsement, in general, is revised to reinforce that insurance is not applicable to amphibious vehicles while being launched into, used in or beached from the water. This includes, but is not limited to, coverages such as liability and physical damage coverages.

**CA 23 98 – Trailer Interchange Coverage**

The Supplementary Payments provision is revised to reinforce that it applies to **court** costs taxed against the insured that do not include the attorneys' fees or expenses taxed against the insured.

A definition of the term "trailer" is added to reinforce that such term includes a semitrailer, container or a dolly used to convert a semitrailer into a trailer.

**CA 99 28 – Stated Amount Insurance**

**CA 99 60 – Audio, Visual And Data Electronic Equipment Coverage Added Limits**

**CA 99 61 – Loss Payable Clause – Audio, Visual And Data Electronic Equipment Coverage Added Limits**

Various provisions and schedules applicable to physical damage coverage have been reinforced to reflect that "loss" rather than "accident" triggers coverage under this section.

# REDUCTION IN COVERAGE

**UCA 424 – Coverage Extension Endorsement**

The Extended Glass Coverage under this endorsement has been revised to require the deductible, which is shown in the Declarations, if glass must be replaced rather than repaired.  However, if glass can be repaired, the waiver of the deductible remains.

Policy Number

BAP 0191409-02

Endorsement No.   003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMON POLICY CHANGE ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured   ASPHALT PAVING SYSTEMS, INC.        Effective Date of change: 04-01-18
                                                    12:01 A.M., Standard Time

Agent Name   MCKEE RISK MANAGEMENT INC             Agent No.   53093-000

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

COVERAGE PART INFORMATION -- Coverage parts affected by this change as indicated by [X] below.

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [X] BUSINESS AUTOMOBILE
- [ ]

The following item(s):

| | |
|---|---|
| [ ] Insured's Name | [ ] Insured's Mailing Address |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [X] Coverage Forms and Endorsements |
| [ ] Add/Delete Vehicle | [ ] Deductibles |
| [X] Additional Interest | [ ] Classification/Class Codes |
| [ ] Limits/Exposures | [ ] Underlying Exposure/Insurance |
| [ ] Covered Property/Location Description | |

is (are) changed to read [See Additional Page(s)]

SEE NEXT PAGE

The above amendments result in a change in the premiums as follows:

This premium does not include taxes and surcharges.

| [ ] No changes | [X] To be Adjusted at Audit | Additional | Return |
|---|---|---|---|

Tax and Surcharge Changes

Additional                                          Return

U-GU-614-B CW (10/16)

Policy Number
**BAP 0191409-02**
Endorsement No.    003

**COMMON POLICY CHANGE ENDORSEMENT**
## ZURICH AMERICAN INSURANCE COMPANY

Named Insured  ASPHALT PAVING SYSTEMS, INC.          Effective Date of Change: 04-01-18
                                                     12:01 A.M., Standard Time

Agent Name     MCKEE RISK MANAGEMENT INC            Agent No.  53093-000

---

**POLICY CHANGES ENDORSEMENT DESCRIPTION (CONT'D)**

---

THE FOLLOWING ADDITIONAL INTEREST (ADDL INSURED LESSOR) HAS BEEN
ADDED TO THE POLICY:
ALL LESSORS
NO FIXED ADDRESS
ZEPHYRHILLS  FL  33539

THE FOLLOWING ADDITIONAL INTEREST (ADDL INSURED LESSOR) HAS BEEN
ADDED TO THE POLICY:
ALL LESSORS
NO FIXED ADDRESS
HAMMONTON  NJ  08037

THE FOLLOWING ADDITIONAL INTEREST (ADDL INSURED LESSOR) HAS BEEN
ADDED TO THE POLICY:
ALL LESSORS
NO FIXED ADDRESS
ALBANY  NY  12201

THE FOLLOWING ADDITIONAL INTEREST (ADDL INSURED LESSOR) HAS BEEN
ADDED TO THE POLICY:
ALL LESSORS
NO FIXED ADDRESS
HARRISBURG  PA  17101

THE FOLLOWING FORM(S) HAS BEEN ADDED:
CA 20 01        10-13     ADDL INSD-LESSOR

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

---

**REMOVAL PERMIT**

If this policy includes the Commercial Property Coverage Part, the following applies with respect to the Coverage Part:

If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 20 01 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: | ASPHALT PAVING SYSTEMS, INC. |
| Endorsement Effective Date: | 04-01-18 |

