UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ZURICH AMERICAN INSURANCE
COMPANY,

        Plaintiff,

   v.

ASPHALT PAVING SYSTEMS, INC.,

        Defendant.

No. 1:22-cv-01535

**OPINION**

---

**APPEARANCES**:

Christopher B. Fontenelli
LOCKE LORD LLP
One Gateway Center
Newark, NJ 07102

Steven T. Whitmer, *pro hac vice*
Julie L. Young, *pro hac vice*
Hannah M. Oswald, *pro hac vice*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606

   *On behalf of Plaintiff.*

John F. Palladino
Colin G. Bell
HANKIN SANDMAN PALLADINO
  WEINTROB & BELL, P.C.
30 S. New York Avenue
Atlantic City, NJ 08401

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on the Defendant Asphalt Paving Systems, Inc.'s ("Defendant") Motion to Dismiss Counts VII, VIII, and IX of Plaintiff Zurich American Insurance Company's ("Plaintiff") Amended Complaint. (ECF No. 30). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

### I.    BACKGROUND

Defendant is a New Jersey "construction company specializing in pavement preservation," to which Plaintiff—a New York insurance corporation principally operating out of Illinois—provided business automobile insurance for five separate policy terms from 2016 to 2021. (Am. Compl., ECF No. 24, ¶¶ 4–5, 8–9). Generally, the insurance policies provided the following coverage for Defendant's vehicles, or "autos"—

> a) <u>Autos</u>: liability coverage for any "autos" utilized by [Defendant], whether owned, non-owned or hired;
>
> b) <u>Owned autos</u>: auto medical payment, uninsured motorist, underinsured motorist, physical damage, and collision coverage for any "owned autos," whether acquired by [Defendant] before or after policy inception;
>
> c) <u>Owned autos subject to no-fault</u>: personal injury protection for any "owned autos subject to no-fault" benefit laws, whether acquired by [Defendant] before or after policy inception; and
>
> d) <u>Hired autos</u>: physical damage and collision coverage for any "hired autos," whether leased, rented or borrowed by [Defendant].

(ECF No. 24, ¶ 15). In exchange for this coverage, as with most insurance agreements, Defendant agreed to pay Plaintiff annual premium and "some other fees." (ECF No. 24, ¶ 15).

The annual premium that Defendant was to pay Plaintiff was calculated each year through the application of some agreed-upon formulas. (ECF No. 24, ¶ 17). In general, Defendant would disclose the number of vehicles it owned at the start of each policy year and "the parties then

2

multiplied that number times an agreed composite rate to calculate the estimated premium." (ECF No. 24, ¶ 18). Following this calculation, Defendant "would pay [Plaintiff] estimated premium based on its estimated exposure for the insurance." (ECF No. 24, ¶ 16). Then, after the policies expired each year, Plaintiff would conduct "an audit to determine whether the actual number of owned autos fluctuated over the course of the policy year." (ECF No. 24, ¶ 19). If this fluctuation resulted in a premium greater than that which Defendant had already paid, Defendant would be responsible for the balance; if Defendant had overpaid, Plaintiff would issue a partial refund. (ECF No. 24, ¶ 20).

In line with this procedure, at the start of the 2020–2021 policy year, Defendant reported to Plaintiff that, consistent with prior policy years, Defendant owned 70 vehicles. (ECF No. 24, ¶ 21). Accordingly, Plaintiff "applied the agreed composite rate and charged [Defendant] $626,039 in estimated premium." (ECF No. 24, ¶ 21). However, in January 2021, Plaintiff became aware that Defendant actually owned more than 200 vehicles. (ECF No. 24, ¶ 22). When confronted with this information, Defendant's insurance broker confirmed that, in truth, Defendant owned 297 vehicles, including (i) the 70 vehicles that had previously been disclosed; (ii) 28 new vehicles that had been acquired during that policy year; and (iii) 199 previously undisclosed vehicles that Defendant had owned prior to the 2020-2021 policy's inception. (ECF No. 24, ¶ 22).[1] Plaintiff responded by issuing a new invoice seeking an additional $1,779,735 in premium based on these additional vehicles. (ECF No. 24, ¶ 23). Defendant has yet to pay that invoice. (ECF No. 24, ¶ 23).

---

[1] Notably, although it could have requested otherwise, Defendant's insurance coverage extended not only those vehicles it disclosed to Plaintiff, but to "all autos," "owned autos," "owned autos subject to no-fault," and "hired autos." (ECF No. 24, ¶ 30). Indeed, Plaintiff is aware of at least two instances in which Defendant submitted claims for vehicles it had not disclosed, and therefore, for which it had not paid any premium. (ECF No. 24, ¶¶ 32–34). Plaintiff believes Defendant submitted additional claims for vehicles it had not disclosed. (ECF No. 24, ¶ 30). Plaintiff alleges that it did not notice these discrepancies until January 2021. (ECF No. 24, ¶ 36).

