# EXHIBIT A



111 South Wacker Drive
Chicago, IL 60606
Telephone:  312-443-0700
www.lockelord.com

Julie L. Young
Direct Telephone:  312-443-0254
Direct Fax:  312-896-6254
jyoung@lockelord.com

June 27, 2023

<u>VIA ELECTRONIC MAIL</u>

John F. Palladino
Colin G. Bell
Amanda Szmuc-Heba
HANKIN SANDMAN PALLADINO
WEINTROB & BELL, P.C.
john@hankinsandman.com
coling@hankinsandman.com
amandas-h@hankinsandman.com

**Re:  Zurich American Insurance Company ("Zurich") v. Asphalt Paving Systems, Inc. ("Asphalt"), Case No. 1:22-cv-01535**

Dear Counsel:

We write pursuant to Local Civ. Rule 37.1 concerning Asphalt's responses to Zurich's written discovery requests.  The responses are deficient for several reasons, and Zurich asks that Asphalt please supplement the responses within the next fourteen days as outlined below.  Per the Local Rule, we would also like to speak with you concerning Zurich's request that Asphalt supplement its responses.  Please let us know your availability for a conference call this week.

**Document Responses**

Asphalt's document production is deficient for the following reasons:

- Asphalt did not produce the requested email communications.  Zurich's requests called for Asphalt to search for and produce responsive emails and texts maintained by the following custodians:  Robert Capoferri, Laura DeStefano, Tammi Massey, Joseph J. Meola, Miriam Pontelandolfo, and Lauren Rzucidlo.  (*See* Document Request Instruction No. 4 and Request Nos. 10-16.)  Asphalt's search for responsive communications should include, but not be limited to, all emails and texts with hits for the search term "Zurich."  While Asphalt produced certain emails, it is apparent from our review that the email production is not complete.

- Asphalt did not produce records showing all autos it owned during the relevant time period, including documents identifying the auto year, make, model, serial number, date acquired, and date sold.  For example, Asphalt produced no titles, registrations, purchase orders, sale receipts or spreadsheets of such information for all owned autos. (*See* Document Request Nos. 17-28.)  These documents are at the core of the lawsuit, where Zurich alleges that Asphalt disclosed only certain of its owned autos to Zurich,

June 27, 2023
Page 2

and that Asphalt hid the remainder in order to improperly reduce its premium charges.  It is important that Asphalt produce the ownership records so that Zurich may determine the true number of Asphalt's owned autos and calculate its damages.

- Asphalt did not produce copies of its insurance applications, proposals, or binders for its business auto insurance for the time periods immediately before and after the Zurich program.  (*See* Document Request No. 6.)  Among other reasons, these documents are important because they will reveal what Asphalt told its prior and subsequent insurance carriers about its number of owned autos.

Asphalt's responses state that Asphalt is still "gathering and processing responsive documents for production" and "will make such further responsive documents available for review in the coming weeks."  Asphalt, however, has not yet produced the above documents, nor has it stated with specificity what will be produced in the future or by when.  Zurich therefore requests that Asphalt supplement its production to include all missing documents within the next fourteen days.

**Interrogatory Answers**

Asphalt's answers to Zurich's interrogatory requests are likewise insufficient, including but not limited to the following:

- In Interrogatory No. 1, Zurich asked Asphalt to identify all autos it owned during the relevant time period.  Asphalt failed to do so in its answer, instead directing Zurich to certain policy applications and audits.  Those documents are insufficient because they only identify the owned autos that Asphalt told Zurich about, not all autos owned by Asphalt.

- In Interrogatory No. 2, Zurich asked Asphalt to provide additional information about the hundreds of autos identified on "vehicle lists" Asphalt provided to its broker in December 2020, including whether Asphalt owned the autos on the lists and for how long.  Asphalt failed to do so in its answer, again directing Zurich to the policy applications and audits.  Those documents are insufficient because they do not include many of the autos identified on the vehicle lists.

- In Interrogatory No. 3, Zurich asked Asphalt to provide additional information about the hundreds of autos identified on a public records search for Asphalt, including whether Asphalt owned those autos and for how long.  Asphalt failed to do so in its answer, again directing Zurich to the policy applications and audits.  Those documents are again insufficient because they do not include many of the autos identified on the public records search.

- In Interrogatory No. 4, Zurich asked Asphalt to identify communications with federal or state regulators regarding the autos Asphalt owned during the relevant time period.  Asphalt neither identified nor produced those communications.  This information is important to determining the true number of Asphalt's owned autos, given that Asphalt presumably reported its owned autos to regulators in order to pay sales taxes, obtain

June 27, 2023
Page 3

license plates and tags, and otherwise comply with requirements necessary to purchase, sell, and otherwise operate the autos and Asphalt's related business.

- In Interrogatory Nos. 5-9, Zurich asked Asphalt whether its policy applications disclosed all autos owned by Asphalt, and Zurich sought related information about the disclosures. In its answers, Asphalt stated that the applications "disclosed all owned Autos it understood would be covered under the requested policy." Zurich did not ask Asphalt what autos it understood would be covered, Zurich asked whether the applications disclosed all owned autos. Nowhere in Asphalt's interrogatory answers or document production does Asphalt identify all owned audits.

- In Interrogatory Nos. 13 and 14, Zurich asked Asphalt whether it had ever been cancelled or non-renewed by a carrier, or involved in litigation with a carrier, related to its business auto insurance. Asphalt refused to answer on grounds of relevance. The information requested, however, is relevant because, for example, if Asphalt had previous disputes with other carriers about policy applications, policy audits, the number of its owned autos, or other matters, those disputes would have further put Asphalt on notice about its disclosure obligations to Zurich.

For all of the reasons stated above, Zurich asks that Asphalt supplement its interrogatory answers to provide the requested information within the next fourteen days. Once this supplemental information is provided, Zurich will be in position to better determine whether additional information is needed in response to the discovery requests.

****

Thank you for your prompt attention to the above items. We look forward to speaking with you soon about Zurich's requests.

Sincerely,

LOCKE LORD LLP

Julie L. Young

cc:     Christopher Fontenelli
        Steven Whitmer