## SCHEDULE

| | |
|---|---|
| Insurance Company: | ZURICH AMERICAN INSURANCE COMPANY |
| Policy Number: BAP 0191409-02 | Effective Date: 04-01-2018 |
| Expiration Date: 04-01-2019 | |
| Named Insured: ASPHALT PAVING SYSTEMS, INC. | |
| Address: 500 N EGG HARBOR RD HAMMONTON | NJ 08037-3201 |
| Additional Insured (Lessor): Address: | ALL LESSORS NO FIXED ADDRESS ZEPHYRHILLS, FL USA 33539 |
| Designation Or Description Of "Leased Autos": | ALL LEASED VEHICLES |

CA 20 01 10 13

© Insurance Services Office, Inc., 2011

Page 1 of 2

| Coverages | Limit Of Insurance |
|---|---|
| Covered Autos Liability | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Collision | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

 © Insurance Services Office, Inc., 2011 CA 20 01 10 13

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 20 01 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: | ASPHALT PAVING SYSTEMS, INC. |
| Endorsement Effective Date: | 04-01-18 |

## SCHEDULE

| | |
|---|---|
| Insurance Company: | ZURICH AMERICAN INSURANCE COMPANY |
| Policy Number: BAP 0191409-02 | Effective Date: 04-01-2018 |
| Expiration Date: 04-01-2019 | |
| Named Insured: | ASPHALT PAVING SYSTEMS, INC. |
| Address: | 500 N EGG HARBOR RD<br>HAMMONTON                                    NJ      08037-3201 |
| Additional Insured (Lessor):<br>Address: | ALL LESSORS<br>NO FIXED ADDRESS<br>HAMMONTON, NJ USA 08037 |
| Designation Or Description<br>Of "Leased Autos": | ALL LEASED VEHICLES |

CA 20 01 10 13                © Insurance Services Office, Inc., 2011                Page 1 of 2

| Coverages | Limit Of Insurance |
|---|---|
| Covered Autos Liability | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Collision | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

© Insurance Services Office, Inc., 2011

CA 20 01 10 13

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 20 01 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: | ASPHALT PAVING SYSTEMS, INC. |
| Endorsement Effective  Date: | 04-01-18 |

## SCHEDULE

| | |
|---|---|
| Insurance  Company: | ZURICH AMERICAN INSURANCE COMPANY |
| Policy  Number:  BAP 0191409-02 | Effective  Date: 04-01-2018 |
| Expiration  Date:  04-01-2019 | |
| Named Insured:  ASPHALT PAVING SYSTEMS, INC. | |
| Address:  500 N EGG HARBOR RD  HAMMONTON                    NJ     08037-3201 | |
| Additional  Insured  (Lessor):  ALL LESSORS  Address:  NO FIXED ADDRESS  ALBANY, NY USA 12201 | |
| Designation  Or  Description  Of `Leased Autos`:  ALL LEASED VEHICLES | |

CA 20 01 10 13

© Insurance Services Office, Inc., 2011

Page 1 of 2

| Coverages | Limit Of Insurance |
|---|---|
| Covered Autos Liability | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Collision | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

   © Insurance Services Office, Inc., 2011   CA 20 01 10 13

POLICY NUMBER: BAP 0191409-02

COMMERCIAL AUTO
CA 20 01 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured:    ASPHALT PAVING SYSTEMS, INC. | |
| Endorsement Effective  Date:        04-01-18 | |

SCHEDULE

| | | |
|---|---|---|
| Insurance  Company:    ZURICH AMERICAN INSURANCE COMPANY | | |
| Policy  Number:    BAP 0191409-02 | Effective Date: 04-01-2018 | |
| Expiration Date:    04-01-2019 | | |
| Named Insured:    ASPHALT PAVING SYSTEMS, INC. | | |
| Address:    500 N EGG HARBOR RD<br>HAMMONTON                                    NJ      08037-3201 | | |
| Additional Insured  (Lessor):        ALL LESSORS<br>Address:                        NO FIXED ADDRESS<br>HARRISBURG, PA USA 17101 | | |
| Designation Or Description<br>Of 'Leased Autos':        ALL LEASED VEHICLES | | |

CA 20 01 10 13                   © Insurance Services Office, Inc., 2011                   Page 1 of 2

| Coverages | Limit Of Insurance |
|---|---|
| Covered Autos Liability | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Collision | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus Deductible For Each Covered "Leased Auto' |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

 © Insurance Services Office, Inc., 2011 CA 20 01 10 13

Policy Number

**BAP 0191409-02**

Endorsement No.   002

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMON POLICY CHANGE ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured   ASPHALT PAVING SYSTEMS, INC.

Effective Date of change: 04-01-18
12:01 A.M., Standard Time

Agent Name   MCKEE RISK MANAGEMENT INC

Agent No.   53093-000

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

COVERAGE PART INFORMATION -- Coverage parts affected by this change as indicated by [X] below.