Based on the revelation of the dozens of unreported vehicles, Plaintiff alleges that Defendant knowingly misrepresented the number of vehicles it owned to reduce its premium charges. (ECF No. 24, ¶ 23). Plaintiff asserts that Defendant lied twice per year: at the outset of each policy year when it reported its owned vehicles, and at the end of each year during the end-of-year audit, when it failed to correct the record. (ECF No. 24, ¶¶ 25–27, 29). Plaintiff alleges that if it had known about Defendant's additional vehicles, it would have charged more in premium, or would not have issued the policies at all. (ECF No. 24, ¶ 30).

In light of the foregoing, Plaintiff filed suit. (Compl., ECF No. 1).

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on March 18, 2022, with the filing of its Complaint, alleging Defendant's breach of a series of contracts between them, common law and statutory insurance fraud, and unjust enrichment. (ECF No. 1). Defendant responded by filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15). Plaintiff then amended its Complaint as a matter of course pursuant to Rule 15(a)(1)(B). (ECF No. 24).

The Amended Complaint comprises ten counts: (i)–(vi) breach of the parties' successive annual contracts ("Counts I–VI"); (vii) common law fraud ("Count VII"); (viii) violation of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J. STAT. ANN. § 17:33A-7 *et seq.* ("Count VIII"); (ix) unjust enrichment ("Count IX"); and (x) breach of the implied duty of good faith and fair dealing ("Count X"). (ECF No. 24).

Now before the Court is another Motion filed by Defendant that seeks the dismissal of Counts VII, VIII, and IX of the Amended Complaint for failure to state a claim under Rule

12(b)(6). (ECF No. 30).[2] Plaintiff responded in opposition, (ECF No. 32), and Defendant replied in further support, (ECF No. 33).

### III.   LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*,

---

[2] Defendant has not moved to dismiss Counts I through VI—nor Count X—noting that "[t]hough it denies any liability to [Plaintiff], [Defendant] does not quarrel with [Plaintiff]'s right to pursue breach of contract claims against [it]." (Def.'s Br., ECF No. 30-1 at 1).

5

578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). If any other matters outside the pleadings are presented and the court does not exclude them, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

## IV.   DISCUSSION

Defendant has moved to dismiss Counts VII, VIII, and IX of the Amended Complaint under Rule 12(b)(6), arguing that (a) New Jersey's economic loss doctrine precludes Plaintiff's common law fraud claims; (b) Plaintiff has not stated a claim for fraud under common law or the NJIFPA because it has not pled any *material* misrepresentations; and (c) Plaintiff's unjust enrichment claim—which is quasi-contractual—cannot proceed when the parties' dispute is governed by an express contract. For the reasons that follow, the Court agrees that the economic loss doctrine bars Plaintiff's common law fraud claims, but otherwise rejects Defendant's arguments, and accordingly, grants its Motion in part and denies it in part.

### A.  The Economic Loss Doctrine Bars Plaintiff's Common Law Fraud Claims.

In addition to its claims for breach of contract—which Defendant does not challenge, (Def.'s Br., ECF No. 30-1 at 1)—Plaintiff asserts in Count VII claims for fraud under New Jersey

6

common law,[3] alleging that Defendant fraudulently induced Plaintiff to issue insurance policies covering Defendant's vehicles by knowingly misrepresenting the number of vehicles it owns, (Am. Compl., ECF No. 24, ¶¶ 85–92). Defendant argues, however, that these fraudulent inducement claims are barred by New Jersey's economic loss doctrine. (Def.'s Br., ECF No. 30-1 at 9–15). The Court agrees.

The economic loss doctrine stands for a simple proposition: New Jersey plaintiffs may not recover economic damages in tort when their entitlement to relief flows exclusively from a contract. *E.g.*, *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). As this Court once succinctly put it: "[e]ssentially, the economic loss doctrine functions to eliminate recovery on a contract claim in tort claim clothing." *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014) (Irenas, J.) (quoting *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013)). If a tort claim seeks only "to enhance the benefit of the bargain [a plaintiff] contracted for," the doctrine bars the claim. *Id.*

Unfortunately, this generally straightforward idea becomes more complicated when the tort claim at issue is—as here—one for fraud. Although "New Jersey courts have applied the economic loss doctrine in the strict liability and negligence contexts, no New Jersey Supreme Court case has held that a fraud claim cannot be maintained if based on the same underlying facts as a contract claim." *JD James Constr., LLC v. PDP Landscaping, LLC*, No. A-4903-18T3, 2020 WL 5587439, at *6 (N.J. App. Div. Sept. 18, 2020) (internal citations, quotations, and alterations omitted).