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [X] BUSINESS AUTOMOBILE                                    NO CHARGE
- [ ]

The following item(s):

| | |
|---|---|
| [ ] Insured's Name | [ ] Insured's Mailing Address |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [ ] Coverage Forms and Endorsements |
| [ ] Add/Delete Vehicle | [ ] Deductibles |
| [ ] Additional Interest | [ ] Classification/Class Codes |
| [ ] Limits/Exposures | [ ] Underlying Exposure/Insurance |
| [ ] Covered Property/Location Description | |

is (are) changed to read [See Additional Page(s)]

THE FOLLOWING FORM(S) HAS BEEN AMENDED:
U-CA-548-A CW   10-06     SCHEDULE OF AUTO PHYSICAL DAMAGE DEDUCTI

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

The above amendments result in a change in the premiums as follows:

This premium does not include taxes and surcharges.

[X] No changes     [ ] To be Adjusted at Audit   Additional NO CHARGE     Return NO CHARGE

Tax and Surcharge Changes

Additional                                              Return

U-GU-614-B CW (10/16)

# Schedule of Auto Physical Damage Deductibles



The Schedule set forth below identifies the Deductible to apply to the Coverage(s) and Vehicle(s) described.

## SCHEDULE

| Coverage | Vehicle Description | Deductible |
|---|---|---|
| COMPREHENSIVE | | $    2,500 |
| COLLISION | | $    2,500 |

Copyright Zurich American Insurance Company 2006

Policy Number

**BAP 0191409-02**

Endorsement No.   001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMON POLICY CHANGE ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured   ASPHALT PAVING SYSTEMS, INC.          Effective Date of change: 04-05-18
                                                      12:01 A.M., Standard Time

Agent Name   MCKEE RISK MANAGEMENT INC               Agent No.   53093-000

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

COVERAGE PART INFORMATION -- Coverage parts affected by this change as indicated by [X] below.

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [X] BUSINESS AUTOMOBILE
- [ ]

The following item(s):

- [ ] Insured's Name
- [ ] Effective/Expiration Date
- [ ] Payment Plan
- [ ] Add/Delete Vehicle
- [ ] Additional Interest
- [ ] Limits/Exposures
- [ ] Covered Property/Location Description

- [ ] Insured's Mailing Address
- [ ] Insured's Legal Status/Business of Insured
- [ ] Coverage Forms and Endorsements
- [ ] Deductibles
- [ ] Classification/Class Codes
- [ ] Underlying Exposure/Insurance

is (are) changed to read [See Additional Page(s)]

SEE NEXT PAGE

The above amendments result in a change in the premiums as follows:

This premium does not include taxes and surcharges.

| [ ] No changes | [X] To be Adjusted at Audit | Additional | Return |

Tax and Surcharge Changes

| Additional | | Return |

U-GU-614-B CW (10/16)

Policy Number
**BAP 0191409-02**
Endorsement No.   001

### COMMON POLICY CHANGE ENDORSEMENT
## ZURICH AMERICAN INSURANCE COMPANY

Named Insured   ASPHALT PAVING SYSTEMS, INC.          Effective Date of Change: 04-05-18
                                                     12:01 A.M., Standard Time

Agent Name      MCKEE RISK MANAGEMENT INC            Agent No. 53093-000

### POLICY CHANGES ENDORSEMENT DESCRIPTION (CONT'D)

THE STATE OF GEORGIA HAS BEEN ADDED TO THE POLICY FOR AUTOMOBILE
COVERAGE.

UNINSURED MOTORIST COVERAGE FOR THE STATE OF GEORGIA HAS BEEN ADDED.

UNINSURED MOTORIST COVERAGE COMBINED SINGLE LIMIT OF $1,000,000 FOR
THE STATE OF GEORGIA HAS BEEN ADDED.

UNDERINSURED MOTORIST COMBINED SINGLE LIMIT OF $1,000,000 FOR THE
STATE OF GEORGIA HAS BEEN ADDED.

THE FOLLOWING FORM(S) HAS BEEN ADDED:
CA 21 11       10-13    GA UM COV REDUCED BY AT-FAULT LIA LIMIT

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

**REMOVAL PERMIT**

If this policy includes the Commercial Property Coverage Part, the following applies with respect to the Coverage Part:

If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

U-GU-614-B CW (10/16)

## SCHEDULE OF MISCELLANEOUS AUTO CHANGES

Insurance for this coverage part provided by:

ZURICH AMERICAN INSURANCE COMPANY

**Policy Number** BAP 0191409-02
**Endorsement Number** 001

COVERAGE AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.

### SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE

| COVERAGE IS: | STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

### SCHEDULE FOR NON-OWNERSHIP LIABILITY

| | | | TOTAL PREMIUM | |

| COVERAGE IS: | NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|---|
| CHANGED | Other than a Social Service Agency | Number of Employees | 143 | |
| | Social Service Agency | Number of Employees | | |
| | | Number of Employees | | |

### MISCELLANEOUS CHANGES

| | | | TOTAL PREMIUM | |

| COVERAGE IS: | DESCRIPTION | PREMIUM |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL PREMIUM | INCL |

POLICY NUMBER: BAP 0191409-02

**COMMERCIAL AUTO**
**CA 21 11 10 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# GEORGIA UNINSURED MOTORISTS COVERAGE – REDUCED BY AT-FAULT LIABILITY LIMITS

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Georgia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

### SCHEDULE

| | |
|---|---|
| **Limit Of Insurance:**   $1,000,000 | **Each "Accident"** |

Indicate with an "X" in the appropriate box the desired deductible option. Any amount payable for damages under this coverage will be in excess of the applicable deductible option.

**Deductible Option**
- **No deductible applies.**
- $    500   each "accident"
- $  1,000   each "accident"
- $  2,000   each "accident"

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. We will pay all sums in excess of the applicable deductible option shown in the Schedule or Declarations that the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" including loss of consortium, sustained by the "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements. However, if a settlement is made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" for an amount that does not exhaust the limits of liability under any applicable liability bonds or policies, we will not pay under this coverage unless we previously consented to such settlement in writing.

3. Any default judgment arising out of a "suit" for damages against anyone alleged to be legally responsible is not binding on us.

**CA 21 11 10 13**               © Insurance Services Office, Inc., 2012               **Page 1 of 4**

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   c. The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", if the settlement is made in accordance with GA CODE ANN. Section 33-24-41.1 and the payment of such settlement exhausts the limits of the applicable liability bonds or policies.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. "Property damage" for which the "insured" has been compensated by other property or physical damage coverage.

6. Punitive or exemplary damages.

7. "Bodily injury" or "property damage" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Coverage Form or any Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation law, exclusive of nonoccupational disability benefits.

3. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

4. We will not pay for any "property damage" that is paid or payable under Physical Damage Coverage.

© Insurance Services Office, Inc., 2012

## E. Changes In Conditions

The conditions of the policy are changed for Uninsured Motorists Coverage as follows:

1. Paragraph **a.** of the **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and Paragraph **e.** in the **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable similar insurance available under more than one policy:

   **(1)** The following priorities of recovery apply:

   | First | The policy affording Uninsured and Underinsured Motorists Coverage to the "insured" as a Named Insured or, if the Named Insured is an individual, any "family member". |
   | --- | --- |
   | Second | The Uninsured and Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |

   **(2)** We will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

   The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   **a.** Promptly notify the police if a hit-and-run driver is involved; and

   **b.** Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is also changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

We shall be entitled to the rights to recover damages from another only after the "insured" has been fully compensated for damages.

4. The **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply to the Named Insured or if the Named Insured is an individual, any "family member".

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means:

   **a.** Injury to or destruction of a covered "auto" or its resulting loss of use;

   **b.** Injury to or destruction of property contained in the covered "auto" and owned by the Named Insured or, if the Named Insured is an individual, any "family member"; or

   **c.** Injury or destruction of property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   **a.** For which there is neither:

   **(1)** Cash or securities on file with the Georgia Commissioner of Public Safety; nor

   **(2)** A liability bond or policy;

   applicable at the time of the "accident".

   **b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of the limits of all liability bonds or policies applicable at the time of an "accident" is either:

   **(1)** Less than the sum of the limits of insurance for Uninsured Motorists Coverage applicable to the "insured" under this Coverage Form and any other Coverage Form or policy; or

   **(2)** Reduced by payments to others to an amount which is less than the sum of the limits of insurance for Uninsured Motorists Coverage applicable to the "insured" under this Coverage Form and any other Coverage Form or policy.

**c.** For which an insuring or bonding company legally denies coverage or is or becomes insolvent; or

**d.** That is a hit-and-run vehicle and neither the driver nor owner can be identified.

The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" or "property damage" with no physical contact with an "insured", a covered "auto" or a vehicle an "insured" is "occupying" at the time of the "accident", provided the facts of the "accident" can be corroborated by an eyewitness to the "accident" other than the "insured" making the claim.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Designed for use mainly off public roads while not on public roads; or

**b.** Owned by or furnished for the regular use of you or any "family member".