---

[3] There appears to be no dispute between the parties—at least at this stage—that New Jersey law governs this case. The Court analyzes Plaintiff's claims accordingly.

Despite decades passing without direction from New Jersey's high court, however, this Court has consistently applied the economic loss doctrine to fraud claims, reasoning that the logic of the seminal case addressing the doctrine—*Spring Motors Distributors, Inc. v. Ford Motor Company*, 489 A.2d 660 (N.J. 1985)—extends to the fraud context as well. *E.g.*, *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-02867, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (Wolfson, J.) (quoting *Vanguard Telecomms. v. S. New Eng. Tel. Co.*, 900 F.2d 645, 654 (3d Cir. 1990)).

Further complicating the analysis, this Court has also long recognized an exception to the general application of the economic loss doctrine to fraud claims, holding that claims for fraud in the inducement may proceed in certain circumstances. *E.g.*, *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (collecting cases). Under this line of cases, the doctrine only precludes claims based on allegedly fraudulent conduct that is *intrinsic* to the parties' contract. *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 564. Fraudulent conduct that is *extraneous* to the contract, on the other hand, may support a separately cognizable fraud claim. *Id.* The question then is whether the alleged fraud amounts to a breach of a contractual duty and is therefore intrinsic and barred, *id.*, or "if it breaches a duty separate and distinct from the performance of the agreement's terms," *USI Int'l, Inc. v. Festo Didiactic, Inc.*, No. 15-08451, 2022 WL 345086, at *3 (D.N.J. Feb. 4, 2022) (quoting *Pac. Controls, Inc. v. Cummins Inc.*, No. 19-03428, 2019 WL 6830790, at *10 (S.D.N.Y. Dec. 13, 2019)).

Having waded through the foregoing—which the Third Circuit has fairly described as a

8

legal "morass," *Montclair State*, 2012 WL 3647427, at *5 (collecting cases)[4]—the Court turns now to Plaintiff's allegations. Plaintiff alleges that Defendant knowingly misrepresented the number of vehicles it owned twice per policy year: once at the beginning of the policy year as part of its application process, and again at the time of the annual end-of-year audits. (Am. Compl., ECF No. 24, ¶¶ 24–31; Exhs. L–U, ECF Nos. 24-15–24-25). The purpose of each of these disclosures was to aid in the calculation of Defendant's annual premium. (ECF No. 24, ¶¶ 16–20). At the beginning of the policy year, Defendant would report the number of vehicles it owned and "would pay [Plaintiff] estimated premium based on its estimated exposure for the insurance." (ECF No. 24, ¶ 16). Then, at the end of the year, Plaintiff "conducted an audit to determine whether the actual number of owned autos fluctuated over the course of the policy year" and in the event of a discrepancy, either Defendant would pay the balance or Plaintiff would issue a partial refund. (ECF No. 24, ¶¶ 19–20). Plaintiff asserts that Defendant's misrepresentations at the beginning of the policy year support its fraudulent inducement claims: the insurer would not have issued, or at least would have charged a higher premium for, Defendant's insurance policies, if not for those misrepresentations in the application process. (ECF No. 24, ¶ 91).

Whether or not these alleged misrepresentations amount to fraud,[5] Defendant argues that they are entirely contemplated by the insurance policies Plaintiff issued. (Def.'s Br., ECF No. 30-

---

[4] The Supreme Court of New Jersey has not responded to prior pleas from this Court to address this issue directly and add some much-needed order and clarification to the chaos (albeit chaos largely of this Court's creation). *Montclair State*, 2012 WL 3647427, at *5 (Wolfson, J.); *JD James Constr.*, 2020 WL 5587439, at *6 ("[T]he law on whether a plaintiff may recover for purely economic loss on concurrent fraud and contract claims has arisen predominantly out of the New Jersey federal courts and other jurisdictions, not our state courts.").

[5] To plead a common law fraud claim, a plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

9

1 at 14). Reviewing the policies themselves, it would be difficult to disagree. Defendant's duty to report the number of vehicles it owns stems from the insurance policies, as does its duty to pay the policy premium. (*E.g.*, Exh. A, ECF No. 24-1 at 18–19, 22–51, 59–70). Defendant's alleged misrepresentations, therefore, are embodied within specific contractual terms, and Plaintiff identifies no duty separate or distinct from the performance of these terms that Defendant violated. *See USI Int'l*, 2022 WL 345086, at *3–4 (citing *Montclair State*, 2012 WL 3647427, at *5). Without as much, the Court easily concludes that the misrepresentations are intrinsic to the contract and must be barred.

Plaintiff's arguments to the contrary are unavailing. Plaintiff largely rests on the fact that Defendant's alleged misrepresentations were made before the execution of the contract as part of the annual application process. (Pla.'s Br., ECF No. 32 at 6). But *when* the misrepresentations were made is not the relevant question; what matters is from *where* Defendant's duties arise. Are they intrinsic or extraneous to the contract? Because, as discussed above, they are intrinsic, the economic loss doctrine bars the claims.

Underscoring this conclusion is Plaintiff's inability to distinguish the damages it seeks to recover between its contract breach and fraud claims. Plaintiff suggests that the damages are distinct: "[Plaintiff] seeks not only additional premium calculated based on the formulas contained in the policies, but also losses flowing from [Plaintiff] ever having extended insurance to [Defendant] at all." (Pla.'s Br., ECF No. 32 at 7–8; Am. Compl., ECF No. 24, ¶ 90). But what are those supposed losses? Plaintiff does not allege that it *lost* money by paying out more money on insurance claims than it brought in via Defendant's premium. Absent such allegations, all that remains are the damages allegedly caused by Defendant's breach of the policies. But because those damages are recoverable through its contract breach claims, Plaintiff's fraud claims must be

10

barred.

All this is to say that trying to parse where Plaintiff's breach of contract claims end and its fraud claims begin proves impossible. And that is precisely the scenario that the economic loss doctrine has been developed to avoid. Accordingly, the doctrine precludes Plaintiff's claims, and Count VII is dismissed.

### B. Plaintiff States a Claim Under the NJIFPA.

Turning next to Plaintiff's statutory insurance fraud claims under the NJIFPA, Defendant argues that Plaintiff fails to state a claim.[6] (Def.'s Br., ECF No. 30-1 at 15–17). The Court disagrees.

To state a claim under the NJIFPA, a plaintiff must show that "(1) the defendant 'presented' a 'written or oral statement'; (2) the defendant knew that the statement contained 'false or misleading information'; . . . (3) the information was 'material' to 'a claim for payment or other benefit pursuant to an insurance policy[; and (4)] . . . it was 'damaged as the result of a violation of [the NJIFPA].'" *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015) (quoting N.J. STAT. ANN. § 17:33A–7(a)). Notably, unlike their common law counterparts, NJIFPA claims do not require an insurer-plaintiff to show that it *relied* on the defendant's fraudulent statement. *Id.* Regardless, here, Defendant appears only to challenge Plaintiff's allegations with respect to the third element: materiality. (Def.'s Br., ECF No. 30-1 at 16–17).

The Supreme Court of New Jersey has held that, in the insurance context, a "misrepresentation is material if it 'naturally and reasonably influence[d] the judgment of the

---

[6] Defendant also argues that Plaintiff fails to state a claim for common law fraud. (Def.'s Br., ECF No. 30-1 at 15–19). Because the Court has already determined that those claims are barred by the economic loss doctrine, however, *see supra* Section IV.A, the Court need not reach and offers no opinion regarding the merits of Plaintiff's common law claims.

11

underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 97 (N.J. 1995) (quoting *Mass. Mut. Life Ins. Co. v. Manzo*, 584 A.2d 190, 195 (N.J. 1991)). Defendant argues that Plaintiff has not pled such a material misrepresentation because, on its reading, "[Plaintiff] alleges that by August 2016, it was aware that [Defendant] owned more autos than disclosed to [Plaintiff], yet [Plaintiff] 1) paid claims on those undisclosed autos, 2) maintained the applicable policy in effect, and 3) renewed the insurance contracts in 2017, 2018, 2019, and 2020." (Def.'s Br., ECF No. 30-1 at 16). Given Plaintiff's "actual knowledge" and continued payment of its claims, Defendant reasons, (ECF No. 30-1 at 17), its alleged underreporting of vehicles could not have "naturally and reasonably influence[d]" Plaintiff's decisions with respect to coverage and premium. *Ledley*, 651 A.2d at 97. However, Defendant both misreads Plaintiff's allegations and misunderstands the applicable law.

As to Plaintiff's allegations, Plaintiff does *not* allege that it knew of Defendant's underreporting of vehicles in 2016, 2018, or some other earlier time. Rather, Plaintiff alleges that *as of January 2021*, it *now* understands that Defendant misrepresented the number of vehicles it owned in its earlier applications and audits. (Am. Compl., ECF No. 24, ¶ 36). In other words, Plaintiff alleges that it did not know—or, perhaps better stated, did not *realize*—at the time the alleged misrepresentations were made that Defendant was underreporting its vehicles. If it had known, Plaintiff alleges, the insurer would have made a different decision with respect to Defendant's coverage or premium. (ECF No. 24, ¶ 90). Thus, because the withheld information would have "naturally and reasonably influence[d]" Plaintiff's decisions, Defendant's alleged misrepresentations were material. *Ledley*, 651 A.2d at 97. These allegations are more than sufficient to state a claim under the NJIFPA.

As to the applicable law, Defendant's arguments appear to suggest that its alleged misrepresentations could not be material because Plaintiff *should* have known at the time that it had not previously reported ownership of the claim vehicles. That Plaintiff *could* have discovered the alleged misrepresentations at the time that they were made does not mean it had "actual knowledge" of them and found them immaterial. (Def.'s Br., ECF No. 30-1 at 17). To suggest otherwise would be to impose a rule that the Supreme Court of New Jersey has specifically rejected: alleged fraudsters "may not urge that one's victim should have been more circumspect or astute." *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 n.1 (N.J. 1981). The Court will not apply such an indefensible rule here.[7]

In sum, Plaintiff sufficiently alleges that Defendant's misrepresentations were material to its decisions with respect to insurance coverage and premium-setting, and thus, states a claim under the NJIFPA. Defendant's Motion is therefore denied with respect to Count VIII.

### C. Plaintiff's Unjust Enrichment Claim May Proceed in the Alternative.

Finally, Defendant also seeks the dismissal of Count IX—Plaintiff's unjust enrichment claim—arguing that Plaintiff cannot succeed on a quasi-contractual claim when the parties' dispute is governed by an express contract. (Def.'s Br., ECF No. 30-1 at 19). Plaintiff acknowledges—as it must, *see, e.g.*, *Simonson v. Hertz Corp.*, No. 10-01585, 2011 WL 1205584, at *6 (D.N.J. Mar. 28, 2011)—that this is true, but argues that it is entitled to assert its quasi-contractual claim in the

---

[7] Even a more charitable reading of Defendant's legal arguments fails to defeat Plaintiff's claims. Accepting for the sake of argument that Plaintiff *was* aware at the time of the two cited examples of underreporting in 2016 and 2018, (Am. Compl., ECF No. 24, ¶¶ 33–34)—which, again, would be contrary to Plaintiff's pleadings, (ECF No. 24, ¶ 36)—it does not follow that all of Defendant's alleged misrepresentations were immaterial. Plaintiff may have found one or two instances of underreporting to be *de minimis* and not worth contesting; upon learning that Defendant was allegedly underreporting *dozens* of vehicles, however, (ECF No. 24, ¶ 22), Plaintiff may have changed its mind. Regardless then, Plaintiff sufficiently states a claim under the NJIFPA.

13

alternative to its express contract claims. (Pla.'s Br., ECF No. 32 at 12). This is also plainly true. *E.g., USI Int'l, Inc., v. Festo Didactic, Inc.*, No. 15-08451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016).[8] Even still, Defendant replies, Plaintiff has not adequately pled its claim in the alternative, citing several out-of-Circuit cases to suggest that Plaintiff's allegations were not "sufficiently clear" that it was doing so. (Def.'s Reply, ECF No. 33 at 10). Fair enough. But the Court declines to impose a more stringent pleading standard than Federal Rule 8. Because Plaintiff expressly states that it only seeks to proceed in the alternative, (ECF No. 32 at 12), and because Defendant's further arguments for dismissing the claim on its merits are unavailing, (ECF No. 33 at 10–11), Defendant's Motion is denied to the extent it seeks dismissal of Count IX at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. (ECF No. 30). Defendant's Motion is **GRANTED** as to Count VII of the Amended Complaint; Count VII is **DISMISSED**. Defendant's Motion is **DENIED** as to Counts VIII and IX. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[8] Importantly, as Plaintiff acknowledges, (Pla.'s Br., ECF No. 32 at 12), "pleading both breach of contract and unjust enrichment is plausible *only when the validity of the contract itself is actually disputed.*" *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (emphasis added). It is not entirely clear to the Court whether such a dispute exists here. Indeed, the fact that Defendant has not contested Plaintiff's breach of contract claims suggests that there might not be one. (Def.'s Br., ECF No. 30-1 at 1). But absent a stipulation or some other more explicit indication from the parties that there is no dispute as to the validity of their insurance agreements, the Court will not assume as much at this stage of the litigation and will not dismiss Count IX at this